# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Jose Chung Luo, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Spectrum Pharmaceuticals, Inc., *et al*,

Defendants.

Case No. 2:21-cv-01612-CDS-BNW

**Order**

This is a securities class action case filed brought by Plaintiff Jose Chung Luo on behalf of himself and others who acquired Spectrum securities between December 27, 2018, and August 5, 2021. Before the Court are competing motions of appointment to be the lead plaintiff in this securities class action litigation. For the reasons set forth below, International Trading Group, Inc.'s motion for appointment of counsel and for appointment as lead plaintiff (ECF No. 18) are hereby GRANTED. The other motions for appointment (ECF Nos. 15, 16, 17, 20) are DENIED.

## I.     Relevant Background Information

On August 31, 2021, Plaintiff Luo filed the complaint identifying the nature of the case as "a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Spectrum securities between December 27, 2018[,] and August 5, 2021." ECF No. 1 at 2, ¶1. Luo sues under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. *Id.* He alleges that Defendants made materially false and misleading statements about Rolontis, a developmental drug that Defendant Spectrum Pharmaceuticals planned to submit to the Food and Drug Administration

for approval. *Id.* at 2-3, ¶4. On August 6, 2021, Spectrum announced receipt of a letter from the FDA regarding Rolontis, which cited deficiencies related to Spectrum's manufacturing and indicated that re-inspection of Spectrum's manufacturing facility would be necessary. *Id.* at 3, ¶5. Luo alleges that this news caused "Spectrum's stock price [to fall] $0.70 per share, or 21.54%, to close at $2.55 per share on August 6, 2021." *Id.* at 3, ¶6. Due to the decline in Spectrum's stock price, Luo argues that he and other class members have suffered significant losses and damages. *Id.* at 3, ¶7.

On the same day that Luo filed suit, notice was issued pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") advising potential class members of the claims alleged by Luo and of the 60-day deadline for class members to move to be appointed as lead plaintiff. ECF No. 17-2 at 2-4.

On November 1, 2021, the final day of the deadline, five movants filed similar motions for appointment as lead plaintiff and requested this Court's approval for their selection of counsel. ECF Nos. 15 (Mark Mehalic), 16 (Changyoung Jung), 17 (Mark Kozubal), 18 (International Trading Group, Inc. ("ITG"), 20 (Steven Dunkleberger). Jung, Mehalic, and Dunkleberger subsequently filed non-opposition responses to the other prospective lead plaintiffs' motions. ECF Nos. 21, 22, 25.

The remaining movants, Kozubal and ITG, both assert that they should be appointed lead plaintiff and filed responses and replies to the other's motions. ECF Nos. 23, 24, 26, 27.[1] Essentially, the parties dispute what method should be used to calculate whether Kozubal or ITG suffered greater losses. *Compare* ITG's Response, ECF No. 23 at 2-3 *with* Kozubal's Response, ECF No. 24 at 6-8. Both parties also attack each other's adequacy to be lead plaintiff in this action. *Compare* ECF No. 23 at 3 *with* ECF No. 24 at 8-9.

---

[1] Kozubal and ITG both filed their initial motions on November 1, 2021. Both responses were filed on November 15, 2021, and both replies were filed on November 22, 2021.

ITG claims that it suffered the greatest loss, claiming an amount of $684,504.22. ECF No. 23 at 2. ITG further argues that Kozubal filed a "boilerplate" certification "lack[ing] any substantial information concerning Kozubal" and that the "dearth of information precludes a finding of adequacy." *Id.* at 3.

Kozubal claims that he lost $314,291.75. ECF No. 17 at 6. Kozubal contends that most of ITG's losses are uncountable "in-and-out" losses, which when excluded, leave ITG with "compensable losses [of] no more than $54,921." ECF No. 24 at 8. Kozubal further alleges that "there are practical reasons to refrain from appointing individuals who have primarily 'in-and-out' trades as lead plaintiffs" and that such in-and-out trading makes ITG "inadequate and atypical." *Id.*

ITG replied, asserting that Kozubal has failed to meet his burden to persuade this Court as to why ITG's "in-and-out" losses are uncountable and that Kozubal inappropriately raised an argument in its response brief. *See generally* ECF No. 26. Kozubal also replied, asserting that ITG itself inappropriately raised an argument in its response brief. ECF No. 27 at 9-10.

## II.     Legal Standard

"A straightforward reading of the statutory language" of 15 U.S.C. § 78u-4(a) "discloses a clear path that the district court must follow in selecting the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The Act instructs district courts to select as lead plaintiff the one "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "The most capable plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729. "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has

provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730 (emphasis in original). If the plaintiff with the largest financial stake in the controversy provides information that satisfies those requirements, then that plaintiff is presumptively most adequate. *Id.* Other plaintiffs may rebut the presumptive lead plaintiff's showing that they satisfy Rule 23's requirements. *Id.* "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

Finally, a straightforward application of the PSLRA mandates that this Court focus solely on the plaintiffs' financial stake in the case; "so long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.* at 732.

**III.    Analysis**

The plaintiff with the greatest financial stake in this litigation is ITG. ITG also satisfies the adequacy and typicality requirements of Rule 23. Thus, ITG should be the lead plaintiff in this action.[2]

> *i.    ITG Has Demonstrated the Greatest Financial Stake in this Case*

ITG has the greatest financial stake in this litigation because it claims greater losses than the other prospective lead plaintiffs. While the Ninth Circuit has no specific formula to

---

[2] In reaching this decision, I considered only ITG and Kozubal's motions for appointment as lead plaintiff, their responses, and their replies. Plaintiffs Mehalic, Jung, and Dunkleberger all filed motions of non-opposition and have consented to the granting of ITG's motion. *See* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion...constitutes a consent to the granting of the motion."); ECF Nos. 21, 22, 25. The non-opposing plaintiffs all agree that they do not have the largest financial interest in this litigation within the meaning of the PSLRA. *See* ECF Nos. 21 at 2 (Jung); 22 at 2 (Mehalic); 25 at 2 (Dunkleberger). I thus deny all three of those plaintiff's initial motions (ECF Nos. 15 (Mehalic); 16 (Jung); 20 (Dunkleberger)).

determine the greatest financial stake in the outcome of the case, it requires courts to "select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730, n.4. Perhaps the most important factor: "the district court must consider the losses allegedly suffered by the various plaintiffs." *Id.* at 729.

ITG claims to have lost $684,504.22 because of its purchases of Spectrum Pharmaceuticals securities. Williams Decl., ECF No. 18-4 at 4. Kozubal, the only remaining competing plaintiff, claims to have lost $314,291.75. Leverty Decl., ECF No. 17-4 at 2. While the inquiry of losses seems straightforward enough, Kozubal claims that ITG "inflate[d] its financial interest by crediting losses for shares it purchased and sold prior to any corrective disclosure." ECF No. 24 at 6. However, Kozubal urges this Court to adopt an accounting method that is not "rational and consistently applied," *Cavanaugh* 306 F.3d at 730, n.4, and thus its argument is unpersuasive. Kozubal contends that this Court should find ITG's losses inflated under a *Dura*-based theory of economic recovery (see analysis *infra*). ECF No. 24 at 6. However, for the reasons I state below, the analysis under *Dura* (specifically, limiting Plaintiffs' claims to those caused by the fraud rather than total economic loss potentially caused by other events on the market) cannot be rationally or consistently applied at the lead-plaintiff stage of the lawsuit.

Kozubal also argues that the Court should weigh what are known as the *Olsten-Lax* factors: (1) the gross number of shares purchased during the class period; (2) the net number of shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See* ECF No. 24 at 2 (citing *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Kozubal asserts that "he has the largest financial interest under three of the *Lax/Olsten* factors including the two most important." *Id.* By contrast, ITG

urges the Court to emphasize the final factor: the approximate losses of the parties. *See* ECF No. 26 at 3.

Finally, Kozubal claims that ITG "inflates its financial interest by crediting losses for shares it purchased and sold prior to any corrective disclosure." ECF No. 24 at 6. It cites to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) for the proposition that ITG's losses are inflated. However, *Dura* simply holds that a plaintiff must plead loss causation rather than simple economic loss in a securities action. *See Dura*, 544 U.S. at 336. Kozubal's contention that courts do not credit in-and-out losses at the lead-plaintiff stage is not supported by authority from the Ninth Circuit.

In fact, no law requires this Court to give equal weight to the *Olsten-Lax* factors, nor does the law require this Court to apply *Dura* to adjust a prospective plaintiff's alleged loss prior to the dismissal stage of a lawsuit.[3] While some courts weigh the *Olsten-Lax* factors equally in deciding lead plaintiffs, "courts in the Ninth Circuit have tended to give the final factor the most emphasis and tend to use a last in, first out ('LIFO') methodology." *In re Wrap Tech., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (slip op) (C.D. Cal. Jan. 7, 2021) (citing *Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017)).

That final factor, and the most consistently applied methodology, is "approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007). Using the LIFO methodology, which is both rational and consistently applied, ITG has the most losses of any

---

[3] Indeed, counsel for ITG persuasively contends that "applying *Dura* would be premature under the facts of this case." ECF No. 26 at 6. "An expansive view of damages benefits members of the putative class and prevents a rift between class members who may seek or assert entitlement to a greater amount of damages than those sought by the lead plaintiff." *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015). Limiting ITG's loss calculation by applying some *Dura*-based standard that is not consistently applied by courts at the lead-plaintiff stage of litigation would serve only to burden ITG and the potential class.

movant for lead plaintiff. Consequently, ITG has the greatest financial stake in this litigation, creating a rebuttable presumption that ITG should be the lead plaintiff.

    *ii.*    *ITG Meets Rule 23's Adequacy and Typicality Requirements*

At this stage, this Court "must rely on the presumptive lead plaintiff's complaint and sworn certification" because "there is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730. A wide-ranging analysis "is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. May 21, 2004) (internal quotations omitted). "Institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

    *a.*    *Typicality*

Typicality hinges on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted). Under Rule 23's permissive standards, "representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (internal citations omitted).

Here, ITG (like all members of the putative class) purchased Spectrum's securities during the class period and suffered losses that resulted from Spectrum's alleged misrepresentations. Thus, ITG's claims are typical of the proposed class.

    *b.*    *Adequacy*

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The determination of adequate representation focuses around two

questions: (1) whether the interests of the class representative coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously." *Stocke v. Shuffle Master, Inc.*, 2007 WL 4262723, at *3 (D. Nev. Nov. 30, 2007) (internal citations omitted). Representation by a lead plaintiff is adequate when class counsel "is qualified and competent to prosecute the action vigorously, and the representative does not have 'antagonistic or conflicting interests with the unnamed members of the class.'" *In re Wrap Tech.*, 2021 WL 71433, at *3 (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

ITG has "retained qualified and experienced proposed lead counsel to vigorously prosecute the case on behalf of the class." ECF No. 18 at 6. There is no indication in the record that ITG has an interest antagonistic with the interests of the unnamed members of the class. Therefore, ITG satisfies the adequacy requirement.

### iii.    *ITG's Counsel is Approved*

The PSLRA provides that once the Court selects a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The decision to approve counsel selected by the lead plaintiff is entrusted to the discretion of the district court. *Bernstein v. MP Materials Corp.*, 2022 WL 2307073, at *2 (D. Nev. June 27, 2022) (citing *Daniels Family 2001 Revokable Trust v. Las Vegas Sands Corp.*, 2021 WL 41301, at *3 (D. Nev. Jan. 5, 2021). Having reviewed the materials provided by ITG's selected counsel – Robbins Geller Rudman & Dowd LLP – the Court finds that ITG's counsel can capably serve its role as counsel for the prospective class. Counsel has a wealth of experience representing plaintiffs in securities class actions.

. . .

. . .

IV.     Conclusion

For the foregoing reasons,

IT IS HEREBY ORDERED that International Trading Group, Inc.'s Motion (ECF No. 18) be GRANTED.

IT IS FURTHER ORDERED that the lead plaintiff of this class action lawsuit is International Trading Group, Inc.

IT IS FURTHER ORDERED that International Trading Group, Inc.'s requested counsel, Robbins Geller Rudman & Dowd LLP, is appointed as counsel for the class.

IT IS FURTHER ORDERED that competing plaintiffs' motions for appointment as lead plaintiff (ECF Nos. 15, 16, 17, 20) are DENIED.

IT IS SO ORDERED.


DATED this July 28, 2022.

_____
Cristina D. Silva
United States District Judge