CHRISTOPHER H. MCGRATH (CA SB# 149129)
(*Admitted Pro Hac Vice*)
chrismcgrath@paulhastings.com
RAYMOND W. STOCKSTILL (CA SB#275228)
(*Admitted Pro Hac Vice*)
beaustockstill@paulhastings.com
CARL HUDSON (CA SB#317201)
(*Admitted Pro Hac Vice*)
carlhudson@paulhastings.com
PAUL HASTINGS LLP
695 Town Center Drive
Seventeenth Floor
Costa Mesa, California  92626-1924
Telephone:  1(714) 668-6200
Facsimile:  1(714) 979-1921

*Counsel for All Defendants*

PISANELLI BICE PLLC
JORDAN T. SMITH (NV Bar. No. 12097)
JTS@pisanellibice.com
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone:  1(702) 214-2100
Facsimile:  1(702)  214-2101

*Counsel for Defendant Spectrum Pharmaceuticals, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSE CHUNG LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRUM PHARMACEUTICALS, INC., JOSEPH W. TURGEON, KURT A. GUSTAFSON, FRANCOIS J. LEBEL, M.D., and THOMAS J. RIGA,<br><br>Defendants. | CASE NO. 2:21-cv-01612-CDS-BNW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

I.   PLAINTIFF'S SECTION 10(b) CAUSE OF ACTION FAILS TO STATE A CLAIM ........................................................................................................... 1

    A.   Defendants Have Not Conceded Rule 10b-5(a) Or (c) Claims ............................. 1

    B.   Plaintiff Fails To Sufficiently Allege Any False Statements ................................ 2

        1.   Plaintiff Has Not Sufficiently Pled Falsity Of Any Poziotinib Statements ............................................................................................... 2

        2.   Plaintiff Has Not Sufficiently Pled Falsity Of Any Rolontis Statements ............................................................................................... 4

        3.   Plaintiff Fails To Establish The Corporate Optimism Is Actionable ......... 5

        4.   Plaintiff Fails To Rebut The Applicability Of The PSLRA's Safe Harbor ................................................................................................... 6

    C.   Plaintiff Fails To Sufficiently Allege That Defendants Made Any Statement With Scienter ..................................................................................... 6

        1.   Plaintiff's "Core Operations" Allegations Still Fail To Support A Strong Inference Of Scienter .................................................................... 7

        2.   Plaintiff Ignores Defendants' Arguments Regarding The Sarbanes-Oxley Certification Allegations, Which Fail To Support A Strong Inference Of Scienter .............................................................................. 8

        3.   Plaintiff's Allegations Concerning Company Departures Still Fail To Support A Strong Inference Of Scienter ................................................. 8

        4.   Plaintiff's Allegations Concerning Stock Sales Still Fail To Support A Strong Inference Of Scienter .................................................................. 9

        5.   Plaintiff's Allegations Concerning Spectrum's Offering Structure Still Fail To Support A Strong Inference Of Scienter ............................... 10

        6.   Plaintiff's Allegations Concerning Purported "Access To Information" Still Fail To Support A Strong Inference Of Scienter ......... 10

        7.   Plaintiff's "Balkanized" Argument Goes Nowhere ................................. 12

II.  PLAINTIFF FAILS TO STATE SECTION 20(A) AND SECTION 20A CLAIMS ....... 12

III. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ........................................................................................ 1

*In re Am. Apparel, Inc. S'holder Litig.*,
  CV 10-06352, WL 10914316 (C.D. Cal. Aug. 8, 2013) ............................................ 5

*In re Apple Comput. Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) .................................................................................. 10

*Bajjuri v. Raytheon Techs. Corp.*,
  No. CV-20-00468, 2022 WL 17081317 (D. Ariz. Nov. 18, 2022) ............................ 12

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .................................................................................... 6

*In re Cypress Semiconductor Sec. Litig.*,
  No. C-92-20048-RMW, 1992 WL 394927 (N.D. Cal. Sept. 23, 1992) ....................... 9

*Dresner v. Silverback Therapeutics, Inc.*,
  No. C21-1499 MJP, 2022 WL 16716165 (W.D. Wash. Nov. 4, 2022) ..................... 11

*In re Fibrogen, Inc.*,
  No. 21-cv-02623-EMC, 2022 WL 2793032 (N.D. Cal. July 15, 2022) ...................... 9

*Hsu v. Puma Biotech., Inc.*,
  213 F. Supp. 3d 1275 (C.D. Cal. 2016) .................................................................... 11

*In re Immersion Corp. Sec. Litig.*,
  No. C 09-4073 MMC, 2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ........................ 9

*Kang v. Paypal Holdings, Inc.*,
  No. 21-cv-06468-CRB, 2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) ........................ 2

*Kleinman v. Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013) ...................................................................................... 11

*Lopes v. Fitbit, Inc.*,
  No. 18-cv-06665, 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ............................. 12

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019) ............................................................................................ 1, 2

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ...................................................................... 7, 8

*In re NVIDIA Corp. Sec. Litig.*,
No. 08-04260, 2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ................................................. 12

*Padnes v. Scios Nova Inc.*,
No. C 95-1693 MHP, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996)........................................ 5

*In re PETsMART, Inc. Sec. Litig.*,
61 F. Supp. 2d 982 (D. Ariz. 1999)....................................................................... 10

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)............................................................................. 3, 10

*Sneed v. AcelRx Pharms., Inc.*,
No. 21-cv-04353-BLF, 2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) .................................. 2

*South Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008)................................................................................. 7

*Tao Grp. Holdings, LLC v. Emps. Ins. Co. of Wausau*,
No. 21-cv-00382, 2022 WL 705926 (D. Nev. Mar. 8, 2022) ...................................... 1

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d (N.D. Cal. 2009) ......................................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)............................................................................. 8, 12

Defendants respectfully submit this reply in support of their Motion to Dismiss the AC (the "Motion").[1]  The Opposition only confirms the AC remains a conclusory example of impermissible "fraud by hindsight" that should be dismissed under the PSLRA.

**I.      PLAINTIFF'S SECTION 10(b) CAUSE OF ACTION FAILS TO STATE A CLAIM**

      **A.      Defendants Have Not Conceded Rule 10b-5(a) Or (c) Claims**

It is telling that Plaintiff attempts to salvage its defective pleading by falsely arguing that Defendants waived an argument as to its unreferenced Rule 10b-5(a) and (c) claims.  Opp. 5-6. Plaintiff's cursory argument fails, as Defendants moved to dismiss all aspects of Plaintiff's sole count involving Rule 10b-5, the Section 10(b) claim, including through reference to the very Complaint paragraph that Plaintiff touts as introducing the "scheme" allegations.

Plaintiff did not bring multiple counts under different subsections of Rule 10b-5; it brought a single count under Section 10(b), which it alleged was violated through the allegations in its Complaint.  *See* AC ¶¶ 153-56.  Defendants' Motion addressed Plaintiff's Complaint on these same terms, seeking dismissal of this Section 10(b) count in its entirety, Mot. 6, including by referencing the very same "scheme" allegations Plaintiff belatedly identifies as purportedly implicating Rule 10b-5(a) and (c).  *Compare* Opp. 5 (citing AC ¶ 131 to argue Plaintiff asserted its unreferenced 10b-5(a) and (c) claims), *with* Mot. 21, 22 (twice citing AC ¶ 131), *and id.* at 4, 5 (referring to Plaintiff's allegations of a scheme).  Defendants thus addressed these allegations and did not waive them.  *See Tao Grp. Holdings, LLC v. Emps. Ins. Co. of Wausau*, No. 21-cv-00382, 2022 WL 705926, at *13 (D. Nev. Mar. 8, 2022) (defendant did not waive argument where, in its reply, defendant "point[ed] to its [m]otion where [d]efendant quoted [p]laintiff's [claim]").

In fact, the very cases Plaintiff cites – *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), and *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021) – confirm all aspects of Plaintiff's Section 10(b) claim were already addressed by Defendants' Motion and can be dismissed.[2]  *Lorenzo* held that "dissemination of false or misleading statements with intent to defraud can fall within the

---

[1] Unless separately defined herein, capitalized terms have the same definition as in the Motion.
[2] To the extent Plaintiff relies on *Alphabet*, that case is clearly distinguishable as the defendants there did not argue they had addressed plaintiff's Rule 10b-5(a) and (c) argument, let alone through specific reference to complaint allegations they had addressed in their motion to dismiss. *See Alphabet,* 1 F.4th at 709.

scope of subsections (a) and (c) of Rule 10b-5, as well as the relevant statutory provisions," because their words are "sufficiently broad to include within their scope the dissemination of false or misleading information with the intent to defraud." 139 S. Ct. at 1100-01.[3]   Such claims, whether articulated under 10b-5(b) or 10b-5(a) or (c), still require (i) a false or misleading statement and (ii) scienter.  Accordingly, Defendants' Motion challenges, and establishes a basis for this Court to dismiss, Plaintiff's Section 10(b) claim in its entirety.[4]

### B.   Plaintiff Fails To Sufficiently Allege Any False Statements

#### 1.   Plaintiff Has Not Sufficiently Pled Falsity Of Any Poziotinib Statements

Defendants detailed how the AC fails to plead with requisite particularity under the PSLRA any statement regarding the MD Anderson Trial or the ZENITH20 Trial of Poziotinib that was false or misleading at the time it was made.  Mot. 6-11.  Plaintiff's Opposition fails to rebut Defendants' Motion.  Opp. 6-12.  In particular, the Opposition fails to identify any particularized facts establishing a false or misleading statement.  Instead, Plaintiff just repeats and summarizes its generalized allegations while attempting to bolster them via attorney argument and conclusory assertions.  *See*, *e.g.*, *id*. at 6-8.  Plaintiff tellingly resorts to selective quotation out of context in an attempt to remedy its deficient claims.[5]

---

[3] Plaintiff's reliance on *Lorenzo* is telling, as that is also its theory for Rule 10b-5(a) and (c); Plaintiff cannot credibly dispute its claims concern, if not false statements and omitted information alone, a scheme dependent on such.  *See, e.g.*, AC ¶ 5 (summarizing Plaintiff's case as relating to a scheme dependent on alleged misrepresentations and withholding of data).

[4] Courts in numerous cases have ruled similarly, noting their holdings are fully consistent with both *Lorenzo* and *Alphabet*.  *See, e.g., Kang v. Paypal Holdings, Inc.*, No. 21-cv-06468-CRB, 2022 WL 3155241, at *13 (N.D. Cal. Aug. 8, 2022) (dismissing Rule 10b-5(a) and (c) claim where defendant "correctly argue[d] that th[e] alleged scheme consists entirely of (and fails for the same reasons as) the misstatements analyzed" as to Rule 10b-5(b)); *Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353-BLF, 2022 WL 4544721, at *6 (N.D. Cal. Sept. 28, 2022) (dismissing 10b-5(a) and (c) claims on same grounds as 10b-5(b) claims because plaintiffs had not "adequately allege[d] any false or misleading statements, nor . . . scienter").

[5] For example, Plaintiff refers to Turgeon's statements on May 16, 2018 regarding what response rate might be sufficient and/or a "home run" as if he was assuring investors that those were in fact the amounts, when the actual statement (reflected in AC ¶ 75) was Turgeon referring to a meeting he had with 16 world thought leaders and what was said at that meeting.  Plaintiff does not allege (and in its Opposition makes no attempt to claim) that Turgeon's statements about the meeting and what was said there were inaccurate (in addition to Plaintiff failing to establish that the statements Turgeon recounted about what might get approved were false at the time).

Attempting to rebuff the Motion's argument concerning the AC's lack of specific alleged facts, Plaintiff highlights Defendants' argument that Plaintiff failed to allege "specific facts, or any facts" alleging that "the FDA had communicated to Spectrum that a 20-30% response rate would be insufficient." Opp. 8 (quoting Mot. 8). Plaintiff claims that the AC *did* specifically allege just that and Defendants ignored or "fail[ed] to address" the allegations, citing AC ¶¶ 29, 39, 77. Opp. 8. Those paragraphs, however, do not furnish any particulars indicating the FDA communicated any such information to Spectrum. Paragraph 29 reads:

> ***According to the FDA***, at the time of the poziotinib trials the best existing therapy for patients with EGFR exon 20 mutations was chemotherapy combined with an EGFR inhibitor, which achieved an ORR of 22.9%. TKIs like posiotinib had proven much less effective at treating the disease, producing ORRs in the single digits. Nevertheless, ***in accordance with guidance from the FDA***, poziotinib would be compared to the best available treatment in its clinical trials to determine whether it produced a clinically meaningful benefit to patients. Accordingly, ***as the FDA made clear to Defendants***, it would not consider any drug with an ORR less than 30% as clinically meaningful.

AC ¶ 29 (emphasis added). Notably, this allegation (particularly in the portions emphasized above) presumes and/or treats as a foregone conclusion that the FDA provided certain guidance to Spectrum, but there are no actual allegations in that paragraph or anywhere else in the AC establishing when, how, by whom or to whom this ever took place, much less tethering it to the individual defendants, or explaining the content or context of such guidance. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (requiring the "sources of [plaintiff's] information with respect to the reports, how she learned of [them], who drafted them, or which officers received them"). The allegation merely concludes the FDA gave guidance, but when and how was that done? And what guidance specifically was given? How does Plaintiff jump from the 22.9% ORR of chemotherapy with an EGFR inhibitor to the conclusion that the FDA would not consider anything under 30% ORR clinically meaningful? The AC provides no specifics or answers whatsoever.[6] Undated and uncorroborated conclusions like "[a]ccording to the FDA" and "as the FDA made clear" do not satisfy the PSLRA. *See id*.

---

[6] If Spectrum's data results were a non-starter, how is it that four members of the FDA Oncologic Drug Advisory Committee voted to approve poziotinib in September 2022? *See* Mot. 3, 3 n.7.

Worse, the fundamental deficiency in this particular allegation is endemic to the bulk of Plaintiff's arguments and allegations, because Plaintiff, in circular fashion, repeats this untethered guidance from the FDA that any results with an ORR under 30% could not be considered clinically meaningful. Paragraph 39 of the AC – the other allegation the Opposition cites for this point[7] – similarly asserts without foundation "since Defendants knew that the FDA required at least 30% ORR from a multicenter trial for a drug to be clinically meaningful . . . ." AC ¶ 39. Meanwhile, Plaintiff's Opposition next uses the same foundationless assertion as the crux of its arguments concerning the ZENITH20 Trial, as it characterizes the results of Cohort 1 and 3 of that trial, 14.8% ORR and 27.8% ORR respectively,[8] as bad data because it "failed to meet the FDA's 30% ORR threshold required for approval." Opp. 9. Plaintiff's Opposition then bootstraps further upon this fact-bereft premise by arguing that Defendants' statements of corporate optimism are actionable and that the PSLRA safe harbor does not apply because Defendants supposedly knew about but did not disclose this purportedly "bad data." Opp. 15-17.[9]

This example is representative of the core deficiencies in the AC's allegations, where Plaintiff has not made any particularized factual assertions, and then attempts to embellish them with attorney argument. Plaintiff is trying to bootstrap an actionable claim from this single defective conclusory assertion. Such foundationless allegations might fail to satisfy even a notice pleading standard, and they certainly fail to satisfy the PSLRA's heightened pleading standard.[10]

### 2. Plaintiff Has Not Sufficiently Pled Falsity Of Any Rolontis Statements

Defendants detailed how the AC fails to plead with requisite particularity under the PSLRA any statement regarding the MD Anderson Trial or the ZENITH20 Trial of Poziotinib that was false or misleading at the time it was made. Mot. 11-12. Plaintiff's Opposition fails to

---

[7] Plaintiff also cited AC ¶ 77, but that paragraph does not reference or in any way relate to any supposed FDA guidance, and it is unclear whether Plaintiff's citation to it was in error.
[8] Recall that Plaintiff's allegation in AC ¶ 29 that "TKIs like posiotinib" historically produce "ORRs in the single digits," and yet Cohorts 1 and 3 both achieved double-digit ORRs.
[9] Plaintiff also continues to deliberately ignore positive results, including Cohort 2, that would contribute to Defendants' optimism, as indicated in Defendants' Motion. *See* Mot. 10.
[10] Plaintiff attempts to excuse this deficiency by arguing that "this level of detail is not required at the pleading stage," citing *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014), but that argument is a non-starter given their allegations contain *no* detail whatsoever, as detailed above.

rebut Defendants' showing. Opp. 12-14. In particular, nothing in the Opposition (or the AC) establishes that any challenged Rolontis statements were false or misleading when made.

Plaintiff takes issue with Spectrum's withdrawal of its first application for Rolontis approval being characterized as "voluntary," and misconstrues Defendants' argument as being that "they should be excused" because "investors should have understood" there was a problem. Opp. 12-13. That strawman argument misses the point; Defendants' argument is that Plaintiff has not, and cannot, show that the statement was false (i.e., that the withdrawal was not, in fact, voluntary). Mot. 11. Contrary to Plaintiff's attorney argument, the first application was not "rejected" by the FDA; Spectrum voluntarily withdrew it. *Id.* To the extent Plaintiff is suggesting that the FDA's indication that the application should be withdrawn renders the withdrawal non-voluntary, that fails because (i) it is simply inaccurate (there was no actual rejection and Spectrum could have chosen to not withdraw), and (ii) *the fact that inquiry from the FDA led Spectrum to voluntarily withdraw the application was disclosed. See* Mot. 11.

The Opposition likewise fails to show that any of the challenged statements regarding preparation for the inspection or optimism for approval were false when made. Plaintiff cites no contemporaneous statements or documents indicating the preparations were not in fact done or that Defendants were not in fact optimistic. Instead, Plaintiff simply theorizes that because the FDA found deficiencies and initially rejected the application, that must mean that the preparations described in statements were not in fact done. Opp. 13-14.[11] This is precisely the type of "fraud by hindsight" that is not permitted under the PSLRA. *See Padnes v. Scios Nova Inc.*, No. C 95-1693 MHP, 1996 WL 539711, at *4 (N.D. Cal. Sept. 18, 1996).[12]

### 3. Plaintiff Fails To Establish The Corporate Optimism Is Actionable

Defendants detailed how most of the challenged statements are non-actionable corporate optimism. Mot. 12-14. The Opposition fails to rebut Defendants' showing. Opp. 14-15.

---

[11] Plaintiff even attempts to bolster this theory by offering its own unqualified and foundationless opinion that the items the FDA raised "would have been caught by even a rudimentary review from a person with a manufacturing background." Opp. 14.

[12] *In re Am. Apparel, Inc. S'holder Litig.* is inapposite, as the "sheer magnitude" of violations there was overwhelming and resulted in termination of nearly 2,000 employees for immigration law non-compliance. CV 10-06352, 2013 WL 10914316, at *4, *14-15 (C.D. Cal. Aug. 8, 2013).

Plaintiff's bizarre argument that "Defendants concede" that "most of the alleged statements are plainly capable of objective verification" because Defendants purportedly did not specifically challenge those allegations, Opp. 14-15, is characteristically meritless. Plaintiff cites AC ¶¶ 74-75, 78, 93, and 98 for this argument, yet Defendants' Motion ***specifically cited all of those paragraphs*** in this argument. *See* Mot. 13-14 (citing AC ¶¶73-78, 80, 82-83, 86, 88-91, and 93-102). To the extent Plaintiff means Defendants conceded something by not reciting each such statement in a parenthetical mid-text, Plaintiff cites no authority for that novel assertion.[13] Moreover, even if any of the statements are "objectively verifiable" as Plaintiff claims, Plaintiff still has not alleged any facts demonstrating any such statements were false when made.

The remainder of Plaintiff's argument hinges on the assertion that Defendants ignored "bad data," which Plaintiff argues renders statements of corporate optimism actionable. As discussed above, however, this assertion that Defendants knew and ignored "bad data" is unsupported, as it is premised on a foundationless and conclusory assertion rather than a particularized factual allegation. *See* Section I.B.1, *supra*.

<strong>4.   Plaintiff Fails To Rebut The Applicability Of The PSLRA's Safe Harbor</strong>

Defendants detailed how numerous statements attributed to them are also non-actionable because they are protected by the PSLRA's "safe harbor" for forward-looking statements. Mot. 14-17. Plaintiff's Opposition again fails to rebut Defendants' showing. Opp. 16-17. Plaintiff's entire argument is premised, again, on the assertion that Defendants knew and ignored "bad data." But this assertion is unsupported by any particularized factual allegation, *see* Section I.B.1, *supra*, and so it again fails. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010)

**C.   Plaintiff Fails To Sufficiently Allege That Defendants Made Any Statement With Scienter**

Defendants' Motion detailed how the AC fails to satisfy the PSLRA's exacting pleading standard for scienter requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," including analyzing and

---

[13] Besides, Defendants did set forth all statements in full in Exhibit 1 to the Motion. The statements in question, single-spaced and in reduced font, filled 12 pages in Exhibit 1. Plaintiff's baseless suggestion Defendants had to recite them all in their Motion is simply wrong.

DEFENDANTS' REPLY ISO MOTION TO DISMISS ACCAC<br>- 6 -

explaining why the AC's scienter allegations fail.  Mot. 17-23.  Plaintiff's Opposition fails to counter Defendants' showing and fails to even respond to several of Defendants' arguments.  The AC's allegations, individually and holistically, fail to satisfy the standard for pleading scienter and so on this independently sufficient ground should be dismissed.

### 1.   Plaintiff's "Core Operations" Allegations Still Fail To Support A Strong Inference Of Scienter[14]

Defendants detailed how Plaintiff's "core operations" allegations do not establish a strong inference of scienter because they fail to include specific allegations of Defendants' actual knowledge of the future outcome of clinical trials or facility inspections, or any specific information conveyed to Defendants related to the alleged fraud.  Mot. 18-19.  In response, Plaintiff tellingly points to no specific allegations to try to contradict Defendants' showing, arguing instead that it need not allege such specifics.  Opp. 20.  Plaintiff is incorrect.

Plaintiff contends that *South Ferry LP* held that core operations theories only "fall short of the PSLRA standard" when they are the ***only*** basis for scienter.  Opp. 20.  But Plaintiff selectively quotes *South Ferry LP* here.  The full statement from *South Ferry LP* is:  "Where a complaint relies on allegations that management had an important role in the company ***but does not contain additional detailed allegations about the defendants' actual exposure to information***, it will usually fall short of the PSLRA standard."  *South Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (emphasis added).  The AC alleges, at most, that Defendants could have had access to information, but does not allege any of them actually did access any information that contradicted their statements, what constituted such information, how preliminary or comprehensive it was, who accessed such information, and, most importantly, when they accessed it.  Plaintiff's generalized allegations concerning the importance of the products and the possibility of access fail to sufficiently plead scienter under the applicable law, including *South Ferry*.

*Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942 (N.D. Cal. 2014) – cited by Plaintiff – is comparably inapposite.  The pharmaceutical company in that case had "substandard, non-compliant conditions pervading their company's manufacturing and quality control divisions"

---

[14] Plaintiff's Opposition addressed Defendants' arguments from the Motion out of order.  This Reply follows the ordering of Defendants' Motion for consistency and clarity.

such that it had received repeated Form 483s (the purpose of which are to inform top management of significant objectionable conditions) and a warning letter from the FDA. *Id*. at 970. The court also based its scienter finding on allegations that there were pervasive and long-standing problems which allegedly were covered up as a matter of policy. *Id*. No such facts are alleged here. Instead, Plaintiff merely emphasizes its allegation that Spectrum owned only two clinical-stage products and jumps to the conclusion that Defendants must have had complete and contemporaneous knowledge of all information relating to those products (including future results of tests and inspections). The inference does not follow from Plaintiff's generalized allegations.

**2.      Plaintiff Ignores Defendants' Arguments Regarding The Sarbanes-Oxley Certification Allegations, Which Fail To Support A Strong Inference Of Scienter**

Defendants cited authority demonstrating that the AC's allegations concerning Sarbanes-Oxley certifications (which were comprised of merely a single paragraph reciting the contents of the certification) fail to support a strong inference of scienter both because only two of the individual defendants are alleged to have signed the certifications and because the AC fails to allege that such individual defendants were severely reckless in making the certifications. Mot. 19-20. Plaintiff's Opposition makes ***no*** argument in response. *See generally* Opp.[15]

**3.      Plaintiff's Allegations Concerning Company Departures Still Fail To Support A Strong Inference Of Scienter**

Defendants invoked authority demonstrating that the AC's conclusory allegations concerning Turgeon's and Gustafson's post-Class Period departures from the company fail to support a strong inference of scienter, particularly given that only Turgeon and Gustafson departed while supposed co-conspirators Lebel and Rigaboth remain at the company and Riga was promoted to President and CEO. Mot. 20-21; *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Plaintiff's Opposition does not even attempt to address Defendant's arguments, instead merely citing two cases for the conclusory assertion that "abrupt resignations" tend to support scienter. Opp. 23-24. Plaintiff's characterization of Turgeon's and Gustafson's departures as "abrupt" is fiction; as the AC and Opposition concede, the departures

---

[15]Indeed, Plaintiff only makes passing reference to the Sarbanes-Oxley certifications once, in a sentence purporting to generally summarize the AC's scienter allegations. *See* Opp. 18.

were several months *after* the Class Period ended and notably were nearly three months apart. *See* Opp. 23; AC ¶ 72.  These facts distinguish this case from, and render inapposite, the authority Plaintiff cites.  In *In re Fibrogen, Inc.*, the Chief Medical Officer abruptly resigned **on the cusp** of expected regulatory approval and three weeks **before** the bad news was announced.  2022 WL 2793032, at *25 (N.D. Cal. July 15, 2022).  Meanwhile, in *In re UTStarcom, Inc. Sec. Litig.*, the resignations and terminations were ***contemporaneous*** with the company's financial restatements and initiation of internal and SEC investigations.  617 F. Supp. 2d at 975 (N.D. Cal. 2009).

### 4. Plaintiff's Allegations Concerning Stock Sales Still Fail To Support A Strong Inference Of Scienter

Defendants cited authority establishing that the AC's allegations concerning Turgeon's and Gustafson's stock sales fail to support a strong inference of scienter.  Mot. 21-22.  The Opposition fails to respond to Defendants' arguments in any credible way and instead focuses almost exclusively on one individual, Turgeon's sales.  Opp. 21-22.

Defendants observed that neither Lebel nor Riga are alleged to have made any suspicious stock sales, and so scienter is negated as to all Defendants because Plaintiff's alleged scheme was purportedly motivated by a collective desire for all participants to profit by insider trading.  Mot. 22; *see In re Cypress Semiconductor Sec. Litig.*, No. C-92-20048-RMW, 1992 WL 394927, at *2-3 (N.D. Cal. Sept. 23, 1992).[16]  The Opposition offers no response whatsoever.  *See* Opp. 21-22.

Defendants further observed that Gustafson's sales, in volume, fall well below thresholds multiple courts have rejected as not demonstrating scienter.  Mot. 21; *see, e.g., In re Immersion Corp. Sec. Litig.*, No. C 09-4073 MMC, 2011 WL 6303389, at *9 (N.D. Cal. Dec. 16, 2011).  Plaintiff attempts to brush this off by arguing that the percentage of stock sold must be considered "along with other markers of suspicious insider trading," but then fails to identify any such markers.  Opp. 22.  Plaintiff focuses nearly entirely on Turgeon's sales; the *sole* statement about Gustafson is Plaintiff's fact-free editorialization that he "also got in on the action."  Opp. 21.

---

[16] It also especially negates scienter ***as to Lebel and Riga in particular***, as it is unreasonable and illogical to contend that Turgeon's and Gustafson's stock sales somehow show Lebel and Riga intended to defraud investors (despite not selling stock themselves).  This is thus one of the many instances where Plaintiff attempts to take scienter allegations aimed at a particular Defendant and apply them to all Defendants generally.

Finally, Defendants observed that Turgeon's sales do not support a strong inference of scienter because his actions contradict a motive to maximize insider trading profits (as he sold well after Spectrum's share price declined from $18 to $4-$5 per share). Mot. 21-22. Plaintiff's glib response is to aver that "the test is 'suspicious' timing, not perfect timing," Opp. 22, but that does not satisfy the multiple on-point authorities cited by Defendants establishing his timing was wildly inconsistent with a motivation to obtain and maximize insider trading profits. *See*, *e.g.*, *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989); *see* Mot. 21-22 (citing cases).

### 5.     Plaintiff's Allegations Concerning Spectrum's Offering Structure Still Fail To Support A Strong Inference Of Scienter

Similarly, Spectrum's offering structure fails to support a strong inference of scienter. Mot. 22-23. Plaintiff's token response half-heartedly argues generically about what a particular financing **could** mean or **could** motivate someone to do, without any particularized allegation supporting any inference of scienter as to Defendants. Opp. 23. *See In re PETsMART, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 999 (D. Ariz. 1999) (generic motive of increasing capital insufficient).

### 6.     Plaintiff's Allegations Concerning Purported "Access To Information" Still Fail To Support A Strong Inference Of Scienter

Plaintiff's generic allegations concerning purported "access to information" fail to support a strong inference of scienter because they are completely non-specific and fail to satisfy the PSLRA's pleading standard, leaving numerous unanswered questions. Mot. 23. The AC fails to specify which of Defendants supposedly had access to purportedly contradictory information, much less who actually accessed such information, when it was accessed, what the contents of such information is, and how it is supposedly contradictory. *See In re Silicon Graphics*, 183 F.3d at 985. The AC hangs its allegations on the bare allegation that there were indications Defendants *could possibly* access study information, which is (again) insufficient. *Id.*; *see* Mot. 23.

Plaintiff's Opposition does not identify such specifics. Instead, it refers to statements about working with the FDA and understanding FDA requirements, *see* Opp. 19-20, but the Motion already addressed those, *see* Mot. 23. As to purported access to supposedly contradictory information, the *only* allegations Plaintiff points to are that Lebel said "there will be regular looking at the data" and "we will be able to get some insight." This is inadequate for numerous

reasons. The statement is made only by Lebel and so has no bearing on scienter as to any other Defendant. It also does not indicate Lebel or any other Defendant will personally be the one to look at the data. Further, the statement is prospective and fails to indicate Defendants or anyone did go on to look at the data, or if they did, what specific data was available, how preliminary or comprehensive it was, and how, if at all, it contradicted any prior or prospective statements.

Meanwhile, the case Plaintiff cites – *Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1287 (C.D. Cal. 2016) – is utterly inapposite. The alleged misrepresentations in *Puma* were statements that incorrectly reported ***actual study data***, as opposed to comments that the company found the data encouraging or was confident about FDA approval. *Id.* at 1278, 1286-87. In fact, the *Puma* court distinguished the Second Circuit decision *Kleinman v. Elan Corp.*, 706 F.3d 145 (2d Cir. 2013) because it involved statements that preliminary findings were encouraging and so it was distinct from the facts in *Puma* (and similar to those here). *Puma*, 213 F. Supp. 3d at 1287.

Plaintiff's assertion that "alleging access alone" is sufficient to allege scienter, Opp. 11, is also contrary to the law. Courts have found that allegations of access to materials is not sufficient to allege knowledge of materials necessary to a scienter theory, including in the context of allegations of access to periodically collected medical data. In *Dresner v. Silverback Therapeutics, Inc.*, the court granted a motion to dismiss for lack of scienter in light of claims by the plaintiffs that a drug "trial was 'open label' and therefore the [d]efendants 'had access to trial data in real time from day one.'" No. C21-1499 MJP, 2022 WL 16716165, at *12 (W.D. Wash. Nov. 4, 2022). The dismissal resulted because the "[p]laintiffs d[id] not put forth any evidence that all the [d]efendants attended [company-wide meetings where trial data was discussed, previously described by a confidential witness], let alone every single one, and whether at any point during these meetings it became apparent that [a drug] was ineffective and lacked a manageable safety profile." *Id.*[17] Nor were the allegations more convincing when viewed "holistically," resulting in dismissal. *Id.* at *13. *Silverback* is fully consistent, moreover, with

_____

[17] Also particularly noteworthy is that the court in *Silverback* also found the plaintiff's scienter allegations insufficient where they, like Plaintiff's allegations here, were directed at multiple individual defendants but failed to "to allege scienter with respect to each of the defendants." *Id.* (citing *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 607 (9th Cir. 2014)).

other cases holding that "'generalities about management's access to data,' are insufficient to establish scienter." *Lopes v. Fitbit, Inc.*, No. 18-cv-06665, 2020 WL 1465932, at \*11 (N.D. Cal. Mar. 23, 2020) (quoting *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 932-33 (N.D. Cal. 2017)).

### 7.   Plaintiff's "Balkanized" Argument Goes Nowhere

Plaintiff takes issue with Defendants demonstrating that each of its debunked scienter theories are uncompelling, arguing that Defendants did not lend them more credence when combined. Opp. 24. Contrary to Plaintiff's suggestion, combining multiple debunked scienter theories alone does not make an overall inference of scienter sufficiently compelling. "Even if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Zucco Partners*, 552 F.3d at 1006 (conducting holistic review pursuant to *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007)). So where, as here, "[]though the allegations in [a] case are legion, even together they are not as cogent or compelling as a plausible alternative inference," dismissal remains the correct result. *Id.* at 1007.

Plaintiff does not explain how its grab bag of scienter theories interact to create more compelling overall inference, instead glibly stating that the "each contributes to a finding of scienter." Opp. at 24. Plaintiff is not the first to red-string multiple scienter theories together hoping to make its overall theory more compelling; courts in many cases have encountered and dismissed plaintiffs doing the same. *See, e.g.*, *Zucco Partners*, 552 F.3d at 992, 1007; *Bajjuri v. Raytheon Techs. Corp.*, No. CV-20-00468, 2022 WL 17081317, at \*19-20 (D. Ariz. Nov. 18, 2022); *In re NVIDIA Corp. Sec. Litig.*, No. 08-04260, 2011 WL 4831192 (N.D. Cal. Oct. 12, 2011). Plaintiff's scienter allegations require dismissal individually and holistically.

## II.   PLAINTIFF FAILS TO STATE SECTION 20(A) AND SECTION 20A CLAIMS

Defendants moved to dismiss Plaintiff's Section 20(a) and Section 20A claims for failure to plead any underling securities violation. Mot. 24. The Opposition just argues that Plaintiff's Section 10(b) claim is properly pled. Opp. 24. These claims should be dismissed.

## III.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be granted.

DATED:  February 27, 2023

**PAUL HASTINGS LLP**

*/s/  Christopher H. McGrath*
Christopher H. McGrath (CA SB# 149129)
*(Admitted Pro Hac Vice)*
chrismcgrath@paulhastings.com
Raymond W. Stockstill (CA SB#275228)
*(Admitted Pro Hac Vice)*
beaustockstill@paulhastings.com
Carl Hudson (CA SB#317201)
*(Admitted Pro Hac Vice)*
carlhudson@paulhastings.com
PAUL HASTINGS LLP
695 Town Center Drive
Seventeenth Floor
Costa Mesa, California  92626-1924
Telephone:  1(714) 668-6200
Facsimile:  1(714) 979-1921

*Counsel for All Defendants*


**PISANELLI BICE PLLC**
Jordan T. Smith (NV Bar No. 12097)
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Facsimile: 702.214.2101
JTS@pisanellibice.com

*Counsel for Defendant Spectrum
Pharmaceuticals, Inc.*