CAMPBELL & WILLIAMS
J. COLBY WILLIAMS (5549)
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: 702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

Local Counsel for Lead Plaintiff
International Trading Group, Inc.

ROBBINS GELLER RUDMAN
   & DOWD LLP
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Lead Plaintiff
International Trading Group, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE CHUNG LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRUM PHARMACEUTICALS, INC., et al.,<br><br>Defendants. | No. 2:21-cv-01612-CDS-BNW<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY** |

4876-3426-1665.v1

## I.    INTRODUCTION

Defendants Spectrum Pharmaceuticals, Inc., Joseph W. Turgeon, Kurt A. Gustafson, Francois J. Lebel, M.D., and Thomas J. Riga (together, "Defendants") filed a Motion for Leave to File Supplemental Authority (ECF 75) (the "Motion") that improperly asks the Court to consider three out-of-district cases under the Court's Local Rule 7-2(g).[1] As Defendants concede, Local Rule 7-2(g) permits consideration of supplemental authorities only when they are "'*particularly* persuasive or helpful.'" Motion at 1.[2] Defendants make no effort to satisfy this standard, and instead launch into improper legal argument, attempting to bolster their Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF 55) ("MTD") with arguments they failed to make in their briefs. The Court should deny Defendants' Motion with respect to *Silverback* and *In re PMI*, and disregard the improper argument with respect to *Christiansen*.[3]

## II.    DEFENDANTS' ARGUMENT IS IMPROPER

The purpose of a notice of supplemental authority is to inform the Court of newly decided cases that are relevant to the dispute before it; it is not a means to submit additional argument or factual evidence. *Schnellecke Logistics USA LLC v. Lucid USA Inc.*, 2023 WL 5720242, at *1 (D. Ariz. Apr. 12, 2023) (striking a party's notice of supplemental authority "because the Notice does more than notify the Court of the decision, it interpreted the Ninth Circuit ruling and highlighted what [the party] thought was important"); *see also Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 WL 3459741, at *1 (W.D. Wash. Oct. 22, 2009) (notice of supplemental authority improper "because it contained argument regarding the case" submitted for the court's review). "[F]iling a

---

[1]    The three cases Defendants identify are *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755 (W.D. Wash. Apr. 12, 2023); *In re Philip Morris International Inc. Securities Litigation*, 89 F.4th 408 (2d Cir. Dec. 26, 2023) ("*In re PMI*"); and *Christiansen v. Spectrum Pharms., Inc., et al.*, No. 22-CV-10292, ECF 91 (S.D.N.Y. Jan. 23, 2024) (together, the "Noticed Cases").

[2]    All capitalized terms not otherwise defined herein have the same meaning as set forth in Plaintiff's Amended Consolidated Class Action Complaint (ECF 46) (the "Complaint"). Additionally, all "¶_" and "¶¶_" references are to the Complaint, and unless otherwise noted, citations are omitted and emphasis is added throughout.

[3]    Plaintiff does not oppose the Court taking notice of *Christiansen*, in which the Southern District of New York sustained plaintiff's securities fraud allegations against defendants Spectrum, Riga, and Lebel for statements they made concerning, *inter alia*, their interactions with the FDA related to the HER2 application of poziotinib.

- 1 -

4876-3426-1665.v1

Notice of Supplemental Authority with a copy of or a citation to a recently published case is proper; including a memorandum with the Notice explaining why the case is relevant is not." *Nichols v. Harris*, 17 F. Supp. 3d 989, 996 n.3 (C.D. Cal. 2014), *vacated on other grounds sub nom. Nichols v. Newsom*, 2022 WL 4295404 (9th Cir. Sept. 12, 2022), *cert. denied*, 2024 WL 72036 (2024).

Here, rather than making a short statement identifying the cases, or a brief argument attempting to show "good cause," Defendants spend five pages presenting certain sections of each case, and attempting to substitute their judgment for the Court's. *Jacobi v. Ergen*, 2016 WL 1089232, at *7 (D. Nev. Mar. 17, 2016) (granting a party's motion to strike a notice of supplemental authority where it was filed without leave of court and improperly contained legal argument); *see generally* Motion at 1-5. Defendants' Motion operates outside the purpose and propriety of supplemental authority, as it attempts to analogize the Noticed Cases and present argument outside their MTD. On that basis alone, it should be denied.

## III.    THE NOTICED CASES ARE NOT "PARTICULARLY PERSUASIVE OR HELPFUL"

The Court may grant a motion for leave to file supplemental authority for "good cause." LR 7-2(g). "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021) (citing *Hunt v. Washoe Cnty. Sch. Dist.*, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019)). As Judge Boulware found in *Greer v. Freemantle Productions*:

> This is not a situation where there has been a new development in the law following the close of a filing deadline. Furthermore, the Court finds that the proffered supplemental authority does not control the outcome of the litigation and is not particularly persuasive or helpful. Instead, it simply expands upon the arguments raised in Plaintiff's initial [filings].

622 F. Supp. 3d 1010, 1015 (D. Nev. 2022), *appeal dismissed*, 2022 WL 18862474 (9th Cir. Dec. 14, 2022).

Here, the out-of-district Noticed Cases are not controlling, precedential, or particularly persuasive.

- 2 -

4876-3426-1665.v1

A.    *Dresner v. Silverback Therapeutics, Inc.*

*Silverback* was decided over nine months ago, in the Western District of Washington. Defendants do not attempt to explain why they waited until now to provide notice of this purported "supplemental authority." Nevertheless, they attempt to graft a ***fact-based finding*** from *Silverback* onto our case, namely that "'open label . . . does not mean . . . Defendants had access to data in real time.'" Motion at 2. But that finding was based on a judicially-noticed "National Cancer Institute's definition of an 'open-label study,'" which is not before this Court. *Silverback*, 2023 WL 2913755, at *4. In any event, as the *Silverback* court acknowledged, "a company could have access to data at all times," but "[p]laintiffs would need factual allegations other than an 'open label' status to demonstrate this." *Id.* at *10. Here, Plaintiff has provided particularized allegations demonstrating Defendants' knowledge of the data, including:

- Defendant Turgeon's statement during the MD Anderson trial on May 3, 2018 that: "***I'm feeling pretty good about the early data*** when you look at that." ¶74 (emphasis in original).

- Defendant Riga's statement on August 9, 2018 that: "***We've seen very strong early data*** in an area of high unmet medical need." ¶76 (emphasis in original).

- Defendant Lebel's admission on May 7, 2020 that ZENITH20 is a "an open trial," which means "***there will be regular looking at the data***," such that "[w]e will be able to get some insight, gain insight ***before we fully enroll***." *Id*. (emphasis in original and added).

- The lack of data processing needed to determine ORR, since it equates to a simple "proportion of patients whose tumor . . . disappears or reduces in size" over the course of three radiologic scans. ¶¶27-28. This is in stark contrast to the sophisticated data in *Silverback*, which measured "'[c]hanges in the pharmacodynamic markers consistent with potential mechanism of action.'" 2023 WL 2913755, at *2.

- The exact timing of when data from all scans became available in the ZENITH20 trial – March 2019 for Cohort 1 and June 2020 for Cohort 3. ¶¶45, 52.

- 3 -

4876-3426-1665.v1

- The existential nature of the data to Defendants because "Spectrum was a two-product company, and both of those products were in development, not earning revenue." ¶115. Accordingly, "it would be 'absurd' to suggest that management was without knowledge" of the data available to them. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008).

- The highly suspicious and uncharacteristic stock sales of Turgeon and Gustafson during windows when bad data was fully collected but not yet released to the public. ¶¶109-114. Turgeon completed a sale of almost half his shares six days before the Company announced the Cohort 3 failure. ¶113.

Because the outcome in *Silverback* depended upon distinct facts and evidence, it is not "particularly persuasive" to the Court's finding here. *Alps Prop. & Cas.* 526 F. Supp. 3d at 812.

**B.     *In re PMI***

In *In re PMI*, the Second Circuit analyzed alleged misstatements concerning studies of "smoke-free" tobacco products. *See generally In re PMI*, 89 F.4th 408. The Second Circuit's analysis regarding "statement[s] of opinion" and "generally optimistic opinions" do not apply to our case because here, Plaintiff has sufficiently alleged that Defendants' statements were "not genuinely believed" or "lacked a reasonable basis." *Id.* at 417-18; *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989). The Second Circuit's dismissal of statements that amount to "a mere 'dispute about the proper interpretation of data'" is also not instructive. *In re PMI*, 89 F.4th at 420. Here, there is no dispute about what the data shows. As discussed, ORR is an objective measurement of "proportion of patients whose tumor . . . disappears or reduces in size" over the course of three radiologic scans. ¶¶27-28.

**C.     *Christiansen v. Spectrum Pharms., Inc.***

Although *Christiansen* is also out-of-Circuit, Plaintiff does not oppose the Court taking notice since it involves three of the same defendants: Spectrum, Riga, and Lebel. It is, however, unclear why Defendants chose to highlight *Christiansen*, as it found securities fraud adequately pled against all three based on highly analogous allegations. *Christiansen*, ECF 91 at 33, 35. In particular, in *Christiansen* the court found that defendants made "false or misleading" statements

- 4 -

concerning "the FDA's approval" of poziotinib for treatment of HER2, and also gave a "misleading impression" about the progress of a related clinical trial. *Id.* at 16, 20. The court in *Christiansen* also found scienter adequately pled based on defendants "repeatedly [speaking] to investors about pozi's development and the FDA review process, suggesting that he was aware of relevant FDA meetings and communications," and the fact that "[d]uring the Class Period, pozi was one of only two drugs in late-stage development at the Company." *Id.* at 30-31.

The *Christiansen* opinion also highlights the misleading nature of the facts and documents which Defendants here attempt to add in their request for judicial notice (ECF 56). Specifically, Defendants request judicial notice of an article from cancernetwork.com in support of their claim that the FDA rejected poziotinib for treatment of HER2 because of an intervening, more effective drug. Defendants wrote: "At the September 2022 meeting, a divided ODAC panel voted 9-4 not to recommend approval, ***based in part on Enhertu's recent approval***." MTD at 3 (citing *id.*, Ex. 9); *see also* ECF 55-10 at 1. What the article fails to explain, and what *Christiansen* clarifies, is that the FDA rejected poziotinib's HER2 application because of Defendants' lack of transparency and cooperation the FDA:

> The FDA's Oncologic Drugs Advisory Committee (the "FDA Committee") met with Spectrum to discuss pozi's approval on September 22, 2022. FDA Committee members stated that the agency had ***repeatedly informed*** Spectrum (from 2017 to 2021) that its plans for dosage optimization were ***not adequate***; that Spectrum had ***failed to address*** the FDA's concerns about optimization; that no patients had been enrolled in the Pinnacle Study despite ongoing discussions with the FDA about the need for prompt enrollment; that the FDA had not reached agreement with Spectrum on the Pinnacle Study's dosage regimen; that the FDA had warned Defendants that they could only move forward with the Pinnacle Study "at their own risk" given inadequate dosage data; and that Spectrum's failure adequately to optimize pozi's dosage in time was the "***fatal [] flaw***" in its drug development program.

*Christiansen*, ECF 91 at 9 (alteration in original).

In any event, the portions of *Christiansen* Defendants attempt to highlight are easily distinguishable. The *Christiansen* court held that optimistic statements about FDA approval are protected by the Private Securities Litigation Reform Act of 1995 safe harbor "***unless Plaintiff has adequately alleged that Spectrum knew at the time that pozi would not be approved***." *Id.* at 26. Here, Plaintiff has alleged exactly that – at the time of their statements Defendants had the data

- 5 -

showing they did not meet the FDA requirement for approval.  *Christiansen* also discounted the insider stock sales alleged in that case, but only because they were small ($14,000 for Lebel) and not suspicious.  Motion at 4 n.8.  Here, by contrast, Turgeon made his largest sale ever six days before the Cohort 3 failure, dumping half of his shares for $1.5 million.

## IV.    CONCLUSION

As demonstrated above, Defendants make no effort to show "good cause," but immediately leap forward to attach improper legal argument to their purported supplemental authority.  Further, the cases that Defendants bring forth are inapposite, and offer nothing particularly helpful in their facts or in their analysis, other than the *Christiansen* finding that the plaintiff properly alleged these same defendants committed securities fraud in a similar manner to the fraud Plaintiff alleges here. For these reasons, the Court should deny Defendants' Motion.

DATED:  January 31, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY

s/ Jeffrey J. Stein
JEFFREY J. STEIN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Lead Plaintiff International Trading Group, Inc.

CAMPBELL & WILLIAMS
J. COLBY WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

Local Counsel for Lead Plaintiff International Trading Group, Inc.

- 6 -

4876-3426-1665.v1