CAMPBELL & WILLIAMS
J. COLBY WILLIAMS (5549)
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

Local Counsel for Lead Plaintiff
International Trading Group, Inc.

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
SARAH A. FALLON
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com
sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff
International Trading Group, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSE CHUNG LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>SPECTRUM PHARMACEUTICALS, INC., et al.,<br><br>                              Defendants. | No. 2:21-cv-01612-CDS-BNW<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |

**TABLE OF CONTENTS**

**Page**

I.      OVERVIEW OF THE LITIGATION ................................................................1

II.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............3

        A.      The Rule 23(e)(2) Factors Support Approval ..........................................4

                1.      Plaintiff and Its Counsel Have Adequately Represented the Class ............4

                2.      The Settlement Was Negotiated at Arm's Length .......................5

                3.      The Settlement Provides Adequate Relief for the Class............................6

                        a.      The Costs, Risks, and Delay of Trial and Appeal..........................6

                        b.      The Proposed Method for Distributing Relief Is Effective..............7

                        c.      The Terms of Any Proposed Award of Attorney's Fees,
                                Including Timing of Payment ..........................................8

                        d.      Other Agreements Made in Connection with the Global
                                Resolution of the Case ....................................................8

                4.      Class Members Are Treated Equitably ....................................9

        B.      The Remaining Ninth Circuit Factors Support Preliminary Approval of the
                Settlement ................................................................................10

                1.      *Hanlon* Factor 4: The Amount Offered in Settlement (Compared to
                        the Potential Total Recovery) ...................................................10

                2.      *Hanlon* Factor 6: The Experience and Views of Counsel.........................11

III.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .................12

        A.      The Class Satisfies Rule 23(a) ...................................................12

        B.      The Proposed Class Satisfies Rule 23(b)(3)'s Predominance and
                Superiority Requirements ...........................................................14

IV.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .........................................15

V.      PROPOSED SETTLEMENT SCHEDULE ...........................................................17

VI.     CONCLUSION................................................................................17

4926-9633-1317.v2

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008) ...........................................................................10

5

6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................................12, 14

7

*Borteanu v. Nikola Corp.*,
    2025 WL 33147 (D. Ariz. Jan. 6, 2025) ..................................................12, 13, 15

8

9

*Cagan v. Anchor Sav. Bank FSB*,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................10

10

11

*Ciuffitelli v. Deloitte & Touche LLP*,
    2019 WL 1441634 (D. Or. Mar. 19, 2019)...............................................................9

12

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................................11

13

14

*Fleming v. Impax Lab'ys*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ................................................13, 15

15

*Fleming v. Impax Labs. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)...........................................................8

16

17

*Ford v. CEC Ent., Inc.*,
    2015 WL 11439032 (S.D. Cal. July 7, 2015) .........................................................15

18

19

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) .................................................................................3

20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................4, 10, 11

21

22

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)..................................................12, 14

23

24

*Hayes v. Magnachip Semiconductor Corp.*,
    2016 WL 7406418 (N.D. Cal. Dec. 22, 2016).........................................................12

25

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom. Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) .........................................................................6, 8

26

27

28

- ii -

**Page**

*Homyk v. ChemoCentryx, Inc.*,
  2024 WL 1141699 (N.D. Cal. Mar. 6, 2024)........................................................15

*In re Atmel Corp. Deriv. Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)........................................................5

*In re Cooper Cos., Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009)........................................................15

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014)........................................................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019)........................................................3

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)........................................................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................................11

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)........................................................9

*In re THQ, Inc. Sec. Litig.*,
  2002 WL 1832145 (C.D. Cal. Mar. 22, 2002)........................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2010) ........................................................6, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019)........................................................5

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  720 F. Supp. 1379 (D. Ariz. 1989),
  *aff'd sub nom. Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)........................................................11

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)........................................................9

*Jaffe v. Morgan Stanley & Co., Inc.*,
  2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ........................................................14

4926-9633-1317.v2

1
2                                                                                    **Page**
3
4   *Juvera v. Salcido*,
        2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ..............................................................4
5
    *Low v. Trump Univ., LLC*,
6       246 F. Supp. 3d 1295 (S.D. Cal. 2017)......................................................................7
7   *M & M Hart Living Tr. v. Global Eagle Ent., Inc.*,
        2018 WL 11471777 (C.D. Cal. Nov. 2, 2018)..........................................................10
8
    *Mauss v. NuVasive, Inc.*,
9       2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)...............................................................9
10  *Mendoza v. Hyundai Motor Co.*,
        2017 WL 342059 (N.D. Cal. Jan. 23, 2017)..............................................................10
11
12  *Mild v. PPG Indus., Inc.*,
        2019 WL 3345714 (C.D. Cal. July 25, 2019)..............................................................4
13
    *Morris v. Affinity Health Plan, Inc.*,
14      859 F. Supp. 2d 611 (S.D.N.Y. 2012)......................................................................11
15  *Mullane v. Cent. Hanover Bank & Tr. Co.*,
        339 U.S. 306 (1950)..................................................................................................16
16
    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
17      221 F.R.D. 523 (C.D. Cal. 2004)..............................................................................11
18  *Norris v. Mazzola*,
        2017 WL 6493091 (N.D. Cal. Dec. 19, 2017)..........................................................11
19
20  *Parra v. Bashas', Inc.*,
        536 F.3d 975 (9th Cir. 2008) ....................................................................................13
21
22  *Parsons v. Ryan*,
        754 F.3d 657 (9th Cir. 2014) ..............................................................................13, 14
23
    *Redwen v. Sino Clean Energy, Inc.*,
24      2013 WL 12129279 (C.D. Cal. Mar. 13, 2013)..........................................................6
25  *Rodriguez v. W. Publ'g Corp.*,
        563 F.3d 948 (9th Cir. 2009) ............................................................................3, 7, 15
26
27  *Salazar v. Midwest Servicing Grp., Inc.*,
        2018 WL 3031503 (C.D. Cal. June 4, 2018) ..............................................................6
28

4926-9633-1317.v2

Page

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020) ......................................................................................12, 14

*Smilovits v. First Solar, Inc.*,
   295 F.R.D. 423 (D. Ariz. 2013) ........................................................................................13, 14

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ...........................................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993),
   *aff'd*, 881 F.3d 1111 (9th Cir. 2018) .........................................................................................7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................................3

*Vataj v. Johnson*,
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ......................................................................15

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................................9

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2006) ......................................................................10

*Wolin v. Jaguar Land Rover North America, LLC*,
   617 F.3d 1168 (9th Cir. 2010) .........................................................................................14, 15

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ......................................................................10

*Young v. LG Chem. Ltd.*,
   2019 WL 4187396 (9th Cir. Sept. 4, 2019) ............................................................................3

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(4) ..............................................................................................................................8
   §78u-4(a)(7) ............................................................................................................................16
   §78j(b) ............................................................................................................................1, 2, 15
   §78t(a) ...........................................................................................................................1, 2, 15
   §78t-1 ....................................................................................................................................1, 2

4926-9633-1317.v2

1

2                                                                                  **Page**

3

Federal Rules of Civil Procedure

4      Rule 23(a)............................................................................................12, 15

5      Rule 23(a)(1)..................................................................................................12
       Rule 23(a)(2)..................................................................................................13

6      Rule 23(a)(3)..................................................................................................13
       Rule 23(a)(4)..................................................................................................14

7      Rule 23(b)(3)......................................................................................12, 14, 15
       Rule 23(c)(2)(B)........................................................................................15, 16

8      Rule 23(c)(3)(B)..............................................................................................16
       Rule 23(e).........................................................................................................3

9      Rule 23(e)(1)....................................................................................................3

10     Rule 23(e)(1)(B)........................................................................................12, 16
       Rule 23(e)(2)........................................................................................3, 4, 10, 11

11     Rule 23(e)(2)(A)........................................................................................4, 14
       Rule 23(e)(2)(B)...............................................................................................5

12     Rule 23(e)(2)(C)(ii)..........................................................................................7
       Rule 23(e)(2)(C)(iii).........................................................................................8

13     Rule 23(e)(2)(D)...............................................................................................9
       Rule 23(g) ......................................................................................................15

14     Rule 23(h)(1)...................................................................................................16

15     **SECONDARY AUTHORITIES**

16
       Edward Flores & Svetlana Starykh, *Recent Trends in Securities*

17          *Class Action Litigation: 2024 Full-Year Review*

18          (NERA Jan. 22, 2025)...................................................................5, 7, 10

19

20

21

22

23

24

25

26

27

28

1     Lead Plaintiff International Trading Group, Inc. ("Plaintiff") respectfully submits for the

2   Court's approval the Settling Parties'[1] proposed $15.95 million cash settlement (the "Settlement") of

3   this securities class action (the "Action").  The Settlement is the product of a "mediator's proposal"

4   following good-faith, arm's-length negotiations between experienced counsel under the supervision

5   of David Murphy of Phillips ADR Enterprises, a mediator with extensive experience in complex

6   securities litigation.

7     The Settlement is a fair, reasonable, and adequate result for the putative class, particularly in

8   light of the financial constraints of Defendant Spectrum, and the company that acquired it, Assertio

9   Holdings, Inc. ("Assertio").  Accordingly, Plaintiff requests preliminary approval of the Settlement

10   and certification of a settlement class of those persons ("Class Members") who purchased or

11   otherwise acquired Spectrum's publicly-traded common stock between March 7, 2018, and

12   August 5, 2021, inclusive (the "Class").  Plaintiff further seeks approval of Verita Global as Claims

13   Administrator, approval of the forms of the Notice of Pendency and Proposed Settlement of Class

14   Action (the "Notice"), Proof of Claim, Summary Notice, and Postcard Notice, appended to the

15   Stipulation of Settlement (the "Stipulation") as Exhibits A-1 through A-4, respectively, and approval

16   of the proposed methods of providing notice of this Settlement to Class Members.[2]

17                          **POINTS AND AUTHORITIES**

18   **I.     OVERVIEW OF THE LITIGATION**

19     The initial complaint in this case was filed on August 31, 2021.  ECF 1.  On July 28, 2022,

20   the Court appointed International Trading Group, Inc. as lead plaintiff and Robbins Geller Rudman

21   & Dowd LLP as lead counsel.  ECF 37.

22     On September 26, 2022, Plaintiff filed the Amended Consolidated Class Action Complaint

23   (the "Complaint") alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of

24   1934 (the "Exchange Act").  ECF 46.  On November 30, 2022, Defendants moved to dismiss the

25

---

26   [1]    The "Settling Parties" and the "Parties" refers to Plaintiff and (i) Spectrum Pharmaceuticals, Inc. ("Spectrum"); (ii) former CEO Joseph W. Turgeon; (iii) former CFO Kurt A. Gustafson; (iv) former CMO Francois J. Lebel, M.D.; and (v) former COO Thomas J. Riga (collectively, "Defendants").

27
     [2]    Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the
28   Stipulation.  Emphasis is added and citations are omitted throughout unless otherwise noted.

- 1 -

Complaint. ECF 55. Plaintiff filed its opposition to the motion on January 27, 2023 (ECF 61), and Defendants filed their reply on February 27, 2023 (ECF 66). The Court held a hearing on Defendants' motion to dismiss on February 6, 2024, and granted the motion without prejudice. ECF 82.

On March 29, 2024, Plaintiff filed the Second Amended Consolidated Class Action Complaint (the "Amended Complaint"). ECF 93. Defendants moved to dismiss the Amended Complaint on May 13, 2024. ECF 99. Plaintiff filed its opposition to the motion to dismiss on June 27, 2024 (ECF 104), and Defendants filed their reply brief on July 22, 2024 (ECF 112). On October 7, 2024, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the Amended Complaint. ECF 116.

In its motion to dismiss opinion, the Court found that Plaintiff sufficiently alleged that Defendants violated §§10(b), 20(a), and 20A of the Exchange Act by misleading investors about the efficacy of poziotinib ("Pozi") and its likelihood of achieving FDA approval. *Id.* at 20-23, 29, 31. The Court determined that, defendants Turgeon, Riga, and Lebel each made materially misleading statements related to: (1) the efficacy of existing treatments; (2) the target for FDA approval; and (3) baseless optimism for final approval of Pozi. *Id.* at 20-23. And the Court found Plaintiff adequately alleged scienter as to Turgeon. *Id.* at 29. However, the Court dismissed the alleged misstatements related to the approval of Rolontis and certain other statements regarding Pozi throughout the Class Period. *Id.* at 23-28.

On October 23, 2024, Plaintiff and Defendants filed their joint proposed discovery plan and proposed schedule (ECF 119), which the Court entered on October 24, 2024 (ECF 120). On the same day, the Court referred the case to a magistrate judge for a mandatory settlement conference pursuant to Local Rule 16-5. ECF 120. Magistrate Judge Brenda Weksler scheduled a settlement conference for January 22, 2025. ECF 118.

The Parties thereafter agreed to engage a private mediator and on January 10, 2025, Magistrate Judge Weksler entered an order granting the Parties' Joint Motion to Abate the Settlement Conference and Amend Scheduling Order. ECF 128.

4926-9633-1317.v2

Plaintiff and Defendants participated in a voluntary confidential mediation session with David M. Murphy (of Phillips ADR), an experienced mediator, on March 20, 2025. In advance of the mediation, Plaintiff and Defendants each submitted and exchanged opening and reply mediation statements. The Parties engaged in good-faith negotiations, but did not reach a settlement at the mediation session. Following additional settlement discussions with Mr. Murphy, on March 26, 2025, the Parties accepted a mediator's proposal to settle the Action in return for a cash payment of $15.95 million to be paid by Defendants and/or their insurers on behalf of Defendants for the benefit of the Class, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court.

## II.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Young v. LG Chem. Ltd.*, 2019 WL 4187396, at *1 (9th Cir. Sept. 4, 2019) (same). Accordingly, courts defer to "the private consensual decision of the parties" to settle and advance "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action. Under Rule 23(e)(1), preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) provides that a proposed class settlement may be approved "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make this determination, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other.

- 3 -

Fed. R. Civ. P. 23(e)(2).  In addition, the Ninth Circuit considers the following factors, some of which overlap with Rule 23(e)(2):

> [1] [T]he strength of the plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) (discussing the *Hanlon* factors).

The proposed Settlement satisfies Rule 23(e)(2) and all applicable Ninth Circuit factors such that notice of the proposed Settlement should be sent to the Class in advance of a final settlement hearing (the "Settlement Hearing").

## A.    The Rule 23(e)(2) Factors Support Approval

### 1.    Plaintiff and Its Counsel Have Adequately Represented the Class

As described above, Plaintiff and its counsel have adequately represented the Class as required by Rule 23(e)(2)(A).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff and its counsel adequately represented the Class during both the litigation of this Action and its settlement.  Plaintiff's claims are typical of and coextensive with the claims of the Class, and it has no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Class Members.  *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Moreover, Plaintiff's counsel has significant experience prosecuting and resolving major securities and other complex class-action litigation.[3]  Plaintiff's counsel diligently prosecuted this Action throughout the pleading phase, engaging in and funding an extensive independent investigation; multiple consultations with experts; legal research; and review of Spectrum's public filings, annual reports, press releases, and other publicly available information.  Plaintiff's counsel also diligently advocated the Class's position throughout months of hard-fought discovery disputes with defense counsel.  Finally, Plaintiff's counsel zealously represented the Class's interests at mediation and achieved an excellent result.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated th[e] action" and "the record support[ed] the continuation of that effort during settlement negotiations").

## 2.     The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  The proposed Settlement was reached only after the Parties engaged in a protracted mediation process with mediator David Murphy that included written submissions prepared by both Plaintiff's counsel and Defendants' counsel and an in-person mediation, the result of which was a $15.95 million mediator's proposal.  *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead Counsel also attests that both sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle. . . .  There is no reason to doubt the veracity of Lead Counsel's representations.").

Mr. Murphy supervised this process at each step.  *See In re Atmel Corp. Deriv. Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) ("[mediator's] participation weighs considerably

---

[3]     On January 22, 2025, NERA Economic Consulting published their "Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review," which lists the "Top Settlements" in United States securities litigation for 2024.  *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 24 (NERA Jan. 22, 2025) ("NERA Report"), https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122 .pdf.  Robbins Geller served as lead counsel in all of the top eight cases on NERA's list of the "Top 10 2024 Securities Class Action Settlements."

1  against any inference of a collusive settlement"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at

2  *6 (N.D. Cal. Dec. 18, 2018) ("[T]he Settlement was the product of arm's length negotiations

3  through two full-day mediation sessions and multiple follow-up calls supervised by [a mediator]."),

4  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  Thus, the proposed Settlement

5  was "the product of serious, informed, and non-collusive negotiations."  *In re Volkswagen "Clean*

6  *Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *4-*5 (N.D. Cal. Nov. 28,

7  2010) ("*Volkswagen I*").

8                    **3.      The Settlement Provides Adequate Relief for the Class**

9                         **a.      The Costs, Risks, and Delay of Trial and Appeal**

10         While Plaintiff remains confident in its ability to ultimately prove the claims alleged,

11  litigation – including a trial – is an inherently risky proposition.  *See, e.g.*, *Salazar v. Midwest*

12  *Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "[s]ettlement

13  [a]greement's elimination of risk, delay, and further expenses weighs in favor of approval.").

14  Complex securities fraud actions, such as this one, are particularly risky for plaintiffs.  *See Redwen*

15  *v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Courts

16  experienced with securities fraud litigation "'routinely recognize that securities class actions present

17  hurdles to proving liability that are difficult for plaintiffs to clear.'""); *Hefler*, 2018 WL 6619983, at

18  *13 ("'securities class litigation is notably difficult and notoriously uncertain'").

19         Plaintiff's ability to recover here is subject to significant roadblocks in discovery.  Despite

20  Plaintiff's success in overcoming its burden at the pleading stage and defeating, in part, Defendants'

21  motion to dismiss, questions remain regarding the appropriate length of the Class Period and the

22  survival of certain statements.  Defendants repeatedly indicated their intent to limit document

23  production to restricted topics and litigate vigorously the scope of discovery.  Despite being

24  confident in its positions, Plaintiff nevertheless faced an uncertain outcome.  Indeed, as discussed in

25  more detail below, Plaintiff intended to file a motion to compel Defendants to produce documents

26  relevant to this broader view of the proper scope of the case.  The Court's eventual ruling on

27  Plaintiff's motion to compel had the potential to thereafter hinder Plaintiff's ability to prove its

28  claims, and might reduce recoverable damages.

4926-9633-1317.v2

1    Second, in order to obtain any recovery for the Class as a whole, Plaintiff would also need to

2    prevail at class certification, summary judgment, *Daubert* and other pretrial motions, trial, and

3    subsequent appeals, a process that could possibly extend for years.  Protracted litigation is

4    particularly risky in this case because, as Defendants stressed, Assertio – the company that acquired

5    Spectrum and funded Spectrum's litigation of this Action – faces significant financial constraints.

6    Assertio is also currently a defendant in a number of other lawsuits.  At the time of the instant

7    motion, Assertio's stock trades at just $0.63 per share.  Accordingly, Plaintiff faced the risk that

8    Assertio might become insolvent before Plaintiff could recover any funds for the Class at trial.

9    Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to

10   try,'" and presents numerous risks beyond the "'inherent risks of litigation.'"  *Low v. Trump Univ.,*

11   *LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi*

12   *v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).

13   The $15.95 million Settlement evenly balances the risks, costs, and delay inherent in

14   complex cases among all parties.  This result is beyond adequate, considering the median recovery in

15   federal securities cases settled in 2024 was $14 million.  *See* NERA Report at 23, fig. 22.[4]

16   Considering the risks of continued litigation and the time and expense that would be incurred to

17   prosecute the Action through a trial, the Settlement reflects the Class's best interests.

**b.    The Proposed Method for Distributing Relief Is Effective**

18

19   As demonstrated below in §IV, the methods of proposed notice and the claims administration

20   process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail or email notice to

21   all those who can be identified with reasonable effort, supplemented by publication in *The Wall*

22   *Street Journal* and in a widely distributed newswire service and establishment of a Settlement-

23   specific website where key documents will be posted, including the Stipulation, Notice, Proof of

24   Claim, and Preliminary Approval Order.

25

26

27

28

---

[4]    These figures exclude settlements of $1 billion or higher (of which there were none), merger objections, cases concerning crypto unregistered securities, and settlements of $0 to the class.  *Id.*

4926-9633-1317.v2

The claims process is also effective and includes a standard Proof of Claim that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how Settlement funds will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiff's consulting damages expert. A thorough claim review process, including how deficiencies are addressed, is set forth in the Stipulation. ¶¶5.6-5.8.

### c.    The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiff's counsel intends to seek an award of attorneys' fees not to exceed 30% of the Settlement Amount and expenses in an amount not to exceed $200,000, plus interest on both amounts. This fee request reflects the successful result achieved for the Class. Plaintiff may seek an award of up to $12,000 in connection with its representation of the Class. *See* 15 U.S.C. §78u-4(a)(4); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022) (approving awards to lead plaintiff and class representative for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel").

### d.    Other Agreements Made in Connection with the Global Resolution of the Case

The Settling Parties have entered into a standard supplemental agreement, which allows Defendants to terminate the Settlement if a certain threshold of Class Members request exclusion from the Class. Stipulation, ¶7.3. Such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). While the Supplemental Agreement is identified in the Stipulation, and the

nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[5]

### 4.     Class Members Are Treated Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats Class Members equitably relative to each other.  Drafted with the assistance of Plaintiff's consulting damages expert, the Plan is fair, reasonable, and adequate because it does not treat Plaintiff or any other Class Member preferentially.  *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015); *see also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").  Specifically, the Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such Person's purchases of Spectrum common stock on the open market during the Class Period and if or when they sold.  "'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'"  *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018).

Each Authorized Claimant, including Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation.  No special formula for distribution will apply to Plaintiff.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class. . . .  [T]he proposed Plan of Allocation compensates all Class Members and [Plaintiff] equally in that they will receive a *pro rata* distribution based of [sic] the Settlement Fund based on their net losses.").

---

[5]    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

### B.    The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement

Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis above (*i.e.*, the fourth and sixth *Hanlon* factors) also support preliminary approval.[6]

#### 1.    *Hanlon* Factor 4: The Amount Offered in Settlement (Compared to the Potential Total Recovery)

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006).  Under the Settlement, Defendants will pay $15.95 million which represents between 3% and 4% of the estimated aggregate damages as estimated by Plaintiff.[7]  As a percentage of estimated damages, the Settlement Amount is above the 2024 median settlement recovery in securities class actions of 1.2%, according to a recent study conducted by NERA Economic Consulting,[8] and falls within the range of approval.  *See, e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving final settlement representing 2.35% of total estimated damages); *M & M Hart Living Tr. v. Global Eagle Ent., Inc.*, 2018 WL 11471777, at *6 (C.D. Cal. Nov. 2, 2018) (approving preliminary settlement representing 2.4% of total estimated damages); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving final settlement representing "approximately 1.3% of the amount of damages that could be achieved"); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12-*13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement, over objections, representing 1.9% of the amount that could have been recovered).  Indeed, "there is no reason . . . why a satisfactory settlement could

---

[6]    "Because there is no governmental entity involved in this litigation," the seventh *Hanlon* factor ("presence of a governmental participant") is inapplicable.  *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).  Regarding the eighth *Hanlon* factor ("the reaction of the class members to the proposed settlement"), the Class's reaction is not yet available for consideration because notice of the Settlement has not yet been provided to the Class.  *See, e.g.*, *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (noting "'a full fairness analysis is unnecessary at this stage'" because some factors bearing on the propriety of settlement cannot be assessed prior to a final approval hearing).

[7]    When compared to Defendants' significantly lower damages estimate of $118 million, the Settlement Amount represents 13.5% of the estimated aggregate damages – an incredibly successful result for the Class.

[8]    *See* NERA Report at 27, fig. 24.

1    not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

2    *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *see Morris v. Affinity Health Plan,*

3    *Inc.*, 859 F. Supp.2d 611, 621 (S.D.N.Y. 2012) ("'It is well-settled that a cash settlement amounting

4    to only a fraction of the potential recovery will not *per se* render the settlement inadequate or

5    unfair.'").  Given the paucity of available funds to satisfy a judgment, a $15.95 million settlement at

6    this stage of the litigation is in the best interests of the class.  *See Nat'l Rural Telecomms. Coop. v.*

7    *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("'In this respect, it has been held proper "to

8    take the bird in the hand instead of a prospective flock in the bush."'").

9        Accordingly, the immediacy and certainty of a $15.95 million recovery is of significant

10    benefit to the Class and strongly supports preliminary approval.

11        **2.    *Hanlon* Factor 6: The Experience and Views of Counsel**

12        The opinion of experienced counsel supporting a class settlement after arm's-length

13    negotiations is entitled to considerable weight.  *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D.

14    Cal. Dec. 19, 2017).  "[I]ndeed a presumption of fairness is usually appropriate if class counsel

15    recommends the settlement after arm's-length bargaining."  *Volkswagen I*, 2018 WL 6198311, at *5.

16    By the time settlement discussions began, Plaintiff's counsel had a firm understanding of the

17    strengths and weaknesses of the claims, both factually and legally.  "There is nothing to counter the

18    presumption that Lead Counsel's recommendation is reasonable."  *In re Omnivision Techs., Inc.*, 559

19    F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also In re Washington Pub. Power Supply Sys. Sec.*

20    *Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955

21    F.2d 1268 (9th Cir. 1992) ("Counsels' opinions warrant great weight both because of their

22    considerable familiarity with this litigation and because of their extensive experience in similar

23    actions.").

24        Because the Settlement is the product of serious, informed, and non-collusive negotiations

25    among experienced counsel and a highly qualified mediator, it is suited for preliminary approval.  In

26    sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.  Given the

27    litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel,

28

4926-9633-1317.v2

1  the $15.95 million recovery is significant.  And it could not have been achieved without the full

2  commitment of Plaintiff and its counsel.

3  **III.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

4          The Settling Parties have agreed, for purposes of settlement, to certification of the following

5  Class: "all Persons who purchased or otherwise acquired Spectrum common stock between March 7,

6  2018, and August 5, 2021, inclusive."  Stipulation, ¶¶1.4, 1.6, 1.25.[9]

7          At this stage, the Court should determine whether it "will likely be able" to grant certification

8  to the proposed class at final approval.  Fed. R. Civ. P. 23(e)(1)(B).  Plaintiff submits that the Class

9  satisfies the requirements of both Rule 23(a) (numerosity, commonality, typicality, and adequacy of

10  representation) and Rule 23(b)(3).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

11          **A.    The Class Satisfies Rule 23(a)**

12          **Numerosity**: The numerosity requirement is met where the proposed class is "so numerous

13  that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "While no specific minimum

14  number of potential class members exists, a 'proposed class of at least forty members presumptively

15  satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL

16  1042502, at *4 (N.D. Cal. Mar. 16, 2016).  "The Court certainly may infer that, when a corporation

17  has millions of shares trading on a national exchange, more than 40 individuals purchased stock over

18  the course of more than a year."  *Borteanu v. Nikola Corp.*, 2025 WL 33147, at *4 (D. Ariz. Jan. 6,

19  2025); *Hayes v. Magnachip Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22,

20  2016).

21          Numerosity is easily met here, as Spectrum common stock traded on the NASDAQ and had

22  more than 100 million shares outstanding during the Class Period.  ECF 100-20 at 9.  *See SEB Inv.*

23  *Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity satisfied with

24  "over six-hundred thousand outstanding shares of Symantec common stock during the class period").

25  
---
[9]    Excluded from the Class are: (i) Defendants and members of the Individual Defendants'
26  immediate families; (ii) the officers and directors of Spectrum during the Class Period, and members
of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the
27  foregoing; and (iv) any entity in which any Defendant has or had a controlling interest.  Also
excluded from the Class are those Persons who would otherwise be a Class Member but who timely
28  and validly exclude themselves.  Stipulation, ¶1.4.

**Commonality**: Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). "Commonality exists where 'the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.'" *Fleming v. Impax Lab'ys*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008)).

Here, the Amended Complaint alleges that Class Members have all suffered a common injury – losses on their investments in Spectrum common stock – and their claims depend upon numerous common issues capable of class-wide resolution, including: (a) whether Defendants' alleged misrepresentations violated the Exchange Act; (b) whether Defendants' alleged misrepresentations and omissions were material; (c) whether Defendants acted knowingly or recklessly; (d) whether certain Defendants controlled Spectrum; (e) whether Defendants' alleged misrepresentations and omissions caused the Class to suffer a compensable loss; (f) whether the Individual Defendants had control over the makers of Defendants' alleged misrepresentations and omissions; and (g) whether the Class has sustained damages, and the proper measure of damages. Because "the complaint alleges a common course of conduct over the entire period directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial." *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428 (D. Ariz. 2013); *Nikola Corp.*, 2025 WL 33147, at *5; *In re THQ, Inc. Sec. Litig.*, 2002 WL 1832145, at *3 (C.D. Cal. Mar. 22, 2002) ("[R]epeated misrepresentations of this sort satisfy the 'common question' requirement.").

**Typicality**: Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the Class' claims. Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685. "The purpose of the typicality requirement is to 'assure that the interest of the named representative aligns with the interests of the class.'" *In re Intuitive*

- 13 -

*Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal. Dec. 22, 2016). "'Under the rule's permissive standards, representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

Plaintiff's claims here are "typical" of other Class Members, as they "are based on the same theories of liability." *First Solar, Inc.*, 295 F.R.D. at 428. There are no separate claims raised by Plaintiff, and there are no defenses that would be unique to Plaintiff. Thus, there is no concern that Plaintiff's interests are not aligned with the interests of the Class.

**Adequacy**: Under Rule 23(a)(4), the parties representing the Class must "fairly and adequately protect the interests of the class," which presents two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Symantec Corp.*, 335 F.R.D. at 284-85. As discussed above in connection with the adequacy requirement of Rule 23(e)(2)(A) (*see* §II.A.1, *supra*), Plaintiff and Lead Counsel readily satisfy these requirements. Plaintiff's and Lead Counsel's interests are directly aligned with the interests of the other Class Members, and they have vigorously litigated this case to a successful result for the Class.

## B. The Proposed Class Satisfies Rule 23(b)(3)'s Predominance and Superiority Requirements

Plaintiff seeks to certify the Class pursuant to Rule 23(b)(3), as: (1) questions of law or fact common to the Class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

**Predominance**: The predominance inquiry of Rule 23(b)(3) asks whether "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hatamian*, 2016 WL 1042502, at *3. As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625; *First Solar, Inc.*, 295 F.R.D. at 429.

4926-9633-1317.v2

1    The common questions identified above predominate over individual questions because

2    Defendants' alleged misrepresentations affected the entire Class in the same manner.  *Vataj v.*

3    *Johnson*, 2021 WL 1550478, at *6 (N.D. Cal. Apr. 20, 2021) (finding common questions

4    predominate where the same operative facts apply to each class member).  Moreover, virtually all the

5    elements under §§10(b) and 20(a) of the Exchange Act involve common questions of law and fact

6    that predominate over individualized issues.  *Fleming*, 2021 WL 5447008, at *6; *In re Cooper Cos.,*

7    *Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009); *Homyk v. ChemoCentryx, Inc.*, 2024 WL

8    1141699, at *7 (N.D. Cal. Mar. 6, 2024).

9    **Superiority**: The superiority element of Rule 23(b)(3) tests whether class treatment is

10    "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

11    Civ. P. 23(b)(3).  In securities fraud cases such as this one, where "recovery on an individual basis

12    would be dwarfed by the cost of litigating on an individual basis," a class action is the superior

13    method of adjudication.[10]  *Wolin*, 617 F.3d at 1175; *Nikola Corp.*, 2025 WL 33147, at *14 ("The

14    Ninth Circuit has also recognized that class actions are an effective way to pursue shareholders'

15    actions for securities fraud . . . .").

16    Accordingly, Rules 23(a) and 23(b)(3) are satisfied, and there are no issues that would

17    prevent the Court from certifying the Class for settlement purposes, appointing Plaintiff as Class

18    Representative, and appointing Lead Counsel as Class Counsel pursuant to Rule 23(g).

19    **IV.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE**

20    Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable

21    under the circumstances, including individual notice to all members who can be identified through

22    reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Courts have held that a proposed "'[n]otice is

23    satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with

24    adverse viewpoints to investigate and to come forward and be heard."'" *Rodriguez*, 563 F.3d at 962.

25

26

_____

[10]    When a class is seeking certification for purposes of settlement, "[t]he superiority inquiry
27    focuses '"on the efficiency and economy elements of the class action so that cases allowed under
[Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis."'" *Ford*
28    *v. CEC Ent., Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (alteration in original).

- 15 -

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will collectively apprise recipients of (among other disclosures): (i) the nature of the Action; (ii) the definition of the Court-certified Class; (iii) the claims and issues involved; (iv) that a Class Member may enter an appearance through an attorney if desired; (v) that Class Members may object to the proposed Settlement, Plan of Allocation, or attorneys' fee and expense requests or request exclusion from the Class; and (vi) the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).

The content of the proposed notice forms are all "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Rule 23(h)(1) also requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed notices each satisfy this requirement, as they notify the Class that Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Amount and litigation expenses in an amount not to exceed $200,000 to be paid from the Settlement Fund. Plaintiff's Counsel's fee application will be filed and posted on the settlement website prior to the deadline for filing objections.

The long-form Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement amount in the aggregate and on an average per security basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intends to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. §78u-4(a)(7).

In sum, the proposed notice program satisfies all applicable requirements, and the Court should approve the proposed form and method of giving notice to the Class.

## V.    PROPOSED SETTLEMENT SCHEDULE

Plaintiff proposes the schedule to consider final approval of the Settlement set forth in the chart below, as agreed to by the Settling Parties and set forth in the proposed Preliminary Approval Order.  Additionally, Plaintiff requests that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  The Court need only enter the date of the Settlement Hearing at ¶6 of the Preliminary Approval Order, as all other dates referenced below will be set based on either (a) the date the Preliminary Approval Order is entered, or (b) the date selected by the Court for the Settlement Hearing.

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for mailing/e-mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") and posting the Notice and Proof of Claim on the Settlement website | Not later than 21 calendar days after entry of Preliminary Approval Order ("PAO") (PAO, ¶9) |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after Notice Date (PAO, ¶9) |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses | Not later than 35 calendar days prior to Settlement Hearing (PAO, ¶20) |
| Deadline for filing reply papers | Not later than 7 calendar days prior to Settlement Hearing (PAO, ¶20) |
| Deadline for filing of objections, or submitting requests for exclusion from the Class | Not later than 21 calendar days prior to Settlement Hearing (PAO, ¶¶14, 16) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO, ¶6) |
| Deadline for Proofs of Claim to be postmarked/submitted electronically | No later than 90 calendar days from the Notice Date (PAO, ¶12) |

## VI.    CONCLUSION

For each of the foregoing reasons, the Court should enter the Preliminary Approval Order, which will: (a) preliminarily approve the Settlement; (b) preliminarily certify the Class for settlement purposes; (c) appoint Verita Global as Claims Administrator; (d) approve the form and manner of

1   providing notice to the Class; and (e) set a Settlement Hearing date to consider final approval of the

2   Settlement and set deadlines for related matters.

3   DATED: May 9, 2025                          Respectfully submitted,

4                                               ROBBINS GELLER RUDMAN
5                                                 & DOWD LLP
                                                ELLEN GUSIKOFF STEWART
6                                               RYAN A. LLORENS
                                                JEFFREY J. STEIN
7                                               JOHN M. KELLEY
                                                SARAH A. FALLON
8                                               JESSICA E. ROBERTSON

9

10                                                     s/ Jeffrey J. Stein
11                                               JEFFREY J. STEIN

12                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101
13                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)
14                                              elleng@rgrdlaw.com
                                                ryanl@rgrdlaw.com
15                                              jstein@rgrdlaw.com
                                                jkelley@rgrdlaw.com
16                                              sfallon@rgrdlaw.com
17                                              jrobertson@rgrdlaw.com

18                                              Lead Counsel for Lead Plaintiff International
                                                Trading Group, Inc.
19

20                                              CAMPBELL & WILLIAMS
                                                J. COLBY WILLIAMS
21                                              710 South Seventh Street, Suite A
                                                Las Vegas, Nevada  89101
22                                              Telephone:  702/382-5222
                                                702/382-0540 (fax)
23                                              jcw@cwlawlv.com

24                                              Local Counsel for Lead Plaintiff International
25                                              Trading Group, Inc.

26

27

28

4926-9633-1317.v2