CAMPBELL & WILLIAMS
J. COLBY WILLIAMS (5549)
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

Local Counsel for Lead Plaintiff
International Trading Group, Inc.

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
SARAH A. FALLON
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com
sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff
International Trading Group, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE CHUNG LUO, Individually and on Behalf of All Others Similarly Situated, <br><br>                     Plaintiff, <br><br>      vs. <br><br> SPECTRUM PHARMACEUTICALS, INC., et al., <br><br>                 Defendants. | No. 2:21-cv-01612-CDS-BNW <br><br> <u>CLASS ACTION</u> <br><br> STIPULATION OF SETTLEMENT |

4912-8117-6112.v3

This Stipulation of Settlement, dated May 9, 2025 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff International Trading Group, Inc. ("Lead Plaintiff"), on behalf of itself and each Class Member,[1] by and through its counsel of record in *Luo v. Spectrum Pharmaceuticals, Inc., et al.*, Case No. 2:21-cv-01612-CDS-BNW (D. Nev.) (the "Litigation"); and (ii) Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company"),[2] Joseph W. Turgeon, Kurt A. Gustafson, Francois J. Lebel, and Thomas J. Riga (collectively, "Individual Defendants" and together with Spectrum, the "Defendants"), by and through their counsel of record in the Litigation. The Lead Plaintiff and the Defendants are referred to herein as the "Parties" or "Settling Parties." The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Plaintiff's Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.    THE LITIGATION

The Litigation is currently pending before Judge Cristina D. Silva in the United States District Court for the District of Nevada (the "Court"). The initial complaint in the Litigation was filed on August 31, 2021. On July 28, 2022, the Court appointed International Trading Group, Inc. as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On September 26, 2022, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Complaint") alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"). On November 30, 2022, Defendants moved to dismiss the Complaint. Lead Plaintiff filed its opposition to the motion on January 27, 2023, and Defendants filed their reply on February 27, 2023. The Court held a hearing on Defendants' motion to dismiss on February 6, 2024, and granted the motion without prejudice.

On March 29, 2024, Lead Plaintiff filed the Second Amended Consolidated Class Action Complaint (the "Amended Complaint"). Defendants moved to dismiss the Amended Complaint on May 13, 2024. Lead Plaintiff filed its opposition to the motion to dismiss on June 27, 2024, and

---

[1]    All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

[2]    Spectrum was acquired by Assertio Holdings, Inc. on July 31, 2023.

Defendants filed their reply brief on July 22, 2024. On October 7, 2024, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the Amended Complaint.

On October 23, 2024, Lead Plaintiff and Defendants filed their joint proposed discovery plan and proposed schedule, which was entered on October 24, 2024.

The Court's October 7, 2024 Order also referred the case to a magistrate judge for a mandatory settlement conference pursuant to Local Rule 16-5. Magistrate Judge Brenda Weksler scheduled a settlement conference for January 22, 2025.

The Parties thereafter agreed to engage a private mediator and on January 10, 2025, Magistrate Judge Weksler entered an order granting the Parties' Joint Motion to Abate the Settlement Conference and Amend Scheduling Order.

Lead Plaintiff and Defendants participated in a voluntary confidential mediation session with David M. Murphy (of Phillips ADR), an experienced mediator, on March 20, 2025. The mediation session was preceded by the submission and exchange of opening and reply mediation statements by both Lead Plaintiff and Defendants. The Parties engaged in good-faith negotiations, but did not reach a settlement at the mediation session. Following additional settlement discussions with Mr. Murphy, on March 26, 2025, the Parties accepted a mediator's proposal to settle the Litigation in return for a cash payment of $15.95 million to be paid by Defendants and/or their insurers on behalf of Defendants for the benefit of the Class, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court. This Stipulation (together with the Exhibits hereto) has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement among the Settling Parties.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied, and continue to deny, any and all of the claims alleged in the Litigation, including any allegations of fault, liability, wrongdoing, or damages whatsoever. Specifically, Defendants expressly have denied, and continue to deny, that they have committed any act or made any materially misleading statement giving rise to any liability under the federal securities laws. Defendants expressly have denied, and continue to deny, that they have committed any wrongdoing or violations of law as alleged in any complaint in the Litigation or that

1  could have been alleged in the Litigation, and Defendants maintain that their conduct was at all times
2  proper and in compliance with applicable provisions of law.  Defendants also have denied, and
3  continue to deny, that they made any material misstatement or omission or engaged in any fraudulent
4  schemes; that the price of Spectrum common stock was artificially inflated during the Class Period
5  as a result; that any Class Member, including Lead Plaintiff, suffered any damages; or that any Class
6  Member, including Lead Plaintiff, was harmed by any conduct alleged in the Litigation or that could
7  have been alleged therein.  Defendants maintain that they have meritorious defenses to all claims
8  alleged in the Litigation.

9     As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be
10  construed or deemed to be evidence of or constitute an admission, concession, or finding with
11  respect to any claim or allegation of any fault, liability, wrongdoing, or damage whatsoever, or any
12  infirmity in the defenses that Defendants have, or could have, asserted.  Defendants are entering into
13  this Stipulation solely to eliminate the burden, expense, and uncertainty of further litigation.
14  Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in
15  the manner and upon the terms and conditions set forth in this Stipulation.

16  **III.    LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT**

17     Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit
18  and that the evidence developed to date supports the claims asserted therein.  However, Lead
19  Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued
20  proceedings necessary to prosecute the Litigation through trial and through appeals.  Lead Plaintiff
21  and Lead Counsel also have taken into account the uncertain outcome and the risks of any litigation,
22  especially in a complex action such as this Litigation, as well as the difficulties and delays inherent
23  in this Litigation.  Lead Plaintiff and Lead Counsel also are mindful of the inherent problems of
24  proof under and possible defenses to the securities law violations asserted in the Litigation.  Lead
25  Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial
26  benefits upon the Class.  Based on their own investigation and evaluation, Lead Plaintiff and Lead
27  Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of
28  Lead Plaintiff and the Class.

- 3 -

**IV.    TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, without any concession by Lead Plaintiff that the Litigation lacks merit, and without any concession by Defendants of any liability, wrongdoing, fault, damages, or lack of merit in the defenses asserted, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (on behalf of itself and the Class Members) and Defendants, by and through their respective counsel, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement, the Litigation, and the Released Plaintiff's Claims shall be finally, fully, and forever compromised, settled, and released, and the Litigation shall be dismissed with prejudice upon and subject to the terms and conditions of this Stipulation, as follows:

**1.    Definitions**

As used in this Stipulation and in any Exhibits attached hereto and made a part hereof, the following terms, when capitalized, have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member who submits a valid Claim to the Claims Administrator that is accepted for payment pursuant to the Court-approved Plan of Allocation.

1.2    "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form or an electronic claim that is submitted to the Claims Administrator.

1.3    "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

1.4    "Class" means all Persons who purchased or otherwise acquired Spectrum common stock between March 7, 2018, and August 5, 2021, inclusive. Excluded from the Class are: (i) Defendants and members of the Individual Defendants' immediate families; (ii) the officers and directors of Spectrum during the Class Period, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in

4912-8117-6112.v3

which any Defendant has or had a controlling interest. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion. To the extent any Spectrum employee benefit plan receives a distribution from the Net Settlement Fund, no portion shall be allocated to any Person who is excluded from the Class by definition.

1.5    "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶1.4 above.

1.6    "Class Period" means the period between March 7, 2018, and August 5, 2021, inclusive.

1.7    "Defendants' Counsel" means Baker Botts L.L.P. and Pisanelli Bice PLLC.

1.8    "Effective Date," or the date upon which this Settlement becomes "Effective," means the first date by which all of the events and conditions specified in ¶7.1 of this Stipulation have been met and have occurred or have been waived.

1.9    "Escrow Account" means an interest-bearing account established by the Escrow Agent. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Lead Plaintiff and the Class in accordance with the terms of this Stipulation and any order of the Court.

1.10    "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor(s).

1.11    "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. Without limitation, an order or Judgment

becomes Final when either: (a) no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal from the Judgment or order has been filed and either: (i) the court of appeals has either affirmed the order or Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or Judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal. For purposes of this paragraph, an "appeal" shall include any motion for reconsideration or petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (a) attorneys' fees, costs, or expenses; (b) the Plan of Allocation (as submitted or subsequently modified); or (c) the procedures for determining Authorized Claimants' recognized Claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

  1.12 "Individual Defendants" means, collectively, Joseph W. Turgeon, Kurt A. Gustafson, Francois J. Lebel, and Thomas J. Riga.

  1.13 "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B, to be entered by the Court.

  1.14 "Lead Counsel" means the law firm of Robbins Geller Rudman & Dowd LLP.

  1.15 "Lead Plaintiff" means International Trading Group, Inc.

  1.16 "Lead Plaintiff's Counsel" means any attorney or firm who has appeared in the Litigation on behalf of any plaintiff or proposed class.

4912-8117-6112.v3

1.17    "Litigation" means the lawsuit pending in the United States District Court for the District of Nevada captioned *Luo v. Spectrum Pharmaceuticals, Inc., et al.*, No. 2:21-cv-01612-CDS-BNW.

1.18    "Net Settlement Fund" means the Settlement Fund less: (a) any Court-awarded attorneys' fees, expenses, and interest thereon; (b) Notice and Administration Expenses; (c) Taxes and Tax Expenses; and (d) other Court-approved deductions.

1.19    "Notice and Administration Expenses" means actual notice and administration expenses, including reasonable costs and expenses actually incurred with providing notice of the Settlement to the Class by mail, email, publication, and other means, locating potential Class Members, assisting with the submission of Claims, processing Proofs of Claim, administering the Settlement, and paying escrow taxes, fees and costs, if any.

1.20    "Person(s)" means an individual, corporation (including all divisions and subsidiaries), limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, professional corporation, joint venture, fund, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and all of their respective spouses, heirs, beneficiaries, trustees, transferees, executors, administrators, predecessors, successors, representatives, or assignees.

1.21    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and neither Defendants nor the Released Defendant Parties shall have any responsibility or liability with respect thereto.  Any order of the Court modifying or rejecting the Plan of Allocation will not affect the finality or binding nature of the Settlement.

4912-8117-6112.v3

1.22    "Postcard Notice" means the notice, as approved by the Court and as described in ¶3.1 and in the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A-4, which is to be emailed or mailed to potential Class Members informing them of the Settlement contemplated by this Stipulation.

1.23    "Preliminary Approval Order" means an order entered by the Court, substantially in the form of Exhibit A attached hereto, granting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) certification of the Class solely for purposes of the Settlement; and (iii) approval for the mailing and emailing of the Postcard Notice, publication of the Summary Notice, and the posting of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release form on the case-designated website, substantially in the forms of Exhibits A-1 through A-4 attached hereto.

1.24    "Proof of Claim" means the Proof of Claim and Release form for submitting a Claim. Subject to approval of the Court, the Proof of Claim shall be substantially in the form attached hereto as Exhibit A-2, which a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.25    "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known or unknown, including Unknown Claims (as defined below), whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or inequity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Lead Plaintiff or any other Class Member has or could have asserted in any court or forum, based on, arising out of, or in connection with: (i) any purchase or acquisition of Spectrum common stock during the period between March 7, 2018, and August 5, 2021, inclusive; and (ii) the allegations, acts, facts, matters, occurrences, transactions, disclosures, filings, representations, statements, or

4912-8117-6112.v3

omissions that were or could have been alleged by Lead Plaintiff or any other Member of the Class in the Litigation.  Released Plaintiff's Claims do not include: (i) any claims related to the enforcement of the Settlement; (ii) any claims asserted in the actions styled: (a) *Christiansen v. Spectrum Pharmaceuticals, Inc.*, Case No. 1:22-cv-10292-VEC (S.D.N.Y.); (b) *Ayoub v. Spectrum Pharmaceuticals, Inc.*, Case No. 1:24-cv-8138-VEC (S.D.N.Y.); (c) *Changyoung Jung, derivatively on behalf of Spectrum Pharmaceuticals, Inc. and Assertio Holdings, Inc. v. Francois Lebel, et al.*, Case No. 2024-0821 (Del. Ch.); or (d) *Changyoung Jung, derivatively on behalf of Spectrum Pharmaceuticals, Inc. and Assertio Holdings, Inc. v. Joseph Turgeon, et al.*, Case No. 2024-0822 (Del. Ch.); (iii) any claims arising out of ERISA; or (iv) any claims of any Person who or which submits a request for exclusion from the Class that is accepted by the Court.

1.26    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims (as defined in ¶1.36), whether arising under federal, state, common, or foreign law, against the Releasing Plaintiff Parties (as defined below) that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation.  Released Defendants' Claims do not include: (i) any claims relating to the enforcement of the Settlement; or (ii) any claims against any Person who or which submits a request for exclusion from the Class that is accepted by the Court.

1.27    "Released Defendant Party" or "Released Defendant Parties" or "Defendants' Released Persons" mean any or all of Defendants and/or any or all of their current, former, or future parents, affiliates, subsidiaries, business units, divisions, or controlling shareholders; and each and all of their and Defendants' respective current, former, or future officers, directors, employees, members, managers, partners, principals, controlling shareholders, agents, advisors, accountants, auditors, insurers, reinsurers, and attorneys; and the predecessors, successors, estates, assigns,

4912-8117-6112.v3

assignees, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives of each of them, in their capacities as such.

1.28    "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" mean Lead Plaintiff, all other plaintiffs in the Litigation, their respective attorneys, and all other Class Members, and each and all of their respective current, former, or future parents, affiliates, subsidiaries, business units, divisions, or controlling shareholders; each and all of their respective current, former, or future officers, directors, employees, members, managers, partners, principals, controlling shareholders, agents, advisors, accountants, auditors, insurers, reinsurers, and attorneys; and the predecessors, successors, estates, assigns, assignees, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representative of each of them, in their capacities as such.

1.29    "Releases" means the releases set forth in ¶¶4.1-4.6 of this Stipulation.

1.30    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.31    "Settlement Amount" means Fifteen Million Nine Hundred and Fifty Thousand U.S. Dollars (U.S. $15,950,000.00) to be paid by wire transfer(s) or check(s) to the Escrow Agent pursuant to ¶2.2 of this Stipulation.

1.32    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.33    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.34    "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Class.

4912-8117-6112.v3

1.35   "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.36   "Unknown Claims" means: (a) any and all Released Plaintiff's Claims that any of the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of such claims; and (b) any and all Released Defendants' Claims that any of the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement.  With respect to: (a) any and all Released Plaintiff's Claims against the Released Defendant Parties; and (b) any and all Released Defendants' Claims against the Releasing Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall fully, finally, and forever expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Releasing Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those

which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Plaintiff's Claims or Released Defendants' Claims, but: (a) the Releasing Plaintiff Parties shall expressly, fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Releasing Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Plaintiff's Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities; and (b) the Released Defendant Parties shall expressly, fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against Lead Plaintiff, the Class, and Lead Plaintiff's Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

4912-8117-6112.v3

### 2.    The Settlement

2.1    The obligations incurred pursuant to the Stipulation are: (a) subject to approval by the Court and the Judgment, reflecting such approval, becoming Final; and (b) in full and final disposition of the Litigation, and any and all Released Plaintiff's Claims and Released Defendants' Claims upon and subject to the terms and conditions set forth herein.

#### a.    The Settlement Amount

2.2    In full and final settlement of the claims asserted in the Litigation and in consideration of the Releases specified in ¶¶4.1-4.6 herein, Defendants' insurers shall pay or cause to be paid their portion of the Settlement Amount (of no less than $13,200,000.00) into the Escrow Account by wire transfer(s) or check(s) within fifteen (15) business days after the later of: (a) the date of entry by the Court of an order preliminarily approving the Settlement; or (b) the provision to Defendants' Counsel of all information necessary to effectuate a transfer of funds, including, but not limited to, complete mailing instructions or wire instructions, payment address, the bank name and ABA routing number, account name and number, the name and telephone contact information for a person with whom Defendants' insurers can verify the payment instructions, and a signed W-9 reflecting the taxpayer identification number for the Settlement Fund.  Defendants shall pay or cause to be paid their portion of the Settlement Amount (of the remaining amount needed, in addition to the insurers' payment described above, to total the full Settlement Amount) into the Escrow Account by wire transfer(s) or check(s) no later than the later of (a) five (5) business days after the date of entry by the Court of an order preliminarily approving the Settlement; or (b) July 1, 2025.  The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in the Escrow Account.

2.3    The Settlement Amount represents the entirety of Defendants' financial obligations under this Stipulation and in connection with this Settlement.  Other than the Defendants' obligation to pay or cause to be paid the Settlement Amount into the Escrow Account set forth in ¶2.2 herein,

the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (a) any act, omission, or determination by Lead Counsel, the Escrow Agent, or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (b) the management, investment, or distribution of the Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (e) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (f) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

2.4     If the entire Settlement Amount is not timely deposited into the Escrow Account, Lead Counsel may terminate the Settlement, but only if: (a) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement; and (b) the entire Settlement Amount is not transferred to the Escrow Account within three (3) business days after Lead Counsel has provided such written notice.

2.5     Other than the obligation to cause the payment of the Settlement Amount in accordance with the terms of ¶2.2 and the fees, costs, and expenses associated with providing notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 *et seq.* ("CAFA") (as discussed below in ¶5.1), the Released Defendant Parties shall have no obligation to make any other payments pursuant to this Stipulation.

**b.     The Escrow Agent**

2.6     The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Expenses; (c) any litigation expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4)

awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶5.4-5.10.

2.7     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.

2.8     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.2 hereof in United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All costs and risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for the actions of the Escrow Agent.

2.9     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' Counsel.

2.10    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Defendant Parties shall have no

4912-8117-6112.v3

responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any transaction executed by the Escrow Agent.

2.11    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.12    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay, without further approval from Defendants and/or order of the Court, all reasonable costs and expenses actually incurred in connection with providing notice of the Settlement by mail, publication, and other means, locating potential Class Members, assisting with the submission of Claims, processing Proofs of Claim, administering the Settlement, and paying escrow taxes, fees, and costs, if any ("Notice and Administration Expenses").

2.13    It shall be Lead Counsel's responsibility to disseminate the Postcard Notice, Notice, Proof of Claim, and Summary Notice to potential Class Members in accordance with this Stipulation and as ordered by the Court. The Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any Notice and Administration Expenses.

**c.    Taxes**

2.14    The Settling Parties agree as follows:

(a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation

§1.468B-1, and the regulations promulgated thereunder.  The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treasury Regulation §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.14, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treasury Regulation §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the elections described in ¶2.14(a) hereof) shall be consistent with this ¶2.14 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.14(c) hereof.

(c)    All: (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) expenses and costs incurred in connection with the operation and

implementation of this ¶2.14 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.14) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events, the Released Defendant Parties and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.14.

2.15    This is not a claims-made settlement.  As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims.  The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.

4912-8117-6112.v3

2.16    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Defendant Parties shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

### d.    Termination of Settlement

2.17    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses, Taxes and Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.12 and 2.14 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' Counsel in accordance with ¶7.3 herein.

### 3.    Preliminary Approval Order and Settlement Hearing

3.1    Promptly after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, preliminary approval of the Settlement set forth in this Stipulation pursuant to Federal Rule of Civil Procedure 23(e)(2), certification of the Class for settlement purposes only, and approval for the distribution of the Postcard Notice and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits A-4 and A-3, respectively, attached hereto.  The Postcard Notice shall direct Class Members to the Settlement website to access the Notice, which

shall contain the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing, as defined in ¶1.33 and below.

3.2    Defendants shall provide or cause to be provided to the Claims Administrator within ten (10) calendar days after entry of the Preliminary Approval Order, at no cost to Lead Plaintiff or the Class, a list in electronic format, containing the names and addresses and email addresses, if available, of record holders of Spectrum common stock during the Class Period, as set forth in the records of Spectrum's transfer agent.  It shall be solely Lead Counsel's responsibility to disseminate the Postcard Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure or deficiency of the notice process.

3.3    Lead Counsel shall request that, after notice is given and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice, at Defendants' expense, pursuant to CAFA, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.    Releases**

4.1    The obligations incurred pursuant to this Stipulation are in consideration of: (a) the full and final disposition of the Litigation as against Defendants; and (b) the Releases provided for herein.

4.2    Upon the Effective Date, as defined in ¶1.8 hereof, Lead Plaintiff and each other Member of the Class shall have, and each and every Releasing Plaintiff Party shall be deemed to

have, and by operation of law and of the Judgment shall have, to the fullest extent permitted by law, fully, finally, and forever compromised, settled, resolved, waived, released, relinquished, discharged, and dismissed each and every one of the Released Plaintiff's Claims against each and every one of the Released Defendant Parties and shall be deemed to have covenanted not to sue any Released Defendant Parties on the basis of any Released Plaintiff's Claims.  The foregoing release is given regardless of whether Lead Plaintiff or any Class Member has: (a) executed and delivered a Proof of Claim; (b) received the Notice; (c) participated in the Settlement Fund; (d) filed an objection to the Settlement, the proposed Plan of Allocation, or any application by Lead Plaintiff's Counsel for attorneys' fees and expenses; or (e) had their claims approved or allowed.  Nothing contained herein shall bar any action or claim to enforce the terms of this Stipulation or the Judgment.  Claims to enforce the terms of this Stipulation or the Judgment are not released.

4.3    Upon the Effective Date, as defined in ¶1.8 hereof, the Released Defendant Parties shall be deemed to have, and by operation of law and of the Judgment shall have, to the fullest extent permitted by the law, fully, finally, and forever compromised, settled, resolved, waived, released, relinquished, and discharged each and every one of Released Defendants' Claims against the Releasing Plaintiff Parties, and shall be deemed to have covenanted not to sue any Releasing Plaintiff Parties on the basis of the Released Defendants' Claims against any of the Releasing Plaintiff Parties.  This release shall not apply to any Person who or which submits a request for exclusion from the Class that is accepted by the Court.  Nothing contained herein shall bar any action or claim to enforce the terms of this Stipulation or the Judgment.  Claims to enforce the terms of this Stipulation or the Judgment are not released.

4.4    Any Proof of Claim that is executed by a Class Member shall acknowledge the release of all Released Plaintiff's Claims against the Released Defendant Parties pursuant to this Stipulation and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4912-8117-6112.v3

4.5     Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by the Class or a Class Member against any of the Released Defendant Parties with respect to any Released Plaintiff's Claims, or brought by a Released Defendant Party against any of the Releasing Plaintiff Parties with respect to any Released Defendants' Claim.

4.6     Notwithstanding ¶¶4.1-4.5 above, nothing in the Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1     As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator.  The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  With the exception that Defendants shall be responsible for providing any required notice under CAFA, including the costs and expenses thereof, the Released Defendant Parties and Defendants' Counsel shall have no responsibility for or interest whatsoever in the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Releasing Plaintiff Parties, including Lead Plaintiff, any other Class Members, or Lead Plaintiff's Counsel, in connection with such administration, including, but not limited to: (a) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (b) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (e) any losses suffered by, or

fluctuations in value of, the Settlement Fund; or (f) the payment or withholding of any Taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses;

(c)    to pay attorneys' fees and expenses of Lead Plaintiff's Counsel and to pay any award to Lead Plaintiff for its reasonable costs and expenses (including lost wages) pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court (the "Fee and Expense Award"); and

(d)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or orders of the Court.

5.3    After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4    Within ninety (90) calendar days after the dissemination of the Postcard Notice or such other time as may be set by the Court, each Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim.

5.5    Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will, in all other respects, be subject to and bound

- 23 -

by the provisions of this Stipulation, the Releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Plaintiff's Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Plaintiff's Counsel, the Claims Administrator, or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose Claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely Claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and

requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9    Each claimant who does not request to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's Claim, including, but not limited to, all Releases provided for herein and in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's Claim.  In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Litigation or the Settlement.  All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not, in any event, delay or affect the finality of the Judgment.  All Class Members, other claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) with respect to such determinations.

5.10    Following the Effective Date, the Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis*.  Any *de minimis* balance that still remains in the Net Settlement Fund

after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to an appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel.

5.11    The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth in ¶¶5.1-5.13 hereof; and the Releasing Plaintiff Parties release the Released Defendant Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12    No Person shall have any claim against the Released Defendant Parties, Lead Plaintiff, Lead Plaintiff's Counsel, the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

4912-8117-6112.v3

1

### 6. Lead Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") on behalf of Lead Plaintiff's Counsel for an award from the Settlement Fund for: (a) attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest earned on such attorneys' fees and expenses/charges at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Any such fees and expenses awarded shall be paid from the Settlement Fund. Any application for fees and expenses may include a request for reimbursement of Lead Plaintiff's reasonable costs and expenses in connection with its representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4). Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2    The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court. Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel shall thereafter allocate the attorneys' fees among Lead Plaintiff's Counsel in a manner in which it in good faith believes reflects the contribution of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including its partners and/or shareholders, and such other Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, and Lead Plaintiff

- 27 -

who have received any portion of the Fee and Expense Award shall, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon in an amount consistent with such reversal, modification, cancellation, or termination.  Any refunds required pursuant to this ¶6.3 shall be the several obligation of Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, and Lead Plaintiff if it received fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Each such Lead Plaintiff's Counsel or Lead Plaintiff receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of themselves and each of their partners and/or shareholders, agrees that: (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph; and (b) are severally liable for the full amount of all fees, expenses, and costs paid from the Settlement Fund.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by any Lead Plaintiff's Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and shall have no effect on the terms of the Stipulation or on the validity or enforceability of this Settlement.  The approval of the Settlement, and it becoming Final, shall not be contingent on the award of attorneys' fees and expenses, any award to Lead Plaintiff, Lead Counsel, or Lead Plaintiff's Counsel, nor any appeals from such awards.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or

affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein, or any other orders entered pursuant to this Stipulation.

6.5    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of Defendants' obligation to cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.2 and Defendants' own fees, costs, and expenses associated with providing notice under CAFA, as provided in ¶5.1, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, or any other counsel or Person who receives payment from the Settlement Fund.

6.6    The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Plaintiff's Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

6.7    The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order directing notice to the Class, as required by ¶3.1 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account;

- 29 -

4912-8117-6112.v3

(c)    Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(d)    Lead Plaintiff has not exercised its option to terminate the Settlement pursuant to the provisions of this Stipulation;

(e)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(f)    the Judgment has become Final, as defined in ¶1.11 hereof.

7.2    Upon the Effective Date, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Releases herein shall be effective.  The Released Defendant Parties shall not have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.  If the conditions specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.3-7.5 hereof unless the Settling Parties mutually agree in writing to proceed with the Settlement.  For avoidance of doubt, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel or expenses to Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.3    Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event: (a) the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked; (b) either party exercises any other ground for termination set forth in ¶7.4 of this Stipulation; or (c) Defendants exercise their right under the terms and within the time limit set forth in the Settling

- 30 -

Parties' supplemental agreement (the "Supplemental Agreement") to terminate the Settlement in their sole discretion if the opt-out threshold defined in the Supplemental Agreement is exceeded and not cured in accordance with the terms of the Supplemental Agreement, within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less Taxes, Tax Expenses, and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.12 and/or 2.14 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.12 and/or 2.14 hereof, shall be fully refunded by the Escrow Agent to the entities that paid the Settlement Fund on behalf of Defendants in proportion to their respective contribution. Such refunds shall be pursuant to written instructions from Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the entities that paid the Settlement Fund on behalf of Defendants. Such payments shall be pursuant to written instructions from Defendants' Counsel.

7.4     Lead Plaintiff and Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of: (a) the Court's refusal to enter the Preliminary Approval Order; (b) the Court's refusal to approve this Stipulation; (c) the Court's refusal to enter the Judgment; (d) the date upon which the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason. For avoidance of doubt, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel or expenses to Lead

Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.5    In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall not forfeit or waive any factual or legal defense or contention in the Litigation and shall be restored to their respective positions in the Litigation as of March 26, 2025.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.36, 2.10-2.17, 6.3, 7.3-7.6, 8.1, and 9.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

7.6    If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Lead Plaintiff's Counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.12 or 2.14.  In addition, any amounts already incurred pursuant to ¶¶2.12 or 2.14 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.17 and 7.3 hereof.

**8.    No Admission of Wrongdoing**

8.1    Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any acts, proceedings, communications, drafts, documents, or agreements taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered or received against or to the prejudice of any of the Released Defendant Parties as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Defendant Party of the truth of any allegations by Lead Plaintiff or any Member of the Class or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Plaintiff's Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Released Defendant Parties or in any way referred to for any other reason as against any of the Released Defendant Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered or received against or to the prejudice of Lead Plaintiff or any Class Member as evidence that Lead Plaintiff's claims in any way lack merit or the validity of any affirmative defense that has been or could have been asserted in the Litigation, including, but not limited to, litigation of the Released Plaintiff's Claims;

(c)     shall be offered or received against or to the prejudice of any Released Defendant Party as evidence of a presumption, concession, or admission of any fault, misrepresentation, scheme, or omission with respect to any statement or written document approved or made by any Released Defendant Party, or against Lead Plaintiff or any Member of the Class as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(d)     shall be offered or received against or to the prejudice of any Released Defendant Party as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided,

- 33 -

however, that if this Stipulation is approved by the Court, the Released Defendant Parties may refer to it to effectuate the release granted them hereunder; or

(e)    shall be construed against the Released Defendant Parties, Lead Plaintiff, or the Class as evidence of a presumption, concession, or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement.

## 9.    Miscellaneous Provisions

9.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

9.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  Pursuant to 15 U.S.C. §78u-4(c)(1), the Settling Parties agree that the Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  None of the Settling Parties shall disparage the others in their statements concerning the Litigation or the Settlement.  For the avoidance of doubt, neither describing the allegations in the Amended Complaint nor denying the allegations in the Amended Complaint shall be considered disparagement within the meaning of this paragraph.  Notwithstanding the foregoing, the Settling Parties reserve their right to rebut, in a

manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3     Defendants and/or the Released Defendant Parties may file this Stipulation and/or the Judgment from this Litigation in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy.   The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Judgment.   All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

9.4     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.5     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.   Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

9.6     This Stipulation, along with its Exhibits, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7     This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.   No representations, warranties, or inducements have been made to any party

concerning this Stipulation, or its Exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

9.8     Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

9.9     Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate.

9.10    Each counsel or other Person executing this Stipulation, its Exhibits, the Supplemental Agreement, or any related Settlement document, on behalf of any party hereto hereby warrants that such Person has the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms, without requiring additional consent, approval, or authorization of any other Person, board, entity, tribunal, or other regulatory or governmental authority.

9.11    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or pdf via e-mail shall be deemed originals.

9.12    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given when delivered personally to the recipient, including via email with confirmation of receipt and addressed to the intended recipient as set forth below:

4912-8117-6112.v3

*If to Lead Plaintiff or to Lead Counsel:*

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
elleng@rgrdlaw.com

*If to Defendants or to Defendants' Counsel:*

BAKER BOTTS L.L.P.
JOHN B. LAWRENCE
2001 Ross Avenue, Suite 900
Dallas, TX  75201
john.lawrence@bakerbotts.com

9.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Settling Parties.

9.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

9.15    Any waiver of any of the terms of this Stipulation must be in writing, signed by the party against whom the waiver is sought to be enforced.  The waiver by one Settling Party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or subsequent breach of this Stipulation.

9.16    Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Plaintiff's Claims against any of the Released Defendant Parties.

9.17    This Stipulation and its Exhibits and the Supplemental Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Nevada and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Nevada without

4912-8117-6112.v3

giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

9.18    Any action arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in the Court.

9.19    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.20    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.21    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.22    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS HEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated May 9, 2025.

> ROBBINS GELLER RUDMAN
>   & DOWD LLP
> ELLEN GUSIKOFF STEWART
> RYAN A. LLORENS
> JEFFREY J. STEIN
> JOHN M. KELLEY
> SARAH A. FALLON
> JESSICA E. ROBERTSON
>
>
> _____
> JEFFREY J. STEIN

4912-8117-6112.v3

1              655 West Broadway, Suite 1900
San Diego, CA 92101

2              Telephone: 619/231-1058

3              619/231-7423 (fax)
elleng@rgrdlaw.com

4              ryanl@rgrdlaw.com
jstein@rgrdlaw.com

5              jkelley@rgrdlaw.com

6              sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

7

8              Lead Counsel for Lead Plaintiff International Trading Group, Inc.

9              CAMPBELL & WILLIAMS
J. COLBY WILLIAMS

10            710 South Seventh Street, Suite A
Las Vegas, Nevada 89101

11            Telephone: 702/382-5222

12            702/382-0540 (fax)
jcw@cwlawlv.com

13            Local Counsel for Lead Plaintiff International

14            Trading Group, Inc.

15            BAKER BOTTS L.L.P.
KEVIN M. SADLER (pro hac vice)

16

17

18                            KEVIN M. SADLER

19            1001 Page Mill Road
Building One, Suite 200

20            Palo Alto, CA 94304
Telephone: 650/739-7500

21            BAKER BOTTS L.L.P.
JOHN B. LAWRENCE (pro hac vice)

22            2001 Ross Avenue, Suite 900
Dallas, TX 75201

23            Telephone: 214/953-6500

24            BAKER BOTTS L.L.P.

25            SCOTT D. POWERS (pro hac vice)
401 South First Street, Suite 1300

26            Austin, TX 78704
Telephone: 512/322-2500

27

28            Attorneys for Defendants

4912-8117-6112.v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE PLLC
JORDAN T. SMITH
400 South 7th Street, Suite 300
Las Vegas, NV  89101
Telephone:  702/214-2100

Counsel for Defendant Spectrum
Pharmaceuticals, Inc.

4912-8117-6112.v3