1  CAMPBELL & WILLIAMS
   J. COLBY WILLIAMS (5549)
2  710 South Seventh Street, Suite A
   Las Vegas, Nevada  89101
3  Telephone:  702/382-5222
   702/382-0540 (fax)
4  jcw@cwlawlv.com

5  ROBBINS GELLER RUDMAN
     & DOWD LLP
6  ELLEN GUSIKOFF STEWART
   RYAN A. LLORENS
7  JEFFREY J. STEIN
   JOHN M. KELLEY
8  SARAH A. FALLON
   JESSICA E. ROBERTSON
9  655 West Broadway, Suite 1900
   San Diego, CA  92101
10 Telephone:  619/231-1058
   619/231-7423 (fax)
11 elleng@rgrdlaw.com
   ryanl@rgrdlaw.com
12 jstein@rgrdlaw.com
   jkelley@rgrdlaw.com
13 sfallon@rgrdlaw.com
14 jrobertson@rgrdlaw.com

15
16 *Lead Counsel for Lead Plaintiff*
   *International Trading Group, Inc.*

17                    **UNITED STATES DISTRICT COURT**

18                         **DISTRICT OF NEVADA**

19
   JOSE CHUNG LUO, Individually and on      )   No. 2:21-cv-01612-CDS-BNW
20 Behalf of All Others Similarly Situated, )
                                            )   **CLASS ACTION**
21                         Plaintiff,       )
                                            )   **MOTION FOR FINAL APPROVAL OF**
22        vs.                               )   **PROPOSED SETTLEMENT AND**
                                            )   **APPROVAL OF PLAN OF ALLOCATION**
23 SPECTRUM PHARMACEUTICALS, INC., et )
   al.,                                     )
24                                          )
                           Defendants.      )
25 ―――――――――――――――――――――――――               )

26

27

28

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION .......................... 3

III.  THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL .................................................................................. 4

    A.  Plaintiff and Lead Counsel Have Adequately Represented the Class ................... 6

    B.  The Settlement was Negotiated at Arm's Length with the Assistance of an Experienced Neutral Mediator ................................................................ 7

    C.  The Proposed Settlement Provides a Favorable Recovery to the Class, Particularly Considering the Costs, Risks, and Delay of Litigation ....................... 8

        1.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Final Approval ........................................................ 8

        2.  The Recovery Amount Supports Final Approval ..................................... 12

        3.  The Extent of Discovery Completed and Stage of Proceedings Support Final Approval .............................................................. 13

        4.  The Experience of Lead Counsel Supports Final Approval ..................... 14

        5.  The Absence of Collusion Supports Final Approval ............................... 15

        6.  The Reaction of Class Members Supports Final Approval ....................... 16

    D.  The Remaining Rule 23(e)(2) Factors Also Support Final Approval ................... 17

IV.  CLASS CERTIFICATION REMAINS APPROPRIATE ................................................. 18

V.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL .................................................................. 19

VI.  NOTICE TO THE CLASS SATISFIES DUE PROCESS ................................................. 20

VII.  CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abadilla v. Precigen, Inc.*,
  2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................................16

*Andrade-Heymsfield v. Nextfoods, Inc.*,
  2024 WL 3871634 (S.D. Cal. Apr. 8, 2024) .........................................................................18

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 4260712 (S.D. Cal. July 24, 2020) ..........................................................................5

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) ........................................................................11

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ...........................................................................................4, 5

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..........................................................................6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................5, 7

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................................4

*Davis v. Yelp, Inc.*,
  2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ......................................................................11

*Derr v. Ra Med. Sys., Inc.*,
  2022 WL 21306534 (S.D. Cal. Sept. 23, 2022) ....................................................................14

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .....................................................................8, 13

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................................8

*Estakhrian v. Obenstine*,
  2016 WL 6517052 (C.D. Cal. Feb. 16, 2016)........................................................................17

*Evans v. Wal-Mart Store, Inc.*,
  2020 WL 886932 (D. Nev. Feb. 24, 2020) ..............................................................................4

*Fernandez v. CoreLogic Credco, LLC*,
  2024 WL 538585 (S.D. Cal. Feb. 9, 2024) ......................................................................17, 18

1

2                                                                                                **Page**

3

4    *Figueroa v. Cap. One, N.A.*,
        2021 WL 211551 (S.D. Cal. Jan. 21, 2021)................................................................11

5    *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ..............................................................................3, 18

6

7    *Harbour v. Cal. Health & Wellness Plan*,
        2024 WL 171192 (N.D. Cal. Jan. 16, 2024) .........................................................9, 14

8    *Harris v. Amgen Inc.*,
9        2017 WL 6048215 (C.D. Cal. Apr. 4, 2017) ..............................................................11

10   *Hefler v. Wells Fargo & Co.*,
        2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),

11       *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ............................8

12   *Heid v. Cyracom Int'l, Inc.*,
13       2024 WL 4008650 (S.D. Cal. Aug. 30, 2024) ...........................................................14

14   *Hernandez v. Arthur J. Gallagher Serv. Co.*,
        2024 WL 3941824 (S.D. Cal. Aug. 26, 2024) ...........................................................18

15

16   *Hudson v. Libre Tech. Inc.*,
        2020 WL 2467060 (S.D. Cal. May 13, 2020)..............................................................7

17   *Hunt v. Bloom Energy Corp.*,
18       2024 WL 1995840 (N.D. Cal. May 6, 2024) .............................................................11

19   *IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
        2012 WL 5199742 (D. Nev. Oct. 19, 2012) .........................................................12, 13

20

21   *In re Aqua Metals, Inc. Sec. Litig.*,
        2022 WL 612804 (N.D. Cal. Mar. 2, 2022)................................................................19

22   *In re Bluetooth Headset Prods. Liab. Litig.*,
23       654 F.3d 935 (9th Cir. 2011) .........................................................................5, 14, 15

24   *In re BofI Holding, Inc. Sec. Litig.*,
        2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ...........................................................10

25

26   *In re Chrysler-Dodge-Jeep EcoDiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
        2019 WL 2554232 (N.D. Cal. May 3, 2019) ...............................................................5

27   *In re Google Loc. Hist. Litig.*,
28       2024 WL 1975462 (N.D. Cal. May 3, 2024) .............................................................14

1

2                                                                      **Page**

3

4 *In re HCV Prison Litig.*,
  2020 WL 6363842 (D. Nev. Oct. 29, 2020) ........................................................11

5 *In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................................19

6

7 *In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ..............................................................................6

8

9 *In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................................................14

10 *In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................................13, 18

11

12 *In re MGM Grand Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) ......................................................................20

13

14 *In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................10

15 *In re Regulus Therapeutics Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ...................................................3, 19

16

17 *In re Splunk Inc. Sec. Litig.*,
  2024 WL 923777 (N.D. Cal. Mar. 4, 2024)........................................................13

18

19 *In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) ..............................................................................20

20 *Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 188364 (S.D. Cal. Jan. 18, 2022).........................................................7

21

22 *Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022)........................................................8

23

24 *Khoja v. Orexigen Therapeutics*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .........................................3, 7, 8, 10

25 *Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ............................................................................20

26

27 *Moreno v. Beacon Roofing Supply, Inc.*,
  2020 WL 3960481 (S.D. Cal. July 13, 2020) ........................................................4

28

**Page**

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................13, 14

*Officers for Just. v. Civil Serv. Com.*,
  688 F.2d 615 (9th Cir. 1982) .........................................................................5, 12

*Patel v. Axesstel, Inc.*,
  2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .....................................................15

*Riker v. Gibbons*,
  2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................................11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .........................................................................9, 20

*Santillan v. Verizon Connect, Inc.*,
  2024 WL 627998 (S.D. Cal. Feb. 13, 2024) ........................................................11

*Scott v. Blackstone Consulting, Inc.*,
  2024 WL 271439 (S.D. Cal. Jan. 24, 2024)...........................................................5

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................4

*Stevens v. Safeway Inc.*,
  2008 WL 11496497 (C.D. Cal. Feb. 25, 2008).....................................................15

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................5

*Tyus v. Wendy's of Las Vegas, Inc.*,
  2021 WL 2169928 (D. Nev. May 27, 2021).......................................................4, 5

*United States v. Armour & Co.*,
  402 U.S. 673 (1971)........................................................................................12

*Ziegler v. GW Pharms., PLC*,
  2024 WL 1470532 (S.D. Cal. Apr. 3, 2024).........................................................13

1

**Page**

2

**STATUTES, RULES, AND REGULATIONS**

3

Federal Rules of Civil Procedure

4    Rule 23 ...................................................................................................1, 20

5    Rule 23(a) ....................................................................................................18

6    Rule 23(b)(3) ...............................................................................................18

    Rule 23(c)(2)(B) .........................................................................................19

7    Rule 23(e) ...................................................................................................1, 4

    Rule 23(e)(1)(B) .........................................................................................19

8    Rule 23(e)(2) ........................................................................................ *passim*

9    Rule 23(e)(2)(C) ...........................................................................................7

    Rule 23(e)(2)(C)(ii)-(iv) ....................................................................4, 5, 7, 16

10    Rule 23(e)(2)(C)(iii) ...................................................................................17

11    Rule 23(e)(2)(C)(iv) ...................................................................................17

    Rule 23(e)(2)(D) .........................................................................................16

12

**SECONDARY AUTHORITIES**

13

Edward Flores & Svetlana Starykh,

14    *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*

15    (NERA Jan. 22, 2025) .................................................................................12

16

Edward Flores & Svetlana Starykh,

    *Recent Trends in Securities Class Action Litigation: H1 2025 Update*

17    (NERA July 29, 2025) ................................................................................12

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Lead Plaintiff International Trading Group, Inc. ("Plaintiff"), by and through its counsel of record, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), respectfully submits this motion for an Order: (i) granting final approval to the proposed Settlement, which the Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated June 16, 2025 (ECF 138) (the "Preliminary Approval Order"); (ii) certifying the Class for settlement purposes; and (iii) approving the proposed plan for allocating the Settlement proceeds to the Class (the "Plan of Allocation").[1]

## POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

The proposed Settlement provides a cash payment of $15.95 million (the "Settlement Amount") in exchange for the dismissal of all claims brought in the Litigation and a full release of claims against the Released Defendant Parties.  The $15.95 million recovery obtained here is fair, reasonable, and adequate under the circumstances and warrants the Court's approval.[2]  This is particularly so considering the substantial risks the Class would otherwise face in proceeding with the litigation.

The Settlement was reached only after hard-fought litigation and well-informed and extensive arm's-length negotiations between skilled and knowledgeable counsel.  The Settlement was facilitated by an experienced mediator – David M. Murphy of Phillips ADR Enterprises.  Stein Decl., ¶4.  By the time this Settlement was achieved, Plaintiff and Lead Counsel had: (i) investigated, drafted, and filed a detailed Amended Consolidated Class Action Complaint ("First Amended Complaint"); (ii) researched, drafted, and argued an opposition to Defendants'

---

[1]     The terms of the Settlement are set forth in the Stipulation of Settlement dated May 9, 2025 (ECF 131) (the "Stipulation").  All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation.  Emphasis is added and citations are omitted throughout unless otherwise noted.

[2]     *See* accompanying Declaration of Jeffrey J. Stein in Support of: (1) Motion for Final Approval of Proposed Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Stein Decl.").

1    motion to dismiss the First Amended Complaint; (iii) investigated and drafted the Second

2    Amended Consolidated Class Action Complaint (the "Second Amended Complaint"); (iv)

3    successfully defeated Defendants' second motion to dismiss in part; (v) negotiated a case schedule

4    with Defendants; (vi) served document requests, interrogatories, and requests for admission on

5    Defendants; (vii) negotiated a protective order and ESI protocol governing the production and use

6    of documents and other discovery in the litigation; (viii) engaged in protracted negotiations with

7    Defendants regarding the disputed scope of discovery and production of relevant and responsive

8    documents; and (ix) participated in a mediation with Mr. Murphy, culminating in a mediator's

9    proposal that the parties accepted.  *See* Stein Decl., ¶4.  There is no question that Plaintiff and Lead

10   Counsel had a thorough understanding of the strengths and weaknesses of the Class's claims prior

11   to agreeing to this proposed Settlement.

12        Defendants asserted aggressive defenses throughout the Litigation and, had the Settlement

13   not been reached, the putative class would have faced complex hurdles to prove its case.  Indeed,

14   the parties disputed which alleged misstatements remained in the case following the Court's Order

15   on Defendants' motion to dismiss the Second Amended Complaint, whether the contents of any

16   dismissed misstatements bore relevance on the surviving claims for discovery purposes, and the

17   length of the relevant time period.  Defendants strenuously opposed producing any discovery

18   outside of an 11-month period in 2018, and at the time this Settlement was reached, had agreed to

19   produce discovery limited to only a narrow list of discoverable issues, which would have the

20   amount of recoverable damages to approximately one-quarter of the damages Plaintiff claimed.

21   *See* ECF 130; Stein Decl., ¶8.  Defendants' defenses to falsity, loss causation, and scienter, and

22   Plaintiff's ability to collect on any judgment created additional risks.  *Id.*, ¶¶48-50.

23        The reaction of the Class thus far also supports the Settlement.  As an initial matter, the

24   Court-appointed Lead Plaintiff, International Trading Group, Inc., fully supports the Settlement.

25   *See* Declaration of John T. McGann ("McGann Decl."), ¶8, submitted herewith.  Moreover,

26

27

28

1    pursuant to the Court's Preliminary Approval Order, over 39,400 Postcard Notices have been

2    mailed or emailed to potential members of the Class.[3]

3        As of this filing, zero objections to any aspect of the Settlement have been received.[4]  *See*

4    Stein Decl., ¶84.  *Khoja v. Orexigen Therapeutics*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30,

5    2021) ("'[T]he absence of a large number of objections to a proposed class action settlement raises

6    a strong presumption that the terms of a proposed class settlement action are favorable to the class

7    members.'") (alteration in original); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

8    1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and

9    stayed in the class presents at least some objective positive commentary as to its fairness.").

10   Similarly, as of this filing, only one request for exclusion from the Class has been received.  *See*

11   Murray Decl., ¶16; *see also In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898, at *6 (S.D.

12   Cal. Oct. 30, 2020) (noting that only one class member requested exclusion and further remarking

13   that "[t]he positive response from the class confirms that the settlement is fair and reasonable").

14       Accordingly, Plaintiff respectfully requests that the Court certify the Class, grant final

15   approval of the Settlement, and approve the Plan of Allocation as a fair and reasonable method for

16   distributing the Net Settlement Fund to the Class.

17   ## II.    FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION

18       Lead Counsel respectfully refers the Court to the accompanying Stein Declaration for a

19   detailed description of the procedural history of the Litigation, the claims asserted, the

20

21   [3]    *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶11, submitted herewith.  The Murray Declaration is submitted on behalf of the Court-authorized Claims Administrator for the Settlement.  In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and over *Business Wire* on July 10, 2025.  *Id.*, ¶12.  Information regarding the Settlement, including downloadable copies of relevant documents (including the Notice, Proof of Claim, Stipulation, and others), was also posted on a website established for the Settlement (www.SpectrumPharmaceuticalsSecuritiesSettlement.com), and the Claims Administrator established and continues to maintain a toll-free telephone helpline to accommodate potential Class Member inquiries.  *Id.*, ¶¶13-14.

26   [4]    The deadline for submitting a request for exclusion from the Class or filing an objection to the Settlement, or any aspect thereof, is September 29, 2025.  If any requests for exclusion or objections by Class Members are received after the date of this submission, Lead Counsel will address them in a reply submission to be filed with the Court on or before October 13, 2025.

investigation undertaken, the parties' extensive motion practice, discovery efforts, the negotiations and mediation process resulting in the Settlement, and the risks and uncertainties involved in prosecuting this Litigation through trial. *See generally* Stein Decl.

## III.    THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL

Pursuant to Rule 23(e), "a court may approve a proposed settlement 'only after a hearing and on finding that it is fair, reasonable, and adequate.'" *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 3960481, at *3 (S.D. Cal. July 13, 2020) (quoting Fed. R. Civ. P. 23(e)(2)); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Granting final approval lies within the sound discretion of the district court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In making its determination, the Court should consider the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation modified); *Tyus v. Wendy's of Las Vegas, Inc.*, 2021 WL 2169928, at *6-*7 (D. Nev. May 27, 2021); *Evans v. Wal-Mart Store, Inc.*, 2020 WL 886932, at *1 (D. Nev. Feb. 24, 2020) ("There is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of 'strong judicial policy.'"). A court, however, should not adjudicate the merits of the action or substitute its judgment for that of the parties who negotiated the settlement. *See Class Plaintiffs*, 955 F.2d at 1291 ("The court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'").

Rule 23(e) sets out the following factors for the court to consider when making its decision to approve a proposed class action settlement:

> whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arms-length; (3) the relief provided for the [class] is adequate, taking into consideration the risks associated with continued litigation and the effectiveness of proposed relief to the class, [the terms of any proposed award of attorney's fees, and any other agreement required to be disclosed

1    under Rule 23(e)(3)]; and (4) the proposal treats class members equitably relative
     to each other.

*Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at \*5-\*6 (S.D. Cal. July 24, 2020) (citing Fed.

R. Civ. P. 23(e)(2)).  Further, courts have recognized:

> "[T]he court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent necessary
> to reach a reasoned judgment that the agreement is not the product of fraud or
> overreaching by, or collusion between, the negotiating parties, and that the
> settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Scott v. Blackstone Consulting, Inc.*, 2024 WL 271439, at \*2-\*3 (S.D. Cal. Jan. 24, 2024) (quoting

*Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Consistent with the factors provided in Rule 23(e), the Ninth Circuit considers the

following eight factors in determining whether to approve a proposed class action settlement: (i)

the amount offered in the settlement; (ii) the strength of plaintiff's case; (iii) the risk, expense,

complexity, and likely duration of further litigation; (iv) the extent of discovery completed and the

stage of the proceedings; (v) the experience and views of counsel; (vi) the risk of maintaining a

class action status throughout the trial; (vii) the absence of collusion or fraud among the negotiating

parties; and (viii) the reaction of the class members to the proposed settlement.  *See In re Bluetooth*

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill*); *Tyus*, 2021

WL 2169928, at \*9.

"The relative degree of importance to be attached to any particular factor will depend upon

and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique

facts and circumstances presented by each individual case."  *Officers for Just.*, 688 F.2d at 625.

"This list [of factors] is not exclusive and different factors may predominate in different factual

contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Campbell*, 951

F.3d at 1121 ("District courts may consider some or all of these factors.").

The Court's Preliminary Approval Order considered each of the Rule 23(e)(2) and Ninth

Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate,

subject to further consideration at the Settlement Hearing.  *See* ECF 138, ¶1.  The Court's

conclusion on preliminary approval remains true now, as nothing has changed between June 16,

1   2025 (the date the Court issued its Preliminary Approval Order (ECF 138)), and the present.  *See*

2   *In re Chrysler-Dodge-Jeep EcoDiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL

3   2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval]

4   stand and counsel equally in favor of final approval now.").

5           Accordingly, Plaintiff and Lead Counsel respectfully submit that the Settlement represents

6   a fair, reasonable, and adequate resolution of the Litigation and warrants the Court's final approval.

7           **A.      Plaintiff and Lead Counsel Have Adequately Represented the Class**

8           Plaintiff and Lead Counsel have ardently prosecuted this Litigation on behalf of the

9   putative class for four years and will continue to do so throughout the administration of the

10  Settlement.  As discussed more thoroughly below and in the Stein Declaration, following their

11  appointment as Plaintiff and Lead Counsel, Plaintiff, through Lead Counsel: (i) investigated and

12  drafted the First Amended Complaint; (ii) opposed Defendants' first motion to dismiss; (iii)

13  investigated and drafted the Second Amended Complaint; (iv) opposed Defendants' second motion

14  to dismiss; (v) negotiated a case schedule with Defendants to govern all major procedural deadlines

15  in the case; (vi) served Defendants with Plaintiff's first sets of document requests, interrogatories,

16  and requests for admission; (vii) negotiated a protective order and an ESI protocol governing the

17  production of documents and other discovery in the Litigation; (viii) engaged in protracted

18  negotiations with Defendants regarding the disputed scope of discovery and production of relevant

19  and responsive documents; and (ix) engaged in settlement negotiations under the auspices of an

20  experienced mediator, David M. Murphy of Phillips ADR Enterprises.  Stein Decl., ¶4.

21          Plaintiff has also actively engaged in this Litigation, by, *inter alia*: (i) reviewing drafts of

22  filings made in the action; (ii) reading key Court orders; and (iii) discussing litigation and

23  settlement strategy regularly with Lead Counsel.  *See* McGann Decl., ¶¶4-7.

24          Moreover, Plaintiff and Lead Counsel have no interests antagonistic to those of other Class

25  Members; rather, Plaintiff's and the Class's claims "arise from the same alleged conduct: the

26  purchase of [Spectrum common stock] at inflated prices based on Defendants'

27  alleged . . . misstatements."  *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D.

28  Cal. Oct. 10, 2019).  Accordingly, Plaintiff shares the common interest in obtaining the largest

1  possible recovery for the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566

2  (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named

3  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

4  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'").

5  Indeed, this Court has already determined on a preliminary basis that Plaintiff and Lead Counsel

6  have adequately represented the putative class. *See* ECF 138, ¶3. This factor weighs in favor of

7  final approval.

8      **B.    The Settlement was Negotiated at Arm's Length with the Assistance**
       **of an Experienced Neutral Mediator**

9

10     A strong initial presumption of fairness attaches to a proposed settlement if the settlement

11 is reached by experienced counsel after arm's-length negotiations. *See Khoja*, 2021 WL 5632673,

12 at *3; *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *6-*7 (S.D. Cal. Jan. 18, 2022);

13 *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) ("The involvement

14 of a mediator, as well as the lengthy and adversarial nature of the settlement negotiations, are all

15 indicia of the 'contentious' nature of the underlying negotiations.").

16     Mr. Murphy's assistance as a mediator confirms that the negotiations were conducted at

17 arm's length and without collusion. *See Brightk Consulting Inc. BMW of N. Am., LLC*, 2023 WL

18 2347446, at *6 (C.D. Cal. Jan. 3, 2023) (finding involvement of an experienced mediator

19 "increases the likelihood that the settlement was negotiated at arm's length").

20     Here, the Settlement was reached only after nearly four years of hard-fought litigation and

21 a mediation process supervised at every step by Mr. Murphy, which culminated in the parties

22 accepting a mediator's proposal to resolve this matter for $15.95 million. *See* Stein Decl., ¶¶46;

23 53-55; *see also* ECF 138, ¶5 ("The [C]ourt preliminarily finds that the proposed Settlement should

24 be approved as: . . . the result of serious, extensive arm's-length and non-collusive negotiations.").

25 As such, the Settlement is entitled to a presumption of fairness.

26 . . . . .

27 . . . . .

28 . . . . .

1

**C.    The Proposed Settlement Provides a Favorable Recovery to the Class, Particularly Considering the Costs, Risks, and Delay of Litigation**

2

3    In evaluating compliance with Rule 23(e)(2)(C), the Court considers "the costs, risks, and

4    delay of trial and appeal," and the relevant overlapping Ninth Circuit factors, which address "the

5    strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further

6    litigation." Fed. R. Civ. P. 23(e)(2); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

7    Cir. 2004). While Plaintiff believes its claims have merit and that it would prevail at trial, it

8    nevertheless recognizes the numerous risks and uncertainties it would face at trial. Indeed,

9    securities class actions "'are highly complex and [litigating] securities class litigation is notably

10   difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13

11   (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As

12   discussed below, the benefits conferred on the Class by the $15.95 million Settlement far outweigh

13   the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the

14   Settlement.

15
**1.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Final Approval**

16   In evaluating final approval of a class action settlement, courts consider the strengths,

17   weaknesses, and risks associated with plaintiff's case. *See Destefano v. Zynga, Inc.*, 2016 WL

18   537946, at *9 (N.D. Cal. Feb. 11, 2016) ("The first relevant factor is the risk of continuing

19   litigation, including the strengths and weaknesses of Lead Plaintiff's case on the merits, balanced

20   against the certainty and immediacy of recovery from the Settlement."). To prove liability under

21   §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the

22   defendants were responsible for materially false and misleading statements. *See Dura Pharms.,*

23   *Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Plaintiff would be required to prove each of the

24   elements to prevail, whereas Defendants would only need to succeed on one defense to defeat the

25   entire Litigation. In addition, Plaintiff would have to defeat ***all*** of Defendants' affirmative

26   defenses. If Defendants prevailed on any of their affirmative defenses, the case would end.

27   Plaintiff believes the claims alleged are strong based on its substantial research and investigation.

28

1    Nevertheless, Plaintiff is also aware of the numerous hurdles to establishing liability, including

2    demonstrating the materiality and falsity of Defendants' statements and omissions, scienter, loss

3    causation, and damages, risks that would only increase in later phases of litigation, including class

4    certification, summary judgment, and trial.  *See* Stein Decl., ¶¶48-50; *see also Khoja*, 2021 WL

5    5632673, at *5 ("Cases brought under PSLRA involve a heightened level of risk because PSLRA

6    makes it more difficult for investors to successfully prosecute securities class actions.") (citation

7    modified); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *4 (S.D. Cal. June 6,

8    2022).

9        Defendants have denied, and continue to deny, any liability in the case.  They advanced

10   several successful arguments in their motions to dismiss.  And although the Court upheld many of

11   Plaintiff's claims regarding Pozi and its likelihood of obtaining FDA approval, it dismissed all the

12   alleged misstatements related to the approval of Rolontis and certain statements concerning Pozi.

13   *See* ECF 116.  Following the Court's Order, the parties disputed which allegedly false and

14   misleading statements remained in the case, and consequently, which relevant time period

15   governed the scope of discovery.  For example, in their responses to Plaintiff's document requests,

16   Defendants asserted that, based on their restrictive view of which misstatements the Court upheld,

17   they would only produce documents related to the period between February 1, 2018 and

18   December 31, 2018.  By contrast, Plaintiff argued that Defendants' proposed time period

19   improperly eliminated all but one loss event from the scope of discovery as each of the loss events

20   disclosed information concerning Pozi, including the failure to obtain BTD status and Pozi's

21   Cohort 1 and Cohort 3 failures.  This pivotal dispute remained unresolved at the time of the

22   Settlement.  In addition, Defendants argued that Plaintiff could not establish scienter because

23   Defendants had no visibility into clinical trial data and, therefore, did not know about the problems

24   with Pozi's efficacy and safety before the results were announced publicly.  Stein Decl., ¶50.

25       Any recovery would also require Plaintiff to overcome contentious class certification

26   proceedings.  While Plaintiff believes that this Litigation would have been maintained as a class

27   action through trial, Defendants planned to vigorously contest any class certification motion,

28   especially with respect to the appropriate length of the class period.  In particular, Defendants

1    expressed confidence that they could successfully oppose class certification based on a

2    "mismatch" theory – that the sole remaining loss event does not sufficiently "match" the allegedly

3    misleading statements.  "Although a class can be certified for settlement purposes, the notion that

4    a district court could decertify a class at any time is an inescapable and weighty risk that weighs

5    in favor of a settlement."  *Harbour v. Cal. Health & Wellness Plan*, 2024 WL 171192, at *4 (N.D.

6    Cal. Jan. 16, 2024) (certifying class for settlement purposes) (citing *Rodriguez v. W. Publ'g Corp.*,

7    563 F.3d 948, 966 (9th Cir. 2009)).

8         Moreover, Plaintiff faced an uphill battle obtaining the discovery it believes would permit

9    it to prove its case.  As explained above and in more detail in the Stein Declaration, the parties

10   hold highly divergent views on the appropriate scope of relevant discovery given their

11   disagreement on which alleged misstatements remain in the case following the Court's Order on

12   Defendants' second motion to dismiss.  Stein Decl., ¶8.  Had the Court adopted Defendants' view

13   of the scope of the case, and limited discovery to Defendants' position, Plaintiff may have been

14   unable to prove the entirety of its case, resulting in reduced or even zero recoverable damages.  *Id.*

15        Plaintiff would face significant additional risks to recovery for the Class at summary

16   judgment, where Defendants would likely argue they did not act with scienter because they had no

17   visibility into clinical trial data and, therefore, did not have advance notice that Pozi would fail

18   clinical trials.  The risk to recovery would continue through *Daubert* motions, trial preparation,

19   trial, and a possible appeal by Defendants of any judgment against them.  All of these proceedings

20   would have added further expense as well as years of delay for any potential recovery for the

21   putative class.  *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *6 (S.D. Cal. Oct. 14,

22   2022) (listing multiple barriers facing plaintiffs, should the action proceed, and noting that

23   "'securities actions in particular are often long, hard-fought, complicated, and extremely difficult

24   to win'").

25        Accordingly, "[t]he Settlement . . . obviates the risk that potential unrepresented Class

26   Members 'might well have lost their chance to recover.'"  *Khoja*, 2021 WL 5632673, at *6.

27   Defendants would have undeniably challenged whether Spectrum's shares traded in an efficient

28   market during the Class Period, whether the remaining alleged false statements and omissions had

1    an impact on the price of the stock, and whether Plaintiff was typical of other members of the

2    proposed class – all arguments that would have required extensive briefing and expert testimony.

3    And if Defendants were successful in persuading the Court that the putative class should not be

4    certified, then the case would have effectively been over unless Plaintiff prevailed on a

5    discretionary Rule 23(f) petition to the Ninth Circuit. *See In re Omnivision Techs.*, 559 F. Supp.

6    2d 1036, 1041-42 (N.D. Cal. 2008) (A motion for class certification "may be outcome-

7    determinative in itself.").

8        Plaintiff also faced the risk that expert testimony would be limited or excluded, and that

9    the jury would not credit the testimony of its experts or would unduly credit the testimony of

10    Defendants' experts. The winner of such a "'battle of [the] experts'" is unpredictable. *Davis v.*

11    *Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022). The risk of these litigation hurdles

12    justifies the Settlement. *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024)

13    (noting that "there would be significant costs and risks associated with class certification, summary

14    judgment, and trial"); *Figueroa v. Cap. One, N.A.*, 2021 WL 211551, at *6 (S.D. Cal. Jan. 21,

15    2021) ("Proceeding with the case presents very real risks regarding class certification, renewed

16    summary judgment, *Daubert* and *in limine* motions, proving the necessary damages at trial, and a

17    possible unfavorable decision on the merits.").

18        But even assuming Plaintiff successfully litigated the action past each and every hurdle

19    identified above and obtained a favorable judgment, collecting any recovery, let alone one of this

20    magnitude, was uncertain. By the time Plaintiff had spent years litigating discovery issues, class

21    certification, summary judgment, and trial, there was a near certainty that Assertio, the company

22    that acquired Spectrum and funded Spectrum's litigation of this case, and which faces significant

23    financial constraints, would not be able to satisfy a large judgment. *In re HCV Prison Litig.*, 2020

24    WL 6363842, at *3 (D. Nev. Oct. 29, 2020) ("'In most situations, unless the settlement is clearly

25    inadequate, its acceptance and approval are preferable to [a] lengthy and expensive litigation with

26    uncertain results.'") (quoting *Riker v. Gibbons*, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010)).

27        The risk, expense, complexity, and duration of further litigation weighs in favor of

28    approval. *See* Stein Decl., ¶¶73-80; *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *5 (N.D.

Cal. May 6, 2024) (approving settlement and noting that "[w]ere this case to proceed, [Plaintiff's] Counsel anticipate significant risks that the Settlement Class would recover substantially less than the Settlement Amount, or nothing at all").

### 2. The Recovery Amount Supports Final Approval

An "analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation." *Harris v. Amgen Inc.*, 2017 WL 6048215, at *4 (C.D. Cal. Apr. 4, 2017). Indeed, "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Santillan v. Verizon Connect, Inc.*, 2024 WL 627998, at *6 (S.D. Cal. Feb. 13, 2024) (citation modified). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Just.*, 688 F.2d at 624 (citation modified) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

Here, Plaintiff and Lead Counsel have created a common fund of $15.95 million, which is already earning interest for the benefit of the Class. Class Members will receive an immediate benefit and eliminate the significant risk that the putative class could recover less than the Settlement, or potentially nothing at all if the Litigation continued. Indeed, if the Litigation proceeded, Defendants would have argued, among other things, that any losses were caused in whole or in part by factors other than the alleged misleading statements, and that the estimated recoverable damages (if any) were substantially less than those asserted by Plaintiff, if not zero.

The Settlement exceeds the median recovery for securities class actions settled during the first half of 2025 ($13 million). *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 16, fig. 14 (NERA July 29, 2025). The Settlement also represents a return of between 3% and 4% of Plaintiff's estimate of maximum recoverable damages, assuming Plaintiff prevailed on all elements of its claim for the entirety of the Class Period. ECF 130 at 10. Defendants of course believe damages are significantly lower, if not zero. Nevertheless, this recovery exceeds the 2024 median settlement recovery in §10(b) actions of 1.2%, and falls within the range of recovery. *See* Edward Flores & Svetlana Starykh,

*Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) at 27, fig. 24; *see also IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "[t]his amount is within the median recovery in securities class actions settled in the last few years"). Accordingly, this factor weighs heavily in favor of the Settlement.

### 3. The Extent of Discovery Completed and Stage of Proceedings Support Final Approval

The stage of proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "'[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.'" *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *7 (N.D. Cal. Mar. 4, 2024) (quoting *Mego*, 213 F.3d at 459).

By the time the parties reached the Settlement, Lead Counsel understood the merits of the claims alleged in the Litigation and defenses Defendants would assert. The parties have been actively litigating this matter for approximately four years, during which time Lead Counsel engaged in extensive investigation, research, and analysis of the claims, drafted two detailed amended complaints, opposed two motions to dismiss, engaged with economic experts, served targeted discovery, negotiated with Defendants regarding the scope of relevant discovery, prepared mediation materials and reviewed Defendants' submission, engaged in arm's-length negotiations before an experienced mediator, and was in the process of preparing a motion to compel discovery from Defendants.

In sum, the knowledge and insight gained by Plaintiff and Lead Counsel following extensive investigation, substantial motion practice, and hard-fought settlement negotiations confirm the reasonableness of the Settlement. *See Destefano*, 2016 WL 537946, at *12-*13. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4. The Experience of Lead Counsel Supports Final Approval

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see Int'l Game Tech.*, 2012 WL 5199742, at *3 ("The Court gives considerable weight to [Plaintiff's] Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general."). Such weight is appropriate because "'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Ziegler v. GW Pharms., PLC*, 2024 WL 1470532, at *5 (S.D. Cal. Apr. 3, 2024). Further, where, as here, the Settlement is the product of serious, informed, and non-collusive negotiations, "'the trial judge . . . should be hesitant to substitute its own judgment for that of counsel.'" *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. "Consequently, the recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 WL 171192, at *5 (citation modified).

Lead Counsel has extensive experience prosecuting complex securities and other complex class actions, has negotiated scores of substantial class action settlements across the country, is intimately familiar with the facts of this Litigation, and believes the Settlement is fair and reasonable and in the best interests of the Class. *See* www.rgrdlaw.com. *See also In re Google Loc. Hist. Litig.*, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024) (recommendation of class counsel with experience in complex cases "of a similar size to the instant case" favors approval of the settlement).

Indeed, this action has been litigated by experienced and well-respected counsel on both sides. Defendants have been vigorously represented by two well-regarded defense firms. Defense counsel was and is equally well-informed regarding the case. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) ("Both Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight."). Accordingly, this factor weighs in favor of final approval.

1

2        **5.    The Absence of Collusion Supports Final Approval**

3            Where a settlement agreement is reached prior to class certification, "courts 'must be

4    particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel

5    have allowed pursuit of their own self-interest[s] and that of certain class members to infect the

6    negotiations.'" *Heid v. Cyracom Int'l, Inc.*, 2024 WL 4008650, at *7 (S.D. Cal. Aug. 30, 2024)

7    (quoting *Bluetooth*, 654 F.3d at 947). Such subtle collusion includes, *inter alia*, instances where:

8    (1) counsel receives a disproportionate distribution of the settlement; (2) the class receives no

9    monetary distribution; (3) an agreement exists wherein attorneys' fees are paid separate and apart

10   from class funds; or (4) fees not awarded revert back to the defendants. *Bluetooth*, 654 F.3d at

11   947. Here, no such circumstances exist. *See Heid*, 2024 WL 4008650, at *8; *Derr v. Ra Med.

12   *Sys., Inc.*, 2022 WL 21306534, at *4 (S.D. Cal. Sept. 23, 2022).

13           Lead Counsel is not "'receiv[ing] a disproportionate [share] of the settlement.'" *Patel v.

14   Axesstel, Inc.*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015). Rather, Plaintiff and Lead

15   Counsel request Court approval of an award of attorneys' fees within the range of fees awarded in

16   this Circuit. *See* Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead

17   Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), §III.B. (filed concurrently herewith) ("Fee

18   Memorandum"). There is also no risk that the Class will not receive a monetary distribution. The

19   Settlement provides a ***cash*** Settlement Fund of $15.95 million for the benefit of the Class, ***with no

20   reversion***, and this amount has already been deposited into an interest-earning escrow account for

21   the benefit of the Class.

22           Next, the Settlement does not contain a "clear sailing" provision (*i.e.*, an agreement

23   wherein Defendants will not oppose the attorneys' fee request up to a specified value). *See

24   Bluetooth*, 654 F.3d at 947-48. A clear sailing provision suggests that "'class counsel will have

25   bargained away something of value to the class,'" and imposes a "heightened duty" on the Court

26   to closely examine any relationship between fees and any benefit to the class. *Id.* at 948. Those

27   concerns are not present in this common fund case, where the amount of attorneys' fees awarded

28   to Lead Counsel is within the Court's sole discretion.

1    Finally, any unclaimed fee will **not** "revert to defendants rather than be added to the class

2    fund." *Id.* at 947.  To the contrary, any unawarded fees will remain in the Settlement Fund for the

3    benefit of the Class.  The Settlement provides for a process wherein distributions are made to

4    eligible Class Members until insufficient funds remain to justify additional distributions.  *See* ECF

5    131, ¶5.10.  At that point, any remaining funds will be donated to "an appropriate non-sectarian,

6    non-profit charitable organization(s) serving the public interest selected by Lead Counsel."  *Id.*;

7    *see Stevens v. Safeway Inc.*, 2008 WL 11496497, at *9-*10 (C.D. Cal. Feb. 25, 2008) (approving

8    "disbursement of any unclaimed settlement allocations to" a charity where "the amount of money

9    unclaimed after the reallocation process is unlikely to be sufficiently significant that it will warrant

10   further reallocation").

11   For these reasons, Plaintiff respectfully submits that the Settlement is free from collusion

12   and is fair, reasonable, and adequate.

13   **6.    The Reaction of Class Members Supports Final Approval**

14   The reaction of the class to the settlement is a significant factor in assessing its fairness and

15   adequacy.  To date, over 39,400 Postcard Notices have been mailed or emailed to potential Class

16   Members and nominees.  *See* Murray Decl., ¶11.  Pursuant to the Preliminary Approval Order and

17   as set forth in the Notice, potential Class Members have until September 29, 2025 to object to the

18   Settlement, Plan of Allocation, Lead Counsel's request for an award of attorneys' fees and

19   litigation expenses, and Plaintiff's request for reimbursement pursuant to 15 U.S.C. §78u-4(a)(4),

20   or to request exclusion from the Class.  Since the mailing of the Postcard Notice and publication

21   of the Summary Notice, there have been zero objections and only one request for exclusion from

22   the Class.  *See* Stein Decl., ¶84; Murray Decl., ¶16; *Abadilla v. Precigen, Inc.*, 2023 WL 7305053,

23   at *9 (N.D. Cal. Nov. 6, 2023) ("'A court may appropriately infer that a class action Settlement is

24   fair, adequate, and reasonable when few Class members object to it.'").  Accordingly, Plaintiff

25

26

27

28

1    respectfully submits that this factor weighs heavily in favor of the fairness and reasonableness of

2    the Settlement, and of final approval.[5]

3        **D.        The Remaining Rule 23(e)(2) Factors Also Support Final Approval**

4        When evaluating class action settlements for final approval, courts must also consider: (i)

5    the effectiveness of the proposed method of distributing relief provided to the class, including the

6    method of processing class member claims; (ii) the terms of any proposed award of attorneys' fees;

7    (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class

8    members are treated equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv),

9    (e)(2)(D). These factors also support final approval.

10        First, the proposed method of distribution and claims processing ensures equitable

11    treatment of Class Members. Class Members' claims (as well as Plaintiff's claim) will be

12    processed and the Net Settlement Fund distributed *pro rata* pursuant to a standard method

13    routinely found effective in securities class actions. The Court-appointed Claims Administrator

14    will review and process all Claims received, provide claimants with an opportunity to cure any

15    deficiency or request judicial review of the denial of their Claims, if applicable, and remit

16    Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan

17    of Allocation, which is designed to equitably distribute the Net Settlement Fund.

18        Second, the relief provided to Class Members by the Settlement remains adequate, even

19    when considering the proposed attorneys' fee award and payment of reasonable litigation

20    expenses. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the requested attorneys' fees and expenses,

21    which will only be paid with this Court's approval, are reasonable given the efforts of Lead

22    Counsel in prosecuting this Litigation and obtaining this recovery on behalf of the Class. *See* Fee

23    Memorandum at §III.B; §IV., *supra*. Additionally, any award of attorneys' fees and expenses is

24    separate from the approval of the Settlement, and neither Lead Counsel nor Plaintiff may terminate

25    the Settlement based on this Court's ruling with respect to attorneys' fees.

26

27    [5]    If any timely objections are filed, Lead Counsel will address them in its reply brief in
28    further support of final approval of the Settlement.

1    Third, as previously disclosed, the only agreement the parties entered into in addition to

2    the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion.  *See*

3    ECF 130 at 8.  *See also* Fed. R. Civ. P. 23(e)(2)(C)(iv).  The parties' Supplemental Agreement,

4    which is a standard provision in class actions that does not impact the fairness analysis, contains a

5    so-called "blow provision," pursuant to which Defendants may terminate the Settlement and render

6    it null and void in the event that certain conditions and thresholds are met with respect to the

7    Members of the Class who timely and validly exclude themselves from the Class.  *See* ECF 131,

8    ¶7.3.  The Supplemental Agreement is confidential to prevent the disclosure of the precise opt-out

9    threshold "in order to prevent third parties from utilizing it for the improper purpose of obstructing

10   the settlement and obtaining higher payouts."  *See Fernandez v. CoreLogic Credco, LLC*, 2024

11   WL 538585, at *3 n.7 (S.D. Cal. Feb. 9, 2024) (citation modified); *see also Estakhrian v.

12   Obenstine*, 2016 WL 6517052, at *13 (C.D. Cal. Feb. 16, 2016) (finding the opt-out threshold to

13   be "fair and proper in that it supports the parties in their efforts to ensure th[e] settlement proceeds

14   are directed to class members and not diverted to other parties or [their] attorneys to the detriment

15   of the class").

16       For the reasons set forth above and as set forth in greater detail in the Stein Declaration,

17   Plaintiff respectfully suggests that the Settlement is fair, reasonable, and adequate, and warrants

18   the Court's final approval.

19   **IV.    CLASS CERTIFICATION REMAINS APPROPRIATE**

20       "Before approving the Settlement, the court's 'threshold task is to ascertain whether the

21   proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil

22   Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and

23   (4) adequacy of representation.'"  *Fernandez*, 2024 WL 538585, at *5 (quoting *Hanlon*, 150 F.3d

24   at 1019).  In addition, the court must determine whether the action is "'maintainable under Rule

25   23(b)(1), (2), or (3).'"  *In re Mego*, 213 F.3d at 462.

26       The Court previously found that all the requirements of Rules 23(a) and 23(b)(3) were met

27   when it granted preliminary approval of the Class.  *See* ECF 138, ¶¶2-3.  There have been no

28   changes with respect to these factors since the Court preliminarily certified the Class on June 16,

2025.  Therefore, the Court should reaffirm its holding in the Preliminary Approval Order and certify the Class for purposes of the Settlement.  *See Hernandez v. Arthur J. Gallagher Serv. Co.*, 2024 WL 3941824, at *3-*4 (S.D. Cal. Aug. 26, 2024) (finding final class certification appropriate as no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class).

## V.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Upon approval of the Settlement and following the conclusion of claims administration, the Net Settlement Fund shall be distributed to Authorized Claimants.  The proposed Plan contained in the Notice details the allocation of the Net Settlement Fund to Authorized Claimants. *See* Murray Decl., Ex. B.  The standard for approval of the plan of allocation is governed by the same standards as the settlement itself; namely, the plan must be fair, reasonable, and adequate. *Andrade-Heymsfield v. Nextfoods, Inc.*, 2024 WL 3871634, at *4 (S.D. Cal. Apr. 8, 2024).  "The allocation formula used in a plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"  *Id.*

Here, the Plan was prepared after careful consideration and analysis, and with the assistance of a damages expert.  *See* Stein Decl., ¶62.  The Plan was fully disclosed in the Notice that was made available to potential Class Members and nominees, and to date, there have been no objections to the Plan.  The Plan provides for distribution of the Net Settlement Fund to Class Members who have a loss on their transactions in Spectrum common stock purchased or otherwise acquired during the Class Period.  *See* Stein Decl., ¶¶62-66.

The formula to apportion the Net Settlement Fund among Class Members is based on when they purchased, acquired and/or sold their Spectrum common stock and accounts for the PSLRA's 90-day look-back period.  *Id.*, ¶64; *see* Murray Decl., Ex. B; *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) ("'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'").  The Plan is not a formalized damage study but, rather, a simplified methodology designed to compare one Class Member to another through their respective Class Period transactions in Spectrum common stock.

1    Under the Plan, the Court-appointed Claims Administrator will calculate each Authorized

2  Claimant's "Recognized Claim," based on the information supplied in the Class Member's Proof

3  of Claim.  *See* Murray Decl., Ex. B.  The Net Settlement Fund will be allocated on a *pro rata* basis

4  to Authorized Claimants based on each Authorized Claimant's Recognized Claim.  *Regulus*, 2020

5  WL 6381898, at *5 ("A plan [of allocation] 'fairly treats class members by awarding a *pro rata*

6  share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon,

7  *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing

8  of purchases of the securities at issue.'") (second alteration in original).

9    Accordingly, Plaintiff believes that the Plan of Allocation is reasonable, fair, and equitable

10  and therefore warrants the Court's approval.

11  **VI.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

12    A district court "must direct notice in a reasonable manner to all class members who would

13  be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

14  notice that is practicable under the circumstances, including individual notice to all members who

15  can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also In re Aqua*

16  *Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022).  The notice also must

17  describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

18  investigate and to come forward and be heard."  *Rodriguez*, 563 F.3d at 962 (citation modified);

19  *see also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("'The yardstick against

20  which we measure the sufficiency of notices in class action proceedings is one of

21  reasonableness.'").  The PSLRA further requires that the settlement notice include a statement

22  explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement."  *In*

23  *re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

24    Notice here satisfied the Court-approved notice process.  ECF 138, ¶¶9-10.  The Claims

25  Administrator has mailed or emailed over 39,400 copies of the Court-approved Postcard Notice to

26  potential Class Members and their nominees who could be identified with reasonable effort.  *See*

27  Murray Decl., ¶11.  The Claims Administrator also provided all information regarding the

28  Settlement online through the Settlement website.  *Id.*, ¶14.  The Notice provides the necessary

information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan as described in the Notice.  The notice program here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process.  *In re MGM Grand Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017) (affirming approval of a similar notice program).

## VII.    CONCLUSION

For each of the reasons set forth herein and in the Stein Declaration, Plaintiff respectfully submits that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully requests that the Court: (i) certify the Class as preliminarily certified in the Court's Preliminary Approval Order; and (ii) grant final approval of the Settlement and the Plan of Allocation.

DATED:  September 15, 2025          Respectfully submitted,

CAMPBELL & WILLIAMS

/s/ *J. Colby Williams*
J. COLBY WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

- 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
SARAH A. FALLON
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com
sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff International
Trading Group, Inc.*

1

**CERTIFICATE OF SERVICE**

2
   I hereby certify that on the 15th day of September, 2025, I caused a true and correct copy

3
of the foregoing **Motion for Final Approval of Proposed Settlement and Approval of Plan**

4
**Allocation** to be served via the United States District Court CM/ECF system on all parties or

5
persons requiring notice.

6

7
                 /s/ *J. Colby Williams*

8
                 An employee of Campbell & Williams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INDEX OF EXHIBITS

| Exhibit | Document | Page Nos. |
|---|---|---|
| - | Declaration of Jeffrey J. Stein in Support of: (1) Motion for Final Approval of Proposed Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) | - |
| - | Declaration of John T. McGann Filed on Behalf of International Trading Group, Inc. in Support of Final Approval of Settlement and Application for Award of Attorneys' Fees and Expenses | - |
| - | Declaration of Ross D. Murray regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date | - |