CAMPBELL & WILLIAMS
J. COLBY WILLIAMS (5549)
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
SARAH A. FALLON
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com
sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*
*International Trading Group, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSE CHUNG LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>SPECTRUM PHARMACEUTICALS, INC., et al.,<br><br>                              Defendants. | No. 2:21-cv-01612-CDS-BNW<br><br>**CLASS ACTION**<br><br>**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)** |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL AND FACTUAL BACKGROUND | 3 |
| III. | THE REQUESTED FEE IS FAIR AND REASONABLE | 3 |

A. A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ...........................3

B. Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case ...........................5

    1. The Results Achieved Support the Fee Request ...........................5

    2. The Litigation Was Uncertain and Highly Complex ...........................6

    3. The Skill Required and Quality of Work ...........................8

    4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ...........................9

    5. Awards Made in Similar Cases Support the Fee Request ...........................11

    6. The Class's Reaction to Date Supports the Fee Request ...........................12

    7. A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable ...........................13

IV. LEAD PLAINTIFF'S COUNSEL'S LITIGATION COSTS, CHARGES, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...........................15

V. PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. SECTION 78u-4(a)(4) IS REASONABLE ...........................16

VI. CONCLUSION ...........................17

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ...............................................................12

*Blum v. Stenson*,
465 U.S. 886 (1984)..........................................................................................................3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..........................................................................................................3

*City of Laurel, Miss. v. Cintas Corp. No. 2*,
No. 3:21-cv-00124-ART-CLB, ECF 123 (D. Nev. Apr. 29, 2025).........................................11

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .................................................................11

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) ...................................................................................12

*Ferris v. Wynn Resorts Ltd.*,
2025 WL 2308698 (D. Nev. Jan. 31, 2025)......................................................11, 12, 14, 16

*Fleming v. Impax Laby's Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)................................................................ *passim*

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ....................................................................................4

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ..............................................................................................14

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)...............................................................12, 16

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
aff'd sub nom. *Hefler & Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ................................ *passim*

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................................................................5

*Hessefort v. Super MicroComputer, Inc.*,
2023 WL 7185778 (N.D. Cal. May 5, 2023) ...................................................................6

**Page**

*Howell v. JBJ, Inc.*,
298 F.R.D. 649 (D. Nev. 2014)............................................................................................5

*IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..................................................................5, 14

*In re Allied Nev. Gold Corp.*,
No. 3:14-cv-00175-LRH-WGC, ECF 215 (D. Nev. Nov. 16, 2020)................................11, 16

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)................................................................4, 5

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)................................................................7, 12

*In re Banc of Cal. Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)....................................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................................4

*In re Broiler Chicken Antitrust Litig.*,
2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .......................................................................5

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .................................................................10

*In re Korean Air Lines Co., Antitrust Litig.*,
2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ....................................................................4

*In re Maxwell Techs. Inc., Sec. Litig.*,
2015 WL 12791401 (S.D. Cal. Feb. 17, 2015) ..................................................................15

*In re Mylan N.V. Sec. Litig.*,
2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023),
*aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*,
2024 WL 1613907 (2d Cir. Apr. 15, 2024) .........................................................................7

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) .......................................................................................3

*In re: NFL "Sunday Ticket" Antitrust Litig.*,
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024).......................................................................7

**Page**

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................4, 8, 11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ..............................................................................................6

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .........................................................4

*In re Tesla, Inc. Sec. Litig.*,
    2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ......................................................7, 10

*In re Tesla, Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023).....................................7

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ........................................................11

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)...........................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017).................................................8, 9, 10, 11, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ........................................................................................5

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).............................................................13

*Jiminez v. O'Reilly Auto. Inc.*,
    2018 WL 6137591 (C.D. Cal. June 18, 2018) ............................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ............................................................15

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)...........................................................4

*McPhail v. First Command Fin. Plan., Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .............................................................16

*Mo. v. Jenkins by Agyei*,
    491 U.S. 274 (1989)...................................................................................................13

**Page**

*Morgan v. Childtime Childcare, Inc.*,
2020 WL 218515 (C.D. Cal. Jan. 6, 2020) .............................................................................10

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ........................................................................................5, 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................................12

*NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*,
2021 WL 11910935 (D. Or. May 7, 2021) .............................................................................11

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................................7

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ...........................................................................................15

*Patel v. Trans Union, LLC*,
2018 WL 1258194 (N.D. Cal. Mar. 11, 2018)........................................................................14

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .................................................................................................13

*Pearlstein v. Blackberry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).........................................................................7

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ....................................................................13

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) ........................................................................15

*Savani v. URS Pro. Sols. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014).................................................................................9

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ...................................................................................................3

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .........................................................................14

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................................3, 5, 10, 14

**Page**

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ...................................................................................9

*Zaidi v. Adamas Pharms, Inc.*,
    2024 WL 4342186 (N.D. Cal. Sept. 27, 2024) .....................................................11

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ............................................................................................... *passim*
    §78u-4(a)(6) .........................................................................................................4

**SECONDARY AUTHORITIES**

Edward Flores & Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
    (NERA Jan. 22, 2025).............................................................................................6

Edward Flores & Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: H1 2025 Update*
    (NERA July 29, 2025) .............................................................................................6

*Manual for Complex Litigation* §14.121 (4th Ed. 2004) .................................................4

Court-appointed Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), respectfully submits this motion for an Order awarding attorneys' fees and litigation expenses and an award to Lead Plaintiff, International Trading Group, Inc. ("Plaintiff") in connection with its representation of the Class, pursuant to 15 U.S.C. §78u-4(a)(4).[1]

**POINTS AND AUTHORITIES**

## I.   INTRODUCTION[2]

The $15.95 million Settlement before the Court for approval is the product of four years of effort and efficiency, and is a very good result for the Class, particularly considering the risk of obtaining no recovery at all.[3]

Lead Counsel undertook substantial risks in litigating this case, including those associated with Defendants' complex motions to dismiss the complaints. Lead Counsel's efforts to obtain relevant discovery, certify the class, and overcome the customary summary judgment motions in securities class actions posed further obstacles. And, even if Plaintiff had prevailed at trial, there was also a significant risk that any recovery obtained would be smaller than the Settlement and certainly any such recovery would have been delayed by post-trial proceedings and/or appeal. Likewise, collecting on any judgment was in doubt, given the financial condition of Assertio, the company which acquired Spectrum and has been funding this litigation. *See* Stein Decl., ¶¶7; 45.

Lead Counsel's 30% fee request is reasonable, considering the risks of this case and the excellent result achieved. *See generally* Stein Decl. In particular, Lead Counsel: (i) investigated and drafted the Amended Consolidated Class Action Complaint (the "First Amended Complaint"); (ii) researched, drafted, and argued in opposition to Defendants' motion to dismiss; (iii)

---

[1]   Lead Counsel makes this motion on behalf of itself and local counsel, Cambell & Williams ("Lead Plaintiff's Counsel").

[2]   All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement, dated May 9, 2025 (ECF 131).

[3]   *See* Declaration of Jeffrey J. Stein in Support of: (1) Motion for Final Approval of Proposed Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Stein Declaration" or "Stein Decl."), submitted herewith.

investigated and drafted the Second Amended Consolidated Class Action Complaint (the "Complaint"); (iv) successfully, in part, opposed Defendants' motion to dismiss the Complaint; (v) negotiated a case schedule with Defendants to govern all major procedural deadlines in the case; (vi) served discovery on Defendants; (vii) negotiated with Defendants and reached agreement on the terms of a protective order and ESI protocol governing discovery; (viii) engaged in protracted negotiations with Defendants regarding the scope of relevant discovery in the case; and (ix) engaged in arm's-length mediation with Defendants, overseen by David M. Murphy of Phillips ADR Enterprises. *Id.*

Lead Counsel seeks approval of a fee award of 30% of the Settlement Amount, plus the interest earned thereon, which is warranted here because of the excellent recovery obtained for the Class in light of the risks that Lead Counsel faced in the Litigation. *See* Stein Decl., ¶¶67-88. The fee request is also supported by Plaintiff, a sophisticated investor, a fact that is afforded significant weight in the analysis. *See* §III.B.6, *infra*; Declaration of John T. McGann ("McGann Decl."), ¶9.

Likewise, Lead Plaintiff's Counsel's litigation costs, charges, and expenses of $146,683.19 (plus interest accrued thereon) should be awarded in full, as they were reasonably and necessarily incurred in the prosecution of the Litigation. *See* Declaration of Jeffrey J. Stein Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. B; Declaration of J. Colby Williams Filed on Behalf of Campbell & Williams in Support of Application for Award of Attorneys' Fees and Expenses ("C&W Decl."), Ex. B (collectively, "Fee Declarations").

Similarly, because Plaintiff was actively involved throughout the prosecution and settlement of the Litigation, it requests a reasonable award of $8,250 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. McGann Decl., ¶¶11-12.

Notice of these requests was provided to potential Class Members in accordance with the Preliminary Approval Order. *See generally* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith. Specifically, the Postcard Notice and Notice advised potential Class Members that Lead Plaintiff's Counsel would apply for an award of attorneys' fees in an amount not to

exceed 30% of the Settlement Amount and payment of litigation expenses not to exceed $200,000, plus interest on both amounts. Murray Decl., Ex. A (Postcard Notice) and Ex. B (Notice) at 3, 9. Additionally, the Notice advised potential Class Members that Plaintiff may seek up to $12,000 pursuant to 15 U.S.C. §78u-4(a)(4). Murray Decl., Ex. B (Notice) at 3. To date, no objections to the requested attorneys' fees and expenses or the plaintiff award have been received. Stein Decl., ¶61.[4]

Accordingly, Lead Counsel respectfully requests that the Court grant the motion in its entirety.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

In order to avoid repetition, the relevant litigation history and facts are set out in the Stein Declaration, which is respectfully incorporated by reference herein.

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

### A.    A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5] The Ninth Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019).

The Supreme Court has countenanced that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S.

---

[4]    The deadline for the filing of objections is September 29, 2025. Should any objections be received, Lead Counsel will address them in its reply papers, due on October 13, 2025.

[5]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

886, 900 n.16 (1984). The Ninth Circuit has also expressly and consistently approved the use of the percentage-of-recovery method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Korean Air Lines Co.*, *Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (The PSLRA provides "that [the] 'total attorneys' fees . . . awarded by the Court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount' recovered for the class.") (emphasis in original); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant").

The PSLRA's statutory text itself confirms that fees ought to be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel not to exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'").

The percentage-of-recovery method is particularly appropriate in common fund cases like this where "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach). Among other benefits, the percentage-of-recovery method decreases the burden imposed on courts by eliminating a detailed and "more time-consuming" lodestar analysis. *Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation* §14.121 (4th Ed. 2004)).

- 4 -

Thus, the Court should award attorneys' fees under the percentage-of-recovery method.

**B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case**

Courts in this Circuit consider 25% of the common fund the benchmark or "starting point" for the award of fees in a common fund settlement and apply several factors

> to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases.

*See Fleming v. Impax Laby's Inc.*, 2022 WL 2789496, at *8 (N.D. Cal. July 15, 2022) (citing *Vizcaino*, 290 F.3d at 1048-50); *IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) (noting that the benchmark can be "adjust[ed] upward or downward to account for the circumstances in each case"). In fact, "'in most common fund cases, the award exceeds that benchmark,'" especially in "securities class actions." *See In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23. In all instances, the fee award must "'be reasonable under the circumstances.'" *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Howell v. JBJ, Inc.*, 298 F.R.D. 649, 660 (D. Nev. 2014) (same).

Application of each of the factors utilized by the Ninth Circuit to assess fee applications confirms that the requested 30% fee is both fair and reasonable.

**1.      The Results Achieved Support the Fee Request**

The result achieved is "the most critical factor" to consider in granting a fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). *See also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome and, as a result, "want to incentivize their counsel to pursue every last settlement dollar." *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021).

Here, against substantial risks, Lead Plaintiff's Counsel obtained a very favorable recovery for the Class, both in terms of overall amount ($15,950,000) and as a percentage of Plaintiff's estimate of maximum recoverable damages (between 3-4%).[6]  The recovery exceeds the 2024 median settlement recovery in §10b actions of 1.2%.  *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Revie*w at 27, fig. 24 (NERA Jan. 22, 2025) ("NERA 2024 Report").

The $15,950,000 settlement also exceeds the median recovery for securities class actions settled during the first half of 2025 ($13 million).  *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 16, fig. 14 (NERA July 29, 2025) ("NERA 2025 Report"), and the $14 million median recovery in 2023 and 2024.  NERA 2024 Report, at 23, fig. 22.  The result obtained for the Class here supports Lead Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

**2.      The Litigation Was Uncertain and Highly Complex**

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).  "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13.  Proving that Defendants acted with scienter "is 'complex and difficult to establish at trial.'"  *Hessefort v. Super MicroComputer, Inc.*, 2023 WL 7185778, at *4 (N.D. Cal. May 5, 2023).

Despite its ultimate success, Lead Counsel assumed significant risk.  *See generally* Stein Decl., ¶¶7-11; 48-50.  The Court granted Defendants' first motion to dismiss in its entirety, and granted in part their second, knocking out one of Plaintiff's theories of liability.  ECF 116.  Notably, according to the NERA 2024 Report, since 2015, more PSLRA cases have been dismissed than settled.  NERA 2024 Report at 15.  And although the Court upheld a portion of the case, discovery would have proven difficult to obtain.  As detailed in the Stein Declaration, the Parties held divergent views of the surviving scope of the case, as well as the relevant time period

---

[6]  Defendants of course maintain that recoverable damages are much lower, if not zero.

- 6 -

for responsive documents. Stein Decl., ¶¶38-42. Defendants refused to produce documents or respond to interrogatories and requests for admission outside of the February 1, 2018 through December 31, 2018 time frame. *Id.* Plaintiff was preparing to move to compel broader discovery responses, but success was far from certain. If Defendants successfully narrowed discovery in the manner they proposed, Plaintiff would have faced significant challenges proving its case. Even if Plaintiff obtained all of the discovery sought, and that discovery provided compelling evidence, Defendants surely would have sought summary judgment of the entire action. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at *27-*34 (S.D.N.Y. Mar. 30, 2023) (granting summary judgment and dismissing securities fraud claims), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

At trial, the case would have turned largely on expert testimony concerning highly technical medical, loss causation, and damages matters, as well as the credibility of fact witnesses – nearly all of whom would likely be represented by defense counsel. Defendants need only defeat one element of Plaintiff's claims to prevail, and there is a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Plaintiff sought to recover. *See, e.g.*, *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (noting, in securities class actions, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky."). "[I]n a 'battle of experts,' the outcome cannot be guaranteed." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016). *See also, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022); *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict returned in securities fraud defendants' favor where court had previously granted summary judgment for plaintiffs on certain elements).

Even if Plaintiff survived summary judgment and obtained a favorable verdict at the liability phase of trial, it would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings. *See, e.g.*, *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022) ("Even very large judgments recovered after lengthy litigation and trial can be

completely lost on appeal or because of post-trial motion practice. This is especially true of securities class actions, where intervening shifts in legal standards have undermined trial victories."); *In re: NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at *1 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion for judgment as a matter of law after class action plaintiffs obtained a jury verdict for more than $4.6 billion after nearly nine years of litigation).

Thus, there existed a significant risk that class-wide recoverable damages would have been far less than $15.95 million, including the risk of no recovery at all. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *2 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order") ("Class Counsel 'recognize there are always uncertainties in litigation.' It is possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . .'") (alteration in original). And any recovery absent the Settlement "'would come years in the future and at far greater expense to the . . . Class.'" *Id.*

Additionally, Defendants' ability to pay any judgment raised additional issues. Spectrum was acquired by Assertio Holdings, Inc. in July 2023. Assertio's current financials demonstrate that its assets were a shrinking pool of funds, putting any recovery at risk. Stein Decl., ¶45. Thus, given the dwindling assets and the exhaustion of insurance proceeds by continued litigation, there was a significant risk that had a settlement not been reached, any judgment procured by Plaintiff would be uncollectible.

The Settlement achieved here in the face of these significant risks supports the requested 30% fee award.

### 3.    The Skill Required and Quality of Work

The quality of Lead Counsel's representation further supports the reasonableness of the requested 30% fee. This case involved unique and complex issues which were successfully prosecuted and managed by Lead Counsel. *Omnivision*, 559 F. Supp. 2d at 1047 ("'[P]rosecution and management of a complex national class action requires unique legal skills and abilities.'"). Robbins Geller is a nationally recognized leader in securities class actions and complex litigation. *See* www.rgrdlaw.com. Robbins Geller has a track record of trying securities class action cases or settling cases at a premium. Clients retain Lead Counsel to benefit from its experience and

resources in order to obtain the largest possible recovery for the class in question. The highly favorable recovery obtained for the Class, against long odds of any recovery, is the best reflection of Lead Counsel's skill and experience.

Indeed, Lead Counsel's vigorous investigation led to the discovery of valuable claims for the Class. The initial complaint in this action focused on representations about the manufacturing facility for Rolontis, one of Spectrum's developmental drugs. Lead Counsel's thorough investigation revealed that Defendants may have also issued material false and misleading statements regarding the clinical trials of Pozi, a completely different developmental drug. Lead Counsel amended the complaint with new Pozi allegations and bolstered Rolontis allegations. Ultimately, the Court dismissed all of the Rolontis claims, but upheld the new Pozi claims. ECF 116. Without Lead Counsel's tireless investigation, the case likely would have been dismissed without any recovery for the Class.

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Lead Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997). Defendants are represented by lawyers from well-respected defense firms Baker Botts L.L.P. and Pisanelli Bice PLLC, who vigorously contested each element of Plaintiff's claims. Lead Counsel's ability to obtain a favorable result for the Class while litigating against these formidable defense firms and their clients further evidences the quality of Lead Counsel's work and weighs in favor of awarding the requested 30% fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties Lead Counsel overcame in obtaining the settlement. "It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen* Fee Order, 2017 WL 1047834, at *3. This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and hundreds of thousands or millions of dollars in expenses, yet received no remuneration whatsoever despite their diligence and expertise. *Supra*, §III.B.2. For example, in *Fosbre v. Las Vegas Sands Corp.*, a case that Robbins Geller prosecuted in this District, summary judgment was granted to defendants after more than six years of litigation where plaintiff's counsel incurred over $2.3 million in expenses and worked over 38,600 hours, representing a lodestar of approximately $21.4 million. 2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018). In another Ninth Circuit PSLRA case, after a lengthy trial involving securities claims against Tesla, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain elements in ***plaintiff's*** favor, evincing the strength of the claims. *See Tesla*, 2022 WL 1497559; *Tesla*, No. 3:18-cv-04865-EMC, ECF 671; *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (holding similarly).

Here, Lead Plaintiff's Counsel have received no compensation during the four-year course of the Litigation and invested over 4,900 hours and incurred substantial expenses in prosecuting this case. Additional (uncompensated) work in connection with the Settlement and claims administration has already occurred and will be required going forward. Any fee award has always been contingent on the result achieved and at this Court's discretion. Indeed, the only certainty was that there would be no fee without a successful result. Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously prosecute this Litigation, and successfully brought it to a highly favorable conclusion for the Class. *See generally* Stein Decl. Meanwhile, "Class Counsel had to turn down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to handle this complex case." *Volkswagen* Fee Order, 2017 WL 1047834, at *3; *see also Vizcaino*, 290 F.3d at 1050.

The contingent nature of Lead Counsel's representation thus supports approval of the requested 30% fee.

### 5.    Awards Made in Similar Cases Support the Fee Request

The requested fee is within the range of similar common fund class action settlements where courts have adjusted the fee above the 25% benchmark based on appropriate factors.  *See, e.g., Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *4 (C.D. Cal. Jan. 6, 2020) (adjusting fee award to "just under 33.3% of the total settlement amount"); *Jiminez v. O'Reilly Auto. Inc.*, 2018 WL 6137591, at *3 (C.D. Cal. June 18, 2018) (upward departure from the 25% benchmark to a 33.33% award was justified because of "complicated nature" of the case).  In fact, "in most common fund cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047-48.  *See also City of Laurel, Miss. v. Cintas Corp. No. 2*, No. 3:21-cv-00124-ART-CLB, ECF 123 at 2 (D. Nev. Apr. 29, 2025) (awarding 33% of $45 million cash settlement amount); *Ferris v. Wynn Resorts Ltd.*, 2025 WL 2308698, at *1 (D. Nev. Jan. 31, 2025) (Silva, J.) (awarding 33-1/3% of $70 million settlement, plus expenses).

The Ninth Circuit and its district courts, including this District, have approved awards of fees in excess of 25% in securities and other complex class action cases.  *See In re Allied Nev. Gold Corp.*, No. 3:14-cv-00175-LRH-WGC, ECF 215 at 5 (D. Nev. Nov. 16, 2020) (awarding 33-1/3% of settlement fund, plus interest and litigation expenses); *Zaidi v. Adamas Pharms, Inc.*, 2024 WL 4342186, at *1 (N.D. Cal. Sept. 27, 2024) (awarding attorneys' fees of 33-1/3% of settlement fund, plus expenses); *Fleming*, 2022 WL 2789496, at *8-*11 (awarding fee of 30% of $33 million settlement fund plus expenses, finding Lead Counsel Robbins Geller had obtained "an excellent result for class members"); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (approving a fee of 33.33% of $22.25 million settlement fund in securities class action); *Lifescan*, 54 F. App'x at 664 (affirming attorneys' fee of 33% of $14.8 million class action settlement); *NECA-IBEW Pension*

*Tr. Fund v. Precision Castparts Corp.*, 2021 WL 11910935, at *1 (D. Or. May 7, 2021) (awarding 33.33% of $21 million recovery).

### 6.    The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4 (considering "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval."); *see also Wynn Resorts*, 2025 WL 230869, at *1 ("Finally, there was no opposition to the motion, which weights in favor of granting the motion.").

Class Members were informed in the Postcard Notice and Notice that Lead Plaintiff's Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund and for payment of litigation expenses not to exceed $200,000. Murray Decl., Ex. A (Postcard Notice) and Ex. B (Notice) at 3, 9. Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court and served on counsel no later than September 29, 2025. Murray Decl., Ex. A (Postcard Notice) and Ex. B (Notice) at 9. While this deadline has not yet passed, to date, not a *single* objection has been received.

Finally, Plaintiff has approved the attorneys' fees sought here. McGann Decl., ¶9. Plaintiff's approval supports granting the requested fee. *See Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request

"reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors").

### 7. A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable

To satisfy itself that a fee award is reasonable, courts may (but are not required to) cross check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *2 (C.D. Cal. Sept. 20, 2022) (findings cross check unnecessary, given the circumstances); *In re Amgen*, 2016 WL 10571773, at *9 (noting that "analysis of the Lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). When the lodestar is used as cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen Fee Order*, 2017 WL 1047834, at *5 n. 5 (overruling objection that "the information provided in support of Class Counsel's Lodestar amount as inadequate" because "'it is well established that "[t]he Lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross-check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). As detailed here and in the Fee Declarations, over 4,900 hours of attorney and paraprofessional time were expended prosecuting the Litigation for the benefit of the Class. The hours spent to obtain the results are more than reasonable. And, as

noted, this does not include any additional hours in connection with the administration of the Settlement, which could be substantial. No additional counsel fees will be sought for this work. As detailed in the Stein Declaration, there is no question that the hours expended were necessary.

Lead Counsel's hourly rates, too, are reasonable. *See Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *5 (N.D. Cal. Sept. 26, 2023) (approving attorneys' fees with Robbins Geller's prevailing hourly rates); *Fleming*, 2022 WL 2789496, at *9 (finding Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation").

The last piece of the cross-check analysis is the risk multiplier. Lead Plaintiff's Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney and litigation professional by their current rate is $3,259,861.50.[7] Accordingly, the requested fee of 30% represents a very modest multiplier of 1.46 on Lead Plaintiff's Counsel's lodestar. Many courts have found multipliers between one and four to be reasonable. *See Vizcaino*, 290 F.3d at 1051, n. 6 (approving 3.65 multiplier and finding that most multipliers ranged from 1.0 to 4.0); *Wynn Resorts*, 2025 WL 230869, at *1 (awarding 33-1/3% fee, representing 1.98 multiplier); *Int'l Game Tech.*, 2012 WL 5199742, at *4 (finding 2.02 multiplier "not unreasonable"); *Fleming*, 2022 WL 2789496, at *11 (approving 30% fee, finding 2.6 multiplier reasonable).

Given the risk undertaken by Lead Counsel and the result achieved for the Class, a risk multiplier of 1.46 is reasonable here.

Each of the relevant factors supports the award of 30% of the Settlement Fund. Accordingly, this fee request is reasonable and should be approved.

. . . . .

. . . . .

. . . . .

---

[7]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Patel v. Trans Union, LLC*, 2018 WL 1258194, at *7 (N.D. Cal. Mar. 11, 2018) (current market rates were "appropriate given the deferred and contingent nature of counsel's compensation").

## IV.   LEAD PLAINTIFF'S COUNSEL'S LITIGATION COSTS, CHARGES, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Plaintiff's Counsel further request an award of their litigation costs, charges, and expenses in the amount of $146,683.19 (less than the $200,000 cap contained in the Postcard Notice and Notice). These costs, charges, and expenses were incurred in prosecuting and resolving the Litigation on behalf of the Class. Robbins Geller Decl., Ex. B; C&W Decl., Ex. B.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's costs, charges, and expenses are compensable in a common fund case, courts look to whether the particular costs are the type of "out-of-pocket expenses that 'would normally be charged to a fee-paying client.'" *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Hefler*, 2018 WL 6619983, at *16. Here, the costs, charges, and expenses sought by Lead Plaintiff's Counsel, including those associated with, among other things, experts and consultants, service of process, online legal and factual research, court fees, travel, and mediation, are of the type that are routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *See, e.g.*, *Vincent*, 2013 WL 621865, at *5 (granting award of costs and expenses for "'three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses'"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense award to class counsel and noting "itemized costs relating to . . . expert fees" were "reasonable litigation expenses"); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *9 (C.D. Cal. July 9, 2013) (reimbursing "expenses for mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage, messengers, and filing fees").

Because these costs, charges, and expenses were reasonable and necessary, Lead Plaintiff's Counsel respectfully request an award in the amount of $146,683.19 to cover the costs, charges, and expenses incurred in prosecuting the Litigation, plus the interest earned thereon.

. . . . .

. . . . .

- 15 -

## V.   PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. SECTION 78u-4(a)(4) IS REASONABLE

Pursuant to 15 U.S.C. §78u-4(a)(4), Plaintiff seeks an award of $8,250 in connection with its diligent and determined representation of the Class, as detailed in its declaration. *See generally*, McGann Decl. Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4); *see also Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (awards of reasonable costs and expenses for lead plaintiffs under the PSLRA "are 'fairly typical' and are 'intended to compensate class representatives for work done on behalf of the class'"); *In re Maxwell Techs. Inc., Sec. Litig.*, 2015 WL 12791401, at *4 (S.D. Cal. Feb. 17, 2015) (awarding plaintiff "reimbursement of its reasonable time, costs and expenses directly relating to its representation of the Settlement Class").

Plaintiff has submitted a declaration herewith setting forth the time and effort it spent monitoring the Litigation and directing Lead Counsel, including discussing litigation strategy, reviewing pleadings and filings, and discussing settlement negotiations and strategy with Lead Counsel. *See* McGann Decl., ¶¶4-7. Plaintiff was actively involved through every step of the Litigation, and accordingly, it requests a reasonable award pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class. *Fleming*, 2022 WL 2789496, at *10 (approving awards for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (awarding plaintiffs with awards ranging from $2,073 to $10,422, noting that "requested reimbursement is consistent with payments in similar securities cases" for PSLRA awards); *see also Wynn Resorts*, 2025 WL 230869, at *1 (awarding $30,000 and $20,000 to plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4)); *Allied Nev. Gold*, ECF 215 at 6 (awarding $10,000 to lead plaintiff); *Hatamian*, 2018 WL 8950656, at *4 (granting PSLRA award of $14,875).

Accordingly, the Court should grant Plaintiff an award pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of $8,250.

## VI.    CONCLUSION

Lead Counsel obtained a very favorable result for the Class, despite the risk of zero recovery.  Based on the foregoing and the entire record, Plaintiff and Lead Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 30% of the Settlement Amount; (ii) grant payment of $146,683.19 in litigation costs, charges, and expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund; and (iii) award Plaintiff $8,250 pursuant to 15 U.S.C. §78u-4(a)(4) for its representation of the Class.

DATED:  September 15, 2025

Respectfully submitted,

CAMPBELL & WILLIAMS

/s/ *J. Colby Williams*
J. COLBY WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada  89101
Telephone:  702/382-5222
702/382-0540 (fax)
jcw@cwlawlv.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
JEFFREY J. STEIN
JOHN M. KELLEY
SARAH A. FALLON
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
jstein@rgrdlaw.com
jkelley@rgrdlaw.com
sfallon@rgrdlaw.com
jrobertson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff International Trading Group, Inc.*

- 17 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of September, 2025, I caused a true and correct copy of the foregoing **Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to U.S.C. §78u-4(a)(4)** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ *J. Colby Williams*
An employee of Campbell & Williams

**INDEX OF EXHIBITS**

| Exhibit | Document | Page Nos. |
|---------|----------|-----------|
| - | Declaration of Jeffrey J. Stein in Support of: (1) Motion for Final Approval of Proposed Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) | - |
| - | Declaration of John T. McGann Filed on Behalf of International Trading Group, Inc. in Support of Final Approval of Settlement and Application for Award of Attorneys' Fees and Expenses | - |
| - | Declaration of J. Colby Williams Filed on Behalf of Campbell & Williams in Support of Application for Award of Attorneys' Fees and Expenses | - |
| - | Declaration of Jeffrey J. Stein Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses | - |